Brendan P. Cullen (SBN 194057)
(cullenb@sullcrom.com)
Alexis C. Holmes (SBN 321393)
(holmesa@sullcrom.com)
SULLIVAN & CROMWELL LLP
550 Hamilton Avenue
Palo Alto, California 94301
Telephone:   (650) 461-5600
Facsimile:   (650) 461-5700

*Counsel for Defendants Cutera, Inc., David H. Mowry,*
*Rohan Seth, J. Daniel Plants, Sheila Hopkins,*
*Taylor Harris, Stuart Drummond, and*
*Vikram Varma*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CUTERA, INC. SECURITIES LITIGATION. | Case No. 4:23-cv-02560-JST<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>The Hon. Jon S. Tigar<br>Courtroom: 6<br>Date: November 7, 2024<br>Time: 2:00 p.m. |

# TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................................. 1

I.    PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 10(B) OR RULE
      10B-5 ...............................................................................................................................1

      A.    The Opposition Confirms that Plaintiff Has Not Pleaded an Actionable
            Misstatement as to Nearly All of the Challenged Statements. ................................ 1

      B.    The Opposition Confirms that the Complaint Lacks Allegations
            Demonstrating the Requisite Strong Inference of Scienter. .................................... 7

II.   PLAINTIFF DOES NOT STATE A CLAIM UNDER SECTION 20(A). .........................15

CONCLUSION ............................................................................................................................ 15

SULLIVAN & CROMWELL LLP

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brody* v. *Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ..................................................................................................7

*Cement & Concrete Workers Dist. Council Pension Fund* v. *Hewlett Packard Co.*,
964 F. Supp. 2d 1128 (N.D. Cal. 2013) ...................................................................................5

*City of Sunrise Firefighters' Pension Fund* v. *Oracle Corp.*,
2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) .........................................................................6

*Derr* v. *Ra Med. Sys., Inc.*,
2021 WL 1117309 (S.D. Cal. Mar. 24, 2021) ..........................................................................4

*Eminence Cap., LLC* v. *Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ...............................................................................................10

*Evanston Police Pension Fund* v. *McKesson Corp.*,
411 F. Supp. 3d 580 (N.D. Cal. 2019) ...................................................................................13

*Glazer Capital Management, L.P.* v. *Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) ............................................................................................11, 12

*Hatamian* v. *Advanced Micro Devices, Inc.*,
87 F. Supp. 3d 1149 (N.D. Cal. 2015) ...................................................................................12

*Howard* v. *Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) .................................................................................................3

*Inchen Huang* v. *Higgins*,
2019 WL 1245136 (N.D. Cal. Mar. 18, 2019) .......................................................................12

*In re Intel Corp. Sec. Litig.*,
2023 WL 2767779 (N.D. Cal. Mar. 31, 2023) .............................................................. *passim*

*Kipling* v. *Flex Ltd.*,
2020 WL 7261314 (N.D. Cal. Dec. 10, 2020) .......................................................................11

*In re Leapfrog Enter., Inc. Sec. Litig.*,
200 F. Supp. 3d 987 (N.D. Cal. 2016) .....................................................................................9

*Lloyd* v. *CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016) ...............................................................................................12

*Lowe* v. *Tandem Diabetes Care Inc.*,
2024 WL 1898473 (S.D. Cal. Apr. 30, 2024) ..........................................................................6

SULLIVAN & CROMWELL LLP

*In re Metawave Commc'ns. Corp. Sec. Litig.*,
    298 F. Supp. 2d 1056 (W.D. Wash. 2003)........................................................................11

*Middlesex Ret. Sys.* v. *Quest Software, Inc.*,
    2008 WL 7084629 (C.D. Cal. July 10, 2008)......................................................................3

*Nguyen* v. *Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) ...........................................................................................11

*Norfolk Cnty. Ret. Sys.* v. *Solazyme, Inc.*,
    2018 WL 3126393 (N.D. Cal. June 26, 2018) ...........................................................2, 7, 11

*In re Pivotal Sec. Litig.*,
    2020 WL 4193384 (N.D. Cal. July 21, 2020)......................................................................9

*Robb* v. *Fitbit Inc.*,
    2017 WL 219673 (N.D. Cal. Jan. 19, 2017) ....................................................................12

*Schueneman* v. *Arena Pharm., Inc.*,
    840 F.3d 698, 707-08 (9th Cir. 2016) ................................................................................7

*Shenwick* v. *Twitter, Inc.*,
    282 F. Supp. 3d 1115 (N.D. Cal. 2017) ...........................................................................12

*Sylebra Cap. Partners Master Fund Ltd* v. *Everbridge, Inc.*,
    2024 WL 2107383 (C.D. Cal. Mar. 18, 2024)...................................................................10

*Teamsters Loc. 617 Pension & Welfare Funds* v. *Apollo Grp., Inc.*,
    633 F. Supp. 2d 763 (D. Ariz. 2009) .................................................................................8

*In re Toronto-Dominion Bank Sec. Litig.*,
    2018 WL 6381882 (D.N.J. Dec. 6, 2018).............................................................................4

*In re Toyota Motor Corp. Sec. Litig.*,
    2011 WL 2675395 (C.D. Cal. July 7, 2011).......................................................................14

*Veal* v. *LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019) ................................................................................4

*Walsh* v. *Nev. Dep't of Hum. Res.*,
    471 F.3d 1033 (9th Cir. 2006) ............................................................................................2

*Wanca* v. *Super Micro Comput., Inc.*,
    2018 WL 3145649 (N.D. Cal. June 27, 2018) ....................................................................4

*Zucco Partners, LLC* v. *Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ......................................................................................10, 13

-iii-

The Motion to Dismiss (ECF No. 72) demonstrated that Plaintiff fails to plead securities fraud in multiple, overlapping ways. The Opposition (ECF No. 76) confirms this, both in what it says and in what it does *not* say. Defendants established, for example, that statements concerning Cutera's Core Capital business unit and Cutera's sales force are not actionably false or misleading for a host of reasons. The Opposition says nothing in response. The Motion also demonstrated that the vast majority of statements concerning AviClear are immaterial as a matter of law. The Opposition never responds to this either. And the Motion detailed why the Complaint fails (or does not even really try) to plead scienter as to Mr. Varma. Again, nothing. Plaintiff has conceded these arguments.

Where the Opposition does attempt to address the Motion's arguments, it fares no better. As to falsity, except for the restated financials for Q1 and Q2 2023, the remaining challenged statements at issue, read in context, are not false or misleading and Plaintiff's Opposition fails to establish otherwise. With respect to scienter, although Plaintiff attempts to plead scienter in pretty much every way anyone ever has, none is sufficient and the Hail-Mary holistic review that the Opposition seeks cannot salvage the Complaint's scienter allegations. And if Plaintiff's cited authorities demonstrate anything, it is how little Plaintiff's Complaint resembles a successful securities complaint and how similar the Complaint is to others that have been dismissed.

The Court should dismiss the Complaint.

## ARGUMENT

## I.    PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 10(B) OR RULE 10B-5.

### A.    The Opposition Confirms that Plaintiff Has Not Pleaded an Actionable Misstatement as to Nearly All of the Challenged Statements.

#### 1.    Plaintiff Has Abandoned Claims as to 13 Challenged Statements.

The Complaint alleges that Defendants made nine misstatements about the strength of Cutera's Core Capital business (Statements 3, 5, 6, 8, 9, 13-15, 17) and three misstatements about the alignment of Cutera's sales force (Statements 2, 24, 25).[1] As explained in the Motion (at 12-15), none of these statements is adequately pleaded to be materially false or misleading. Plaintiff appears (and should be held) to agree because the Opposition makes no mention of — let alone meaningfully responds to —

---

[1]    "Statement [_]" refers to the challenged statements set out in Appendix 1, attached to the Motion.

Defendants' arguments.  Plaintiff has therefore conceded that these statements are not actionable.  *See Walsh* v. *Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (holding that, when a plaintiff "fails to raise" a claim in opposition "in response to a defendant's motion to dismiss" that claim, the claim is "effectively abandoned" and forfeited); *Norfolk Cnty. Ret. Sys.* v. *Solazyme, Inc.*, 2018 WL 3126393, at *3 n.3 (N.D. Cal. June 26, 2018) (deeming alleged misstatements not addressed in plaintiff's opposition brief abandoned).

Plaintiff also has abandoned a challenged statement about AviClear.  The Motion established that Mr. Mowry's response to the question "Have you seen any customer stop using AviClear?" during the November 30, 2022 Piper Sandler Healthcare Conference Call (Statement 20) is not adequately pleaded to be false.  (Mot. at 11-12.)  The Opposition never mentions Statement 20.

Accordingly, Plaintiff has abandoned its claims regarding all challenged statements about Core Capital (Statements 3, 5, 6, 8, 9, 13-15, 17) and Cutera's sales force (Statements 2, 24, 25), plus Statement 20 — nearly one-third of the statements challenged in the Complaint.  (*See* Mot. App. 1.)

> **2.    The Opposition Identifies No Misstatement or Omission about Cutera's Internal Controls.**

***Statement about controls being designed and implemented.***  As explained in the Motion (at 7-8), Cutera's statement in the 2021 10-K regarding the design/implementation of "effective internal control measures" (Statement 1) is not false or misleading.  The Opposition argues that Statement 1 was misleading "because, at that time, Defendants had not designed or implemented effective internal control measures." (Opp at 12.)  But Cutera did not provide "reassurance that [Cutera] had implement*ed* effective internal controls."  (*Id.* at 13 (emphasis added).)  What Cutera actually said was that it "*has begun the process of designing* and implementing effective internal control measures . . . ." (Ex. A at 114 (emphasis added).)[2] Plaintiff argues that Cutera "did nothing to ensure the effectiveness" of the Company's new SAP and Salesforce systems, citing CW6's and CW8's allegations that "Cutera did not invest enough money" to make the new systems effective and that Cutera did not formally train its employees on the new systems or oversee their implementation immediately. (Opp. at 12.)  But the allegations attributed to these CWs — even if they were not hopelessly detail-free (Mot. at 7, 19-20) — do not falsify this Cutera statement because they

---

[2]    "Ex. [_]" refers to exhibits to the Declaration of Brendan P. Cullen, ECF No. 72-1.

necessarily refer to a period of time *after* Cutera "has" just "begun" to "design[] and implement[] effective internal control[s]." To plead that a statement about beginning to design and implement "effective controls" is false when made requires plausibly alleging that the measures that Cutera was beginning the process of adopting were *not at that time designed* to be effective. The Complaint pleads no such thing.

***SOX certifications.*** The Complaint challenges portions of Messrs. Mowry's and Seth's SOX certifications attached to the 2022 10-K, filed on April 7, 2023 (Statements 26-28), and portions of Defendants Drummond's, Harris's, and Hopkins's SOX certifications accompanying Cutera's Q1 and Q2 2023 10-Qs, filed on May 10 and August 9, 2023, respectively (Statements 34-36, 42-44). None of these certifications is adequately pleaded to be false or misleading for multiple reasons.

The Motion demonstrated that Plaintiff fails adequately to plead, as it must, that and how any of these Defendants *knew* that their respective SOX certifications were untrue at the time they were made. (Mot. at 8-9, 15-24; *infra* Section B.1.) In its Opposition, Plaintiff argues that, because "the Complaint adequately alleges that the weaknesses in inventory controls (pointing to Cutera's January 2023 "extended" inventory audit and CW8's statement about supposed "inventory problems" that arose sometime in 2022) were present *before* Defendants" signed the SOX certifications, Defendants were aware of those weaknesses. (Opp. at 10-12 (emphasis in original).) These allegations not only are inadequate — because they lack detail as to the nature of the purported "inventory problems" and when exactly those issues arose (Mot. at 7-8, 9 n.6, 16-20) — but also totally fail to show that *Defendants* knew that the state of Cutera's internal controls was materially different than Defendants had represented. In further support of its contention, Plaintiff points to the policy rationale behind the Sarbanes-Oxley Act and cites two cases to assert that a corporate executive who signed a challenged SOX certification cannot "avoid responsibility by saying that he [or she] signed without actually verifying anything." (Opp. at 10 (quoting *Middlesex Ret. Sys.* v. *Quest Software, Inc.*, 2008 WL 7084629, at *11 (C.D. Cal. July 10, 2008); and citing *Howard* v. *Everex Sys., Inc.*, 228 F.3d 1057, 1061 (9th Cir. 2000)).) But *Middlesex* and *Howard* are beside the point. Both cases concerned whether the signatory of an SEC filing could be held liable as the "maker" of an alleged misstatement in that filing. *Middlesex*, 2008 WL 7084629, at *10-11; *Howard*, 228 F.3d at 1061. That is not at issue here. The question is whether the Complaint adequately alleges "facts explaining why [Defendants] *knew*" that "the SOX certifications were false at the time they were made,"

SULLIVAN & CROMWELL LLP

as required under the PSLRA. *Wanca* v. *Super Micro Comput., Inc.*, 2018 WL 3145649, at *6 (N.D. Cal. June 27, 2018) (emphasis added). For the reasons just explained, and those set forth in the Motion (at 7-8, 9 n.6, 15-24), the Complaint has fallen short of meeting this high bar.

Plaintiff's purported bases for the falsity of the SOX certifications of Cutera's 2022 10-K (Statements 26-28) fail for additional reasons. In the Motion (at 9), Defendants demonstrated that Statement 27 — that Messrs. Mowry and Seth "[e]valuated the effectiveness of [Cutera's] disclosure controls and procedures" — was not false because the Complaint fails to allege, in a non-conclusory fashion, that those former Cutera executives did not, in fact, evaluate Cutera's disclosure controls. Plaintiff's only response is that "Cutera did not have 'effective' disclosure controls" when that 10-K was filed. (Opp. at 11.) But the fact that a control is or later turns out to have been ineffective does not mean that it was not the subject of an earlier evaluation. Messrs. Mowry and Seth did not promise that the controls were perfect — they stated that they had evaluated them and Plaintiff nowhere alleges that they did not. *See Derr* v. *Ra Med. Sys., Inc.*, 2021 WL 1117309, at *7 (S.D. Cal. Mar. 24, 2021) ("Notably absent is an unqualified certification that the controls and procedures are effective."). For the same reasons, Statements 36 and 44 are not adequately pleaded to be false or misleading.

In addition, the Motion showed that Statements 26 and 28 — about the accuracy of the financial reporting in the 2022 10-K — were not false because Plaintiff does not allege that any financial result reported in that annual report was incorrect or not reliably reported/prepared. (Mot. at 9.) (Again, the only restated financial statements were those for the first two quarters of 2023, not any for any part of 2022.) In response, Plaintiff cites an out-of-circuit case, *In re Toronto-Dominion Bank Securities Litigation*, 2018 WL 6381882, at *10 (D.N.J. Dec. 6, 2018), to argue that it need only allege that Cutera's internal controls were deficient to plead falsity. (Opp. at 11.) Total non sequitur. As just discussed, Plaintiff's internal-controls allegations fail in any event, including because the CW allegations on which Plaintiff relies lack the requisite detail and are otherwise consistent with Defendants' statements. (*See also* Mot. at 7-9.) But more importantly, Statements 26 and 28 "only apply to financial condition and results of operations of the Company. Absent any allegations of financial wrongdoing, the SOX certifications have no nexus to Plaintiff['s] reasons for falsity." *Veal* v. *LendingClub Corp.*, 423 F. Supp. 3d 785, 808 (N.D. Cal. 2019)

(emphasis omitted).[3]

### 3. The Opposition Identifies No Actionable Misstatement or Omission about AviClear.

*Materiality.* In the Motion (at 13-15), Defendants established that, except for Statement 20, all challenged statements about AviClear — concerning the success of its launch and physician/patient interest in the device — are immaterial as a matter of law. The Motion explained that, because these AviClear statements are "'vague, generalized, and unspecific assertions' of corporate optimism or statements of 'mere puffing,'" they are not "actionable material misstatements of fact under federal securities laws." *Cement & Concrete Workers Dist. Council Pension Fund* v. *Hewlett Packard Co.*, 964 F. Supp. 2d 1128, 1138 (N.D. Cal. 2013). The Opposition completely fails to respond to this argument, and therefore Plaintiff has conceded that AviClear Statements 4, 7, 10-12, 16, 18, 19, 21-23, 30, and 38 are not actionable. *In re Intel Corp. Sec. Litig.*, 2023 WL 2767779, at \*26 n.11 (N.D. Cal. Mar. 31, 2023) (deeming plaintiff's failure to "respond to Defendants' puffery arguments" a concession); *see also supra* Section A.1.

*Falsity.* Even if Plaintiff had not conceded these statements' immateriality, the Motion also illustrated that, when the AviClear statements are read in context, they are not false or misleading either. (Mot. at 9-12.) Plaintiff insists that these statements were false and misleading because they purportedly represented that the "AviClear launch was an overwhelming success when, in reality, it was a failure." (Opp. at 13-14.) That is not remotely a fair description of the challenged statements. As detailed in the Motion (at 10), the statements describing the AviClear launch as "successful" or progressing well (Statements 4, 7, 10, 12, 20-22, 30, 38) were not false or misleading because, read in context, they described a product launch that proceeded "consistent[ly] with Cutera's disclosed business strategy to focus *first* on placing AviClear devices through year-end 2022, *then* pivot to 'utilization'" — *i.e.*, AviClear treatments. Plaintiff asserts that "[t]his is a red herring," as "[i]t does not matter whether Defendants were

---

[3] The Opposition also challenges Messrs. Mowry's and Seth's certifications attesting that the 2022 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made . . . not misleading." (Opp. at 11 (citing AC ¶ 264).) Putting aside that the Complaint never specifically mentions this statement (*see* Mot. at 8 n.5), neither the Complaint nor the Opposition identifies any "untrue statement" or omission in Cutera's 2022 10-K that would render this certification false or misleading.

SULLIVAN & CROMWELL LLP

-5-

focusing on utilization": "What matters is Defendants publicly touted customers' *use* of AviClear." (Opp. at 14.)  In support of this assertion, Plaintiff identifies — without any context — five (immaterial) challenged statements made during AviClear's first 12 months of availability (Statements 4, 10, 18, 19, 23).  (*See id.*)  But to the extent that these statements have anything to do with the "use of AviClear," the Opposition fails to explain how any such statement *misrepresented* anyone's "use of AviClear."  (*See id.*)  Take Statement 23, for instance.  During the Q4 2022 earnings call on February 28, 2023, Mr. Mowry stated that "strong underlying interest in AviClear quickly converted into customer demand that occupied our sales team throughout November and most of December."  (AC ¶ 256.)  This statement plainly relates to interest in and demand for the AviClear device and makes no mention at all of device usage.  (Mot. at 12.)  Mr. Mowry's November 30, 2022 statement that "[p]eople are really doing exceptionally well with the AviClear device and the AviClear procedure" (Statement 19) is, again, non-actionable puffery, but Plaintiff presents no allegation or argument that it was not a true statement when made.  (In fact, it is consistent with Mr. Mowry's reporting just months prior that, "[t]o-date, we now have over 500 treatments under our belt" with an average reported patient-satisfaction score of 4.9/5.  (Ex. D at 5.))

Plaintiff also points to analyst commentary to argue that Cutera supposedly caused investors to believe "that the AviClear rollout was a success and driving additional revenue for the Company."  (Opp. at 15.)  Plaintiff cites Piper Sandler's statements in November 2022 that, "*in our view . . .* [w]e believe AviClear could deliver $20M in sales during '23," and that "*we believe* the performance of AviClear will . . . push shares higher."  (Opp. at 15 (citing AC ¶¶ 234, 247) (emphases added).)  But the Complaint nowhere alleges that *Defendants* misrepresented AviClear's ability to make Cutera more profitable in 2023 or over any other time period.  These analysts' statements are no more than "speculative opinion[s]" of unrelated third parties and thus "do[] not provide insight into whether Defendants' statements were false or misleading when made."  *Lowe* v. *Tandem Diabetes Care Inc.*, 2024 WL 1898473, at *10 (S.D. Cal. Apr. 30, 2024); *City of Sunrise Firefighters' Pension Fund* v. *Oracle Corp.*, 2019 WL 6877195, at *15 (N.D. Cal. Dec. 17, 2019) (declining to infer falsity based on analysts' statements that were "conclusory opinions of those individuals or organizations and mostly speculative").

***Omissions.***   In its Opposition (at 14), Plaintiff asserts that, "while Defendants touted the purportedly successful AviClear launch, they failed to disclose material information that cut against their

-6-

positive statements." In support of its claim, Plaintiff relies on CW allegations to assert that there were issues with AviClear, including (unspecified) "quality, reliability, and order fulfillment problems" and (unspecified) customer dissatisfaction. (Opp. at 14.) As explained in the Motion (at 10-12, 16-20) and below (*infra* Section B.1), these vague and conclusory CW allegations do not come close to satisfying the PSLRA, including because they fail to explain, with particularity, what those problems were, when they arose, and how (and which and when) Defendants became aware of them (*see* Mot. at 10-12). But even if these CW allegations were pleaded adequately, the Motion demonstrated that the sort of "problems" with AviClear alleged in the Complaint do not make a lie out of Defendants' general, optimistic statements about the AviClear rollout. (*Id.*) The sole case upon which Plaintiff relies, *Schueneman* v. *Arena Pharmaceuticals, Inc.*, does not suggest otherwise. 840 F.3d 698, 707-08 (9th Cir. 2016) (holding that it was misleading for a drug company to "affirmatively represent[] that '*all* the animal studies that [had] been completed' supported [its] case for approval" when defendants were aware of "the risk of non-approval or delayed approval based on the FDA's 'concerns'" about one animal study in particular (emphasis added)). For an omissions claim to survive the PSLRA, the "complaint must specify the reason or reasons why the statements made by [defendants] were misleading or untrue, not simply why the statements were incomplete." *Brody* v. *Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Plaintiff has failed to meet its burden.

### B. The Opposition Confirms that the Complaint Lacks Allegations Demonstrating the Requisite Strong Inference of Scienter.

As detailed in the Motion (at 15-24), Plaintiff's scienter allegations include an attempt to plead essentially every kind of allegation that a court has ever held gave rise to the necessary "strong inference" of scienter. But each of these allegations is inadequately pleaded. Plaintiff tries and fails in the Opposition to rehabilitate these allegations. As failing securities plaintiffs always do, Plaintiff then argues that, if only the Court would disregard the ways each allegation fails and instead consider the allegations "holistically," then the PSLRA's scienter pleading standard has been satisfied. But where individual scienter allegations fail this totally, no amount of combining them can help. *Norfolk Cnty. Ret. Sys.*, 2018 WL 3126393, at \*10 ("Here, as many of the allegations do not support a finding of scienter at all, the combination of the . . . allegations also fails to raise a strong inference of scienter."). The Complaint also should be

-7-

dismissed for failure to plead scienter.

### 1. The Opposition Fails To Identify Particularized Facts Showing that the Individual Defendants Acted with Scienter.

*Signatures on SEC filings are not probative of scienter.* In the Motion (at 16), Defendants established that the May 9, 2023 Form 8-K signed by Mr. Varma (containing certain restated financial metrics) and the SOX certifications signed by Defendants Mowry, Seth, Drummond, Harris, and Hopkins (containing certain alleged misstatements), without more, contribute nothing to scienter. In the Opposition (at 20), Plaintiff asserts that "these SOX Certifications are probative of scienter" because, at the time of signing, "the Company had already shut down its plant due to a mismatch between physical inventory and the ERP system, had already identified a material weakness over 'inventory count controls,' and had already delayed filing its 2022 Annual Report (due to that weakness)." Not remotely.

As an initial matter, the Opposition never mentions Mr. Varma, and thus Plaintiff has conceded its claims as to him. *See Teamsters Loc. 617 Pension & Welfare Funds* v. *Apollo Grp., Inc.*, 633 F. Supp. 2d 763, 809 (D. Ariz. 2009), *judgment vacated in part on reconsideration*, 690 F. Supp. 2d 959 (D. Ariz. 2010) (dismissing 10(b) claims given "plaintiff's implicit concession" that it did not adequately plead scienter when it failed to mention certain defendants in opposition).

As for the SOX certifications signed by Defendants Mowry, Seth, Drummond, Harris, and Hopkins, if those certifications turned out to contain false statements (had Plaintiff adequately alleged that), that would not remotely plead that these Defendants signed these certifications *knowing of the false statements*. Scienter and falsity are separate elements of Plaintiff's cause of action. Plaintiff still must plead with detailed facts that the plant shutdown and the other events described above in fact were known to Defendants *and* that those things were inconsistent with Defendants' statements at the time. The mere fact of the statements (even those that have signatures on them) does not help Plaintiff do this.

*Statements about AviClear.* As to statements regarding AviClear (which statements, again, are immaterial as a matter of law, as Plaintiff's non-response has conceded), Plaintiff attempts to plead scienter by asserting that Defendants' "later admissions" purportedly "contradict[ed]" Defendants' earlier, alleged misstatements that "touted the purportedly successful launch of AviClear, including its financial performance and demand they saw for it." (Opp. at 19-20.) Again, Plaintiff has failed to identify a single

-8-

statement about AviClear that, read in context, was false or misleading. (*See supra* Section A.3; Mot. at 9-12.)  Nor has Plaintiff identified a single statement about AviClear that touted the device's "financial performance."

In any event, none of the "later admissions" about AviClear that Plaintiff points to in its Opposition supports its scienter theory.  As an initial matter, Plaintiff cannot rely on Defendants' April, May, and August 2023 statements about how the AviClear rollout did not go as envisioned to show that Defendants *knew* that their general, optimistic statements made months to a year prior were false at the time they were made. (Opp. at 20.)  That is paradigmatic (and improper) fraud by hindsight.  *See In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *17 (N.D. Cal. July 21, 2020) ("It is well-settled in the Ninth Circuit that 'fraud by hindsight is not actionable' and 'honest optimism followed by disappointment is not the same as lying or misleading.'"); *In re Leapfrog Enter., Inc. Sec. Litig.*, 200 F. Supp. 3d 987, 1005 (N.D. Cal. 2016) ("Plaintiffs' theory is basically an assertion of fraud by hindsight — judging the statements on how things actually turned out subsequently.  Such proof is not adequate to state a claim.").  In addition, certain of Defendants' purported "admissions" *contradict* Plaintiff's position (because they do not contradict Defendants' earlier statements).  As just one example, in support of its assertion that "[a]ny doubt about Defendants' scienter" is "erased by their later statements admitting they failed to properly allocate resources" within the Company, Plaintiff points to Ms. Hopkins's May 9, 2023 statement during the Q1 2023 earnings call that Cutera's first quarter 2023 results were "below expectations" because "the volume of Aviclear deals in the fourth quarter diverted sales attention away from core capital deals."  (Opp. at 20.)  Again, as discussed above (*supra* Section A.3) and in the Motion (at 10), Ms. Hopkins's explanation during the Q1 2023 earnings call — that the sales team "was directed to maintain focus on Aviclear placements" and that "we are now shifting our Aviclear commercial emphasis towards device utilization" (AC ¶ 272) — is entirely *consistent* with what Defendants had told investors throughout 2022:  that placing devices was paramount in 2022 and driving "utilization" was a goal for 2023 (*see*, *e.g.*, Exs. D at 5; E at 6; L at 6).  That Cutera later failed to realize its vision for AviClear does not transform Defendants' earlier, optimistic statements about the device and Cutera's strategy for launching it into knowing or deliberately reckless falsehoods.

**The CW allegations.**  Plaintiff relies heavily on CW allegations to try to plead scienter.  The Motion

-9-

made clear that they are inadequate. The Opposition purports to address these deficiencies but fails for multiple reasons.

*First*, as an initial matter, despite Plaintiff's contention, the Motion does not "impose a much higher pleading standard" than is required under the PSLRA. (Opp. at 18.) The Ninth Circuit has made abundantly clear that the PSLRA "requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail." *Eminence Cap., LLC* v. *Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("This is not an easy standard to comply with — it was not intended to be — and plaintiffs must be held to it."). Thus, a securities plaintiff relying on CW allegations to try to plead scienter must "describe[]" such allegations "with sufficient particularity to establish [the CWs'] reliability and personal knowledge," and the CW allegations "must themselves be indicative of scienter." *Zucco Partners, LLC* v. *Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009).

The Complaint alleges nothing of the kind. Rather, the CW allegations are based in large part on hearsay or otherwise lack indicia of reliability and are always — every single allegation of every single CW — devoid of meaningful detail. (*See*, *e.g.*, AC ¶ 55 (CW1 alleging that Cutera's "struggle with supply chain and inventory problems throughout 2023 were known to Defendant Mowry" without saying what those problems were or when exactly in 2023 these became known to Mr. Mowry or how Mr. Mowry knew about them (besides some persons' supposedly having told him some unspecified thing(s) at some unspecified time(s))); *id.* ¶ 114 (CW1 alleging that she "recalled others telling her that they had also spoken to Mowry about their concerns with Aviclear's poor financial performance" without saying when these "others" spoke to CW1 or Mr. Mowry and about what specifically and based on what); *id.* ¶ 56 (CW2 alleging that "there was pushback from customers regarding AviClear, and some customers were so dissatisfied with AviClear that they tried to send it back" without explaining why or how many customers were dissatisfied or when any of this supposedly happened or how CW2 knows any of it).) Time and again, courts in this Circuit have held that CW allegations of this sort are unreliable and lack the particularized facts necessary to plead scienter. *See*, *e.g.*, *Intel*, 2023 WL 2767779, at \*23 (CW allegation based on "chain of hearsay is not sufficiently reliable to credit" what the CEO and Board knew, and CW's "bare allegation that there were yield problems at some unspecified time does not support an inference that any Individual Defendant knew of delays or was deliberately reckless"); *Sylebra Cap. Partners Master Fund Ltd* v. *Everbridge,*

*Inc.*, 2024 WL 2107383, at *8 (C.D. Cal. Mar. 18, 2024) ("While the CWs reference a 'stream of complaints,' 'general concerns,' and use several 'alarming adjectives,' 'the complaint does not plead sufficient details about these allegations sourced to the [16] CWs that would demonstrate a strong inference of scienter in Defendants' later statements.'" (cleaned up) (quoting *Nguyen* v. *Endologix, Inc.*, 962 F.3d 405, 416-17 (9th Cir. 2020)); *Norfolk Cnty. Ret. Sys.*, 2018 WL 3126393, at *7-8 (rejecting allegations of CWs who "refer[red] generally to 'conference calls' and 'updates' given to senior management, but fail[ed] to identify any call, meeting or other type of communication" specifically).

*Second*, in response to Defendants' pointing out that no CW can speak for the entire 24-month class period because each CW left Cutera before the end of that period (Mot. at 16-17 & n.7), Plaintiff claims that "the CWs were employed during the Class Period, and thus were in a position to know what was happening at Cutera during that time" (Opp. at 18). Well, sure. The CWs who worked at Cutera for some duration of the class period (potentially) could speak to events that occurred during that period. But the Complaint offers no basis to give any weight to allegations from CWs — including CWs 2, 3, 4, 6, and 7 — who purport to speak about events that pre- or post-date their tenures at Cutera. (*See* Mot. at 16-17 & n.7); *Nguyen* v. *Endologix, Inc.*, 962 F.3d 405, 416 (9th Cir. 2020) (finding "ample basis to question aspects of [a CW's] claimed knowledge and his effort to impute scienter to the defendants" when "[m]any" of the challenged statements "were made after [the CW] left" the company); *Kipling* v. *Flex Ltd.*, 2020 WL 7261314, at *11 (N.D. Cal. Dec. 10, 2020), *aff'd*, 2021 WL 6101391 (9th Cir. Dec. 21, 2021) (giving little weight to statements of CW who left the company "six months before the class period ended").

*Finally*, in its Opposition (at 16), Plaintiff claims that its "CW allegations are corroborative and tell a plausible and coherent narrative." It would be weird for Plaintiff to have included CW allegations that were not generally in agreement with the theory of its Complaint. But the fact that these CW allegations are thematically similar to other of Plaintiff's allegations does not somehow make vague hearsay detailed and reliable. *See*, *e.g.*, *In re Metawave Commc'ns. Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1070 (W.D. Wash. 2003) ("The [CWs] corroborate with one another, to the extent that the information that they possessed overlapped. However, a shared opinion among [CWs] does not necessarily indicate either falsity or a strong inference of scienter if the allegations themselves are not specific enough."). Plaintiff relies on the Ninth Circuit's recent ruling in *Glazer Capital Management, L.P.* v. *Forescout Technologies, Inc.*, 63 F.4th

747 (9th Cir. 2023), but that case illustrates exactly what Plaintiff's CWs fail to do. In *Glazer*, the 20 CWs told a "reasonably plausible story about [the company-defendant's] state of affairs" because "[m]any of the CWs described conversations that they themselves heard" (something virtually none of Plaintiff's CWs even purport to do), and the CWs in *Glazer* offered "plenty of allegations of verifiable facts" (which none of the CWs do). *Id.* at 771-72.[4] In sum, Plaintiff's CW allegations come nowhere close to meeting the PSLRA's high bar.

*The executive departures.* The Motion (at 22-23) showed that the departures of Messrs. Mowry, Plants, and Seth do not support a strong inference of scienter because no departure was suspicious or uncharacteristic. In its Opposition (at 21-23), Plaintiff asserts that the "proximity of the abrupt departures" to the "corrective disclosures" renders them "suspicious" because these Defendants "were directly responsible for the botched AviClear rollout and the inventory controls failure." This is precisely the conclusion that Plaintiff alleged in the Complaint. As explained in the Motion, however, without more, Plaintiff cannot refute the more compelling inference that Messrs. Mowry, Plants, and Seth left Cutera because of poor performance. *See Intel*, 2023 WL 2767779, at *24 (finding "inference that [CEO] and [Chief Engineering Officer] were terminated for performance failures" shortly after a delayed product rollout "to be more compelling than the inference of scienter urged by Lead Plaintiffs"). For that reason, Plaintiff's reliance on *Shenwick* v. *Twitter, Inc.*, 282 F. Supp. 3d 1115 (N.D. Cal. 2017), misses the mark: *Shenwick* "is distinguishable because that case involved additional evidence, beyond temporal proximity, that the alleged fraud was the reason for the departures." *Inchen Huang* v. *Higgins*, 2019 WL 1245136, at *14 (N.D. Cal. Mar. 18, 2019). Here, Plaintiff "point[s] to no particularized allegation[s] refuting the reasonable assumption" that Messrs. Mowry, Plants, and Seth were fired or resigned "simply because the errors that lead to the restatement occurred on [their] watch or because [they] failed adequately to supervise [their]

---

[4]    Other cases cited in the Opposition also underscore the Complaint's deficiencies because they describe successful complaints that do not resemble Plaintiff's. *See*, *e.g.*, *Lloyd* v. *CVB Fin. Corp.*, 811 F.3d 1200, 1208 (9th Cir. 2016) ("[T]he statements reported by the [unnamed] COO were specific in time, context, and details, and involved important communications from a chief executive officer to his Board."); *Robb* v. *Fitbit Inc.*, 2017 WL 219673, at *5 (N.D. Cal. Jan. 19, 2017) (crediting "concrete" CW allegations that went "beyond merely claiming that executives were involved in day-to-day operations," and CWs had "personal knowledge about the contents of the reports" at issue); *Hatamian* v. *Advanced Micro Devices, Inc.*, 87 F. Supp. 3d 1149, 1163 (N.D. Cal. 2015) ("The confluence of these specific allegations supports this Court's finding that the PSLRA's high standard for alleging scienter has been met here.").

SULLIVAN & CROMWELL LLP

department." *Zucco Partners*, 552 F.3d at 1002.

As also explained in the Motion (at 22), executive departures may evince scienter where the departure "was uncharacteristic *when compared to the defendant's typical hiring and termination patterns.*" *Zucco Partners*, 552 F.3d at 1002 (emphasis added). Like the Complaint, the Opposition does not even attempt to compare the departures of Messrs. Mowry, Plants, and Seth with anyone else's departure from Cutera ever. Not that this would be likely to help Plaintiff in any event — executive departures after bad news comes to light are "hardly uncharacteristic since '[m]ost major stock losses are often accompanied by management departures.'" *Intel*, 2023 WL 2767779, at \*24.

**The AviClear bonuses.** The Complaint alleges that, between April 2022 and April 2023, Messrs. Mowry, Plants, and Seth rushed the AviClear launch to maximize their personal compensation. (AC ¶¶ 101-10.) The Motion showed, however, that the Complaint makes no effort to plead a correlation between any of these Defendants' compensation and Cutera's bottom line (let alone the requisite "strong" correlation), and that the Complaint's own allegations belie Plaintiff's theory in any event. (Mot. at 21-22.) The Opposition asserts that the "AviClear Bonus is further evidence of scienter because its achievement milestones were linked primarily to the placement of AviClear devices and AviClear's financial performance." (Opp. at 23.) But the Complaint alleges that Messrs. Mowry's, Plants's, and Seth's financial incentive had nothing to do with AviClear's financial performance. (*See* AC ¶ 101 (alleging that the "near-term achievement milestones" — *i.e.*, (i) obtaining FDA approval and placing the first AviClear device by April 2022, as well as (ii) placing an unspecified number of devices by April 2023 — were "not" linked to "generating revenue for Cutera").)

Even if the bonuses at least arguably incentivized some Defendant to misstate Cutera's financial results or anything else, Plaintiff would still have to contend with the fact that those bonuses were relatively small, meaning any such incentive was small. Plaintiff relies on *Evanston Police Pension Fund* v. *McKesson Corp.*, 411 F. Supp. 3d 580, 603 (N.D. Cal. 2019), but in that case, the plaintiff specifically pleaded that the executive defendants' "compensation from stock and cash awards far outstripped their base salaries." Here, by contrast, the AviClear bonus was a fraction of these Defendants' total compensation. (*See* Mot. at 22.)

**The restatement.** The Motion established that reporting false financial results is indicative of

SULLIVAN & CROMWELL LLP

-13-

scienter only where the falsity is "patently obvious" — meaning that the facts are so prominent that it would be "absurd to suggest" that management was unaware of them. (Mot. at 20.) As detailed in the Motion (at 20-21), Cutera explained the adjustments it made to correct, among other things, the accounting errors that gave rise to the restatement, but the Complaint does not allege that anyone knew anything about these accounting errors at the time, let alone that any of them was obvious. In the Opposition (at 22-23), Plaintiff asserts that "the Complaint links the restatement with the inadequate controls over inventory," and points to the plant shutdown in January 2023 to contend that the facts concerning Cutera's inventory-control problems were "immediately obvious to Cutera's corporate management." That is insufficient. Again, the Complaint nowhere alleges that the inventory problem that resulted in the shutdown is the same problem that caused the restatement. (Mot. at 18, 20-21.)

***Core-operations doctrine.*** The Motion (at 23-24) demonstrated that the Complaint's allegations are inadequate to invoke the core-operations doctrine, not least because the CW allegations upon which Plaintiff relies to invoke that doctrine are vague, speculative, and otherwise unreliable. In its Opposition (at 23-24), Plaintiff continues to rely on essentially the same CW allegations, together with purported "admissions" by Defendants — including the statement in the Motion that AviClear "undoubtedly is very important to Cutera" — to assert that AviClear and internal controls were critical to the Company's core operations such that knowledge of issues with either can be imputed to the individual Defendants. Not so. That the AviClear product is important to Cutera does not mean that any problem at all that relates somehow to AviClear thus implicates a "core operation." "In most securities fraud cases, the topics about which a company allegedly misled the market will be important to the company and to investors, so importance, without more, is not the 'rare circumstance' envisioned by *South Ferry*." *Intel*, 2023 WL 2767779, at \*24 (rejecting plaintiffs' core-operations theory premised on a product's "great importance" to Intel). An issue that is so critically important to a company that the most reasonable inference is that many, and certainly leadership, at the company knew of it at the time — that is the sort of issue that courts have held to fall within the core-operations doctrine. *E.g.*, *In re Toyota Motor Corp. Sec. Litig.*, 2011 WL 2675395, at \*4 (C.D. Cal. July 7, 2011) (holding that the core-operations theory supported a strong inference of scienter because "the unintended acceleration defect" that affected Toyota's vehicles was an exceptionally "extreme" operational problem such that it was appropriate to attribute knowledge of those problems to Toyota and

its key officers). Plaintiff identifies nothing of the kind.

Plaintiff's assertion that Messrs. Mowry and Plants were closely involved in the development and launch of AviClear fares no better. (Opp. at 24.) Plaintiff points to (i) Mr. Plants's statement that he was "heavily involved in the development of" AviClear; (ii) Cutera's statement that Mr. Mowry was "directly responsible" for, among other things, "execut[ing] the limited commercial rollout"; and (iii) CW allegations that "the directive to move away from Cutera's core business to focus on AviClear came directly from Mowry and Plants," and that Mr. Mowry "attended weekly conference call meetings where AviClear's performance was discussed." (*Id*.) But, once again, these "allegations provide no particularized details about what information" Messrs. Mowry and Plants "would have been privy to or why access to that information supports scienter." *Intel*, 2023 WL 2767779, at *24 (rejecting plaintiffs' "actual access" core-operations theory premised on "allegations that [CEO] and [Chief Engineering Officer] monitored [a product's] progress" where the complaint lacked "particularized details about what information they would have been privy to or why access to that information supports scienter").

### 2. The Opposition Still Fails Adequately To Plead Corporate Scienter.

As the Motion demonstrated (at 24), Plaintiff fails to plead scienter as to the numerous statements attributed to Cutera but not any individual. Plaintiff's only response is a two-sentence footnote that it has pleaded scienter as to Cutera "[b]ecause the Complaint alleges scienter against the Individual Defendants." (Opp. at 25 n.12.) As set forth in the Motion and above, Plaintiff has not adequately alleged scienter as to any individual Defendant for his or her own statements, let alone has Plaintiff alleged scienter as to unidentified makers of other challenged statements.

## II. PLAINTIFF DOES NOT STATE A CLAIM UNDER SECTION 20(A).

Because Plaintiff fails adequately to plead a primary violation as to any individual Defendant, Plaintiff's claims under Section 20(a) necessarily fail. (Mot. at 25.)

### CONCLUSION

The Court should dismiss the Complaint.

Dated:  October 9, 2024

/s/ Brendan P. Cullen
Brendan P. Cullen (SBN 194057)
(cullenb@sullcrom.com)
Alexis C. Holmes (SBN 321393)

SULLIVAN & CROMWELL LLP

-15-

(holmesa@sullcrom.com)
SULLIVAN & CROMWELL LLP
550 Hamilton Avenue
Palo Alto, California 94301
Telephone:     (650) 461-5600
Facsimile:     (650) 461-5700

*Counsel for Defendants Cutera, Inc., David H. Mowry, Rohan Seth, J. Daniel Plants, Sheila Hopkins, Taylor Harris, Stuart Drummond, and Vikram Varma*

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 4:23-CV-02560-JST