1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

IN RE CUTERA, INC. SECURITIES
LITIGATION

8
9
10
11

Case No. 4:23-cv-02560-JST

**ORDER GRANTING MOTION TO DISMISS**

Re: ECF No. 72

12
13      Before the Court is Defendants' motion to dismiss all claims in the amended complaint

14  ("AC").  ECF No. 72.  The Court will grant the motion.

15  **I.      BACKGROUND**

16          **A.      Summary of the Allegations in the AC**

17          For the purpose of resolving the present motion, the Court accepts as true the factual

18  allegations in the AC, ECF No. 59.

19          Lead Plaintiff New England Teamsters Pension Fund (hereinafter, "Plaintiff") brings this

20  securities fraud proposed class action against Defendants Cutera, Inc. ("Cutera" or "the

21  company"), and several of its former and current officers: David Mowry, former Chief Executive

22  Officer ("CEO"); J. Daniel Plants, former Chairman of the Board; Rohan Seth, former Chief

23  Financial Officer ("CFO"); Sheila Hopkins, former Interim CEO; Stuart Drummond, current

24  Interim CFO; Taylor Harris, current CEO; and Vikram Varma, former General Counsel and

25  Compliance Officer.  *Id.* ¶¶ 35–41.  Plaintiff alleges violations of Sections 10(b) and 20(a) of the

26  Securities Exchange Act of 1934 (the "Exchange Act") on its own behalf and on behalf of a

27  proposed class of shareholders who purchased Cutera common stock from March 1, 2022, through

28  March 21, 2024, inclusive ("Class Period").

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1       Cutera is a global provider of laser and other energy-based aesthetic and dermatology

2  solutions for medical practitioners worldwide.  *Id.* ¶ 63.  Cutera's operations are segregated into

3  two reportable business segments: (1) Core Capital (which included core capital equipment and

4  consumables); and (2) AviClear, which is a prescription-free laser-based treatment solution for

5  acne that Cutera initially launched in April 2022.  *Id.* ¶¶ 65–68.

6       Plaintiff alleges that, throughout the Class Period, Defendants made statements to investors

7  that were misleading because they omitted facts that, according to Plaintiff, should have been

8  disclosed to make the statements not misleading.  First, Defendants allegedly made statements that

9  created the false impression that Defendants maintained adequate internal controls over the

10  company's inventory and related financial reporting.  *See, e.g.*, *id.* ¶¶ 287–88, 302–03.  Plaintiff

11  alleges that, in reality, the company did not have adequate internal controls over those matters, and

12  this ultimately resulted in the company reporting inaccurate financial figures in the first and

13  second quarters of 2023 (Q1 2023 and Q2 2023), which had to be restated in 2024.  *See id.* ¶¶ 391,

14  397.  Plaintiff alleges that Defendants did not reveal the company's problems with its inventory

15  and financial reporting controls to investors at the time they made misleading statements about the

16  company's internal controls and financial metrics.  Second, Defendants allegedly made statements

17  that created the false impression that the company's launch of AviClear had been successful and

18  that there was significant demand from physicians and consumers for the product.  *See, e.g.*, *id.* ¶¶

19  223, 229, 236, 240, 244, 248, 254, 256.  Plaintiff alleges that, in reality, demand for AviClear was

20  not strong and customers were dissatisfied with the product.  *See id.* ¶¶ 68, 106–12.  Defendants

21  allegedly did not reveal those problems to investors at the time they made statements touting

22  AviClear's success and physician and consumer demand for that product.

23       Plaintiff alleges that Defendants' misleading statements caused the price of Cutera

24  securities to trade at artificially inflated prices during the Class Period.  *See id.* ¶ 217.

25       The truth about the company's inadequate internal controls and AviClear issues allegedly

26  emerged over the course of a series of corrective disclosures or the materialization of the

27  concealed risk events.  *See id.* ¶ 27.  However, despite the truth partially leaking out, the

28  company's stock price remained inflated after each partial disclosure because Defendants

continued reassuring investors that the AviClear rollout was a success and that there were no problems with Cutera's internal controls. *See id.* ¶ 28. The full truth was finally revealed on March 21, 2024. *See id.* ¶¶ 28, 196, 287.

### B. Procedural History

Plaintiff filed this action on May 24, 2023, ECF No. 1, and filed the AC on May 10, 2024. ECF No. 59. Defendants moved to dismiss the AC on July 8, 2024. ECF No. 72. Plaintiff opposes the motion, ECF No. 76, and Defendants have filed a reply, ECF No. 77. The Court took the motion under submission without a hearing on October 31, 2024. ECF No. 78.

On March 3, 2025, Defendants filed a suggestion of bankruptcy and notice of stay, ECF No. 79, at which point the Court administratively closed the case, ECF No. 80. Thereafter, Plaintiff filed a notice explaining that the automatic stay under 11 U.S.C. § 362(a) applies only to debtors Defendant Cutera, Inc. and its subsidiary Crystal Sub, LLC, but not to the remaining Defendants in this action. *See* ECF No. 81. Plaintiff subsequently filed an update regarding the bankruptcy proceeding, in which it represented that it agreed with Defendant Cutera on a Class Opt-Out Order that "preserves the claims of Lead Plaintiff and the Class against the Non-Debtor Defendants and enables this action to continue against them." *See* ECF No. 84 at 3. On May 9, 2025, the Court directed the Clerk to administratively re-open the case given that the action can proceed against the individual Defendants (Defendants David Mowry, Rohan Seth, J. Daniel Plants, Sheila Hopkins, Taylor Harris, Stuart Drummond, and Vikram Varma), who are non-debtors. *See* ECF No. 85.

Because the present action can proceed only against the individual Defendants in light of the automatic stay under 11 U.S.C. § 362(a), the Court resolves the present motion to dismiss only as it pertains to the individual Defendants.

## II. REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2). "Accordingly, '[a] court

1    may take judicial notice of matters of public record without converting a motion to dismiss into a

2    motion for summary judgment[,]" but a "court cannot take judicial notice of disputed facts

3    contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th

4    Cir. 2018) (citation omitted).

5            Defendants request that the Court take judicial notice of twenty-seven documents (Exhibits

6    A through Exhibit AA), which are SEC filings and press releases pertaining to Fastly and

7    transcripts of calls with analysts and investors. *See* ECF No. 72-2.

8            Because Plaintiff does not dispute their authenticity and accuracy, the Court grants

9    Defendants' request for judicial notice of Exhibits A through Z, as it is routine for a court to take

10   judicial notice of SEC filings, press releases, and transcripts of calls with analysts and investors

11   for the purpose of determining what information was available to the market. *See, e.g.*, *Metzler*

12   *Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (holding that the

13   district court properly took judicial notice of publicly available financial documents and SEC

14   filings); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir.

15   2009) (holding that courts "may take judicial notice of publications introduced to indicate what

16   was in the public realm at the time, not whether the contents of those articles were in fact true")

17   (citation and internal quotation marks omitted); *Wochos v. Tesla, Inc.*, No. 17-CV-05828-CRB,

18   2018 WL 4076437, at *2 (N.D. Cal. Aug. 27, 2018) (taking judicial notice of earnings call

19   transcript "for the sole purpose of determining what representations [defendants] made to the

20   market"). The Court will take judicial notice of the statements in these documents for the purpose

21   of determining what information was available to the market, but not for the truth of the matters

22   asserted therein or for the purpose of resolving factual disputes. *See Khoja*, 899 F.3d at 999–1001.

23           The Court, however, declines to take judicial notice of Exhibit AA, which is a letter from

24   the Special Committee of Cutera's Board of Directors to the company's investors. The Court

25   finds that this document is not relevant to the resolution of the present motion. *See Pac. Gas &*

26   *Elec. Co. v. Lynch*, 216 F. Supp. 2d 1016, 1025 (N.D. Cal. 2002) ("A judicially noticed fact may

27   not be subject to reasonable dispute and must be relevant.").

28

United States District Court
Northern District of California

United States District Court
Northern District of California

### III.    JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

### IV.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

A complaint that sounds in fraud must satisfy the requirements of Rule 9(b). Rule 9(b) provides that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *See* Fed. R. Civ. P. 9(b). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 765 (9th Cir. 2023) (citation and internal quotation marks omitted). "The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Id.* (citation and internal quotation marks omitted). This serves "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 404 (9th Cir. 2021) (citation and internal quotation marks omitted).

"If a claim alleges securities fraud, the Private Securities Litigation Reform Act

5

('PSLRA'), 15 U.S.C. § 78u–4, also applies." *Khoja*, 899 F.3d at 1008.

## V.    DISCUSSION

Plaintiff asserts a claim under Section 10(b) and a derivative claim under Section 20(a) premised on 44 allegedly misleading statements made by Defendants in SEC filings, calls with analysts and investors, and press releases during the Class Period.

Defendants move to dismiss all claims in the AC, arguing that Plaintiff has not alleged facts to support the elements of falsity and scienter.

### A.    Claims under Section 10(b) of the Exchange Act and SEC Rule 10b–5

Section 10(b) of the Securities Exchange Act of 1934 declares it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary." 15 U.S.C. § 78j(b). "SEC Rule 10b–5 implements [Section 10(b)] by making it unlawful to . . . 'make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011) (quoting 17 C.F.R. § 240.10b–5). "Thus, to prevail on a claim for violations of either Section 10(b) or Rule 10b–5, a plaintiff must prove six elements: (1) a material misrepresentation or omission by the defendant [falsity]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051–52 (9th Cir. 2014) (citation and internal quotation marks omitted).

#### 1.    Material Misrepresentation or Omission (Falsity)

The first element of a claim under Section 10(b) and Rule 10b–5 requires a plaintiff to show that the defendant made a statement that was false or misleading as to a material fact. *Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988). This requires, in relevant part, "specify[ing] each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading[.]" *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 321 (2007) (quoting 15 U.S.C. § 78u–4(b)(1)). "In setting forth the reasons why they contend that each challenged

United States District Court
Northern District of California

statement is misleading, securities plaintiffs may rely on either an affirmative misrepresentation theory or an omission theory." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1188 (9th Cir. 2021) (citation omitted). "[A]n affirmative misrepresentation is an 'untrue statement of a material fact,' and a fraudulent omission is a failure to 'state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.'" *Id.* (citation omitted).

"Falsity is alleged when a plaintiff points to defendant's statements that directly contradict what the defendant knew at that time." *Khoja*, 899 F.3d at 1008 (citation omitted). "Even if a statement is not false, it may be misleading if it omits material information." *Id.* at 1008–09 (citation omitted). Information is material if "a reasonable investor would have acted differently if the misrepresentation had not been made or the truth had been disclosed." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). "[T]o be actionable under the securities laws, an omission must be misleading . . . it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014) (citation and internal quotation marks omitted). "Disclosure [of omitted information] is required . . . only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" *Matrixx Initiatives*, 563 U.S. at 44 (quoting 17 C.F.R. § 240.10b–5(b)).

### a. Challenged Statements Containing Financial Figures That Were Later Restated

Defendants concede that certain challenged statements made in May and August 2023 that contained financial figures that Cutera later restated in 2024 are false or misleading because Cutera itself disclosed that those financial figures were incorrect. *See* ECF No. 72 at 13. The challenged statements in question are Statements 29[1] (AC ¶ 281), 31 (AC ¶ 282), 32 (AC ¶ 282), 33 (AC ¶ 281), 37 (AC ¶ 296), 39 (AC ¶ 297), 40 (AC ¶ 297), and 41 (AC ¶ 296). In light of

---

[1] For ease of reference, the statement numbers attributed to each challenged statement are based on the numbers used in Defendants' motion to dismiss, as well as the chart attached to their motion, *see* ECF No. 72 at 33–39.

1    Defendants' concession, the Court finds that Plaintiff has adequately alleged falsity with respect to

2    Statements 29 (AC ¶ 281), 31 (AC ¶ 282), 32 (AC ¶ 282), 33 (AC ¶ 281), 37 (AC ¶ 296), 39 (AC

3    ¶ 297), 40 (AC ¶ 297), and 41 (AC ¶ 296).

### b.    Statement of March 1, 2022, Regarding Internal Control Measures Being Designed

6    Plaintiff alleges that, in the company's annual report for 2021 of March 1, 2022,

7    Defendants Mowry, Seth, Plants, and Hopkins misled investors because they stated that they were

8    "*designing and implementing effective internal control measures to improve [the company's]*

9    *internal controls over financial reporting and remediate*" a material weakness.  *See* AC ¶ 219

10    (emphasis in the original).  Plaintiff argues that, in reality, the Defendants in question "had not

11    designed or implemented effective control measures."  *See* ECF No. 76 at 17.

12    Defendants contend that this statement was not false or misleading when made because

13    what Defendants stated was that Cutera had "*begun the process of* designing and implementing

14    effective control measures" but Plaintiff has not alleged any facts that Defendants had not begun

15    that process at the time the statement was made.  *See* ECF No. 72 at 14–15 (emphasis added).

16    The Court agrees with Defendants and finds that Plaintiff has not plausibly alleged that

17    Statement 1 was false or misleading when made.  Plaintiff's theory of falsity with respect to this

18    statement depends on an interpretation that does not reflect what Defendants said.  Plaintiff alleges

19    that Defendants stated that they were "designing and implementing effective internal control

20    measures," *see* AC ¶ 219, but what they said was that the company "*has begun the process* of

21    designing and implementing effective internal control measures," *see* ECF No. 72-1 at 9

22    (emphasis added).  Plaintiff points to no allegations suggesting that Defendants had *not* begun the

23    process of designing and implementing effective control measures at the time they made

24    Statement 1.  To the contrary, the allegations to which they point raise the inference that

25    Defendants had begun that process as of the time that Statement 1 was made.  *See* AC ¶¶ 85, 87–

26    88 (alleging that new internal control systems began to be implemented in January 2022).

27    Accordingly, the Court GRANTS Defendants' motion to dismiss to the extent that it is

28    premised on arguments that Plaintiff has not alleged that Statement 1 was false or misleading

United States District Court
Northern District of California

1    when made.

2            **c.**        **Sarbanes-Oxley ("SOX") Certifications of April 7, 2023**

3          Plaintiff alleges that the April 7, 2023, SOX certifications made by Defendants Mowry and

4    Seth in Cutera's annual report for fiscal year 2022 (Statement 26, AC ¶ 265; Statement 27, AC ¶

5    266; and Statement 28, AC ¶ 266) were false or misleading when made because they created the

6    false impression that (1) "the information contained in the annual report fairly presents, in all

7    material respects, the financial condition and results of operations of Cutera, Inc. for the periods

8    presented therein" (Statement 26, AC ¶ 265); (2) that Defendants Mowry and Seth "[e]valuated

9    the effectiveness of the registrant's disclosure controls and procedures" (Statement 27, AC ¶ 266);

10   and (3) Defendants Mowry and Seth "designed such internal control over financial reporting, or

11   caused such internal control over financial reporting to be designed under the Company's

12   supervision, to provide reasonable assurance regarding the reliability of financial reporting and the

13   preparation of financial statements" (Statement 28, AC ¶ 266).  Plaintiff alleges that, contrary to

14   what they represented in the SOX certifications at issue, Defendants lacked internal controls over

15   inventory, which ultimately required the issuance in 2024 (the following year) of a restatement of

16   financial figures for Q1 2023 and Q2 2023.  *See* AC ¶ 266.

17         Defendants argue that Plaintiff has not plausibly alleged that these statements were false or

18   misleading because it alleges no facts indicating that Defendants Mowry and Seth knew that their

19   certifications, or any financial statements reported in the SEC filings to which the certifications

20   were attached, were untrue at the time the statements were made.  *See* ECF No. 72 at 15–16.

21         The Court finds that Plaintiff has not plausibly alleged that Statements 26 and 28 were

22   false or misleading when made.  Statement 26 provides that "the information contained in the

23   annual report fairly presents, in all material respects, the financial condition and results of

24   operations of Cutera, Inc. for the periods presented therein," and Statement 28 provides that

25   Defendants Seth and Mowry designed or caused to be designed internal controls to "provide

26   reasonable assurance regarding the reliability of financial reporting and the preparation of

27   financial statements."  Thus, both statements go to the accuracy or reliability of the financial

28   reporting and preparation of financial statements for the period covered by the annual report for

fiscal year 2022. Plaintiff has not alleged facts that plausibly suggest that the company's financial reporting and preparation of financial statements were not accurate or reliable during the period covered by the annual report for 2022, and that Defendants Mowry and Seth knew that at the time they signed the certifications in question. *See Wanca v. Super Micro Computer, Inc.*, No. 5:15-CV-04049-EJD, 2018 WL 3145649, at *6 (N.D. Cal. June 27, 2018) (holding that, to "successfully plead falsity [with respect to an SOX certification], Plaintiff must also allege facts explaining why the declarants knew the financial reporting was false at the time it was made"). Plaintiff points to the financial figures that the company ultimately restated in 2024, *see* ECF No. 76 at 14–15, but those restated figures were not for the period covered by the 2022 annual report but for a different period of time (Q1 2023 and Q2 2023). Accordingly, those restated figures do indicate that the financial reporting for the period covered by the annual report for 2022 was inaccurate or unreliable. *See Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 808 (N.D. Cal. 2019) (holding that SOX certifications regarding the financial condition and results of operations of the company were not false when made where the plaintiff did not allege that the financial reports relating to those certifications contained inaccuracies).[2] Plaintiff also points to allegations that the problems with the company's inventory controls started in the second or third quarter of 2022, *see. e.g.*, AC ¶ 90, but such allegations do not raise the inference that those problems caused the company's financial reporting and preparation of financial statements for the period covered by the annual report for 2022 to be inaccurate or unreliable.

With respect to Statement 27, the Court also finds that Plaintiff has not plausibly alleged that it was false or misleading when made. That statement provides that Defendants Mowry and Seth "[e]valuated the effectiveness of the registrant's disclosure controls and procedures." Plaintiff has not pointed to any allegations indicating that Defendants Mowry and Seth did not, in fact, evaluate the effectiveness of the company's disclosure controls and procedures prior to making Statement 27, and that they knew that when they made Statement 27. Plaintiff argues only that the statement was misleading because Cutera "did not have 'effective' disclosure controls at

---

[2] Defendants cited *Veal*, which the Court finds to be persuasive, in their opening brief, and Plaintiff did not distinguish it in its opposition.

that time," *see* ECF No. 76 at 16, but the absence of "effective" controls does not contradict the statement that Defendants Seth and Mowry had "evaluated" the effectiveness of the registrant's disclosure controls.

Accordingly, the Court GRANTS Defendants' motion to dismiss to the extent that it is premised on arguments that Plaintiff has not plausibly alleged that Statements 26, 27, and 28 were false or misleading when made.

### d. SOX Certifications of May 10, 2023, and August 9, 2023

Plaintiff alleges that SOX certifications made in Cutera's quarterly report for Q1 2023 of May 10, 2023 by Defendants Hopkins and Drummond (Statement 34, AC ¶ 287; Statement 35, AC ¶ 287; and Statement 36 ¶ 288), and SOX certifications made in Cutera's quarterly report for Q2 2023 of August 9, 2023 by Defendants Harris and Drummond (Statement 42, AC ¶ 302; Statement 43, AC ¶ 302; and Statement 44, AC ¶ 303) were misleading when made.  Plaintiff alleges that the statements in question created the false impression that (1) the financial statements and financial information contained in the reports "fairly represented" in all material respects "the financial conditions, results of operations and cash flows of the registrant as of, and for, the periods represented" in the reports (Statement 34, AC ¶ 287 and Statement 42, AC ¶ 302); (2) that Defendants "[d]esigned such internal control over financial reporting, or caused such internal control over financial reporting to be designed under the company's supervision" (Statement 35, AC ¶ 287, and Statement 43, AC ¶ 3023); and (3) that Defendants "[e]valuated the effectiveness of the registrant's disclosure controls and procedures" (Statement 36, AC ¶ 288 and Statement 44, AC ¶ 303).

Defendants argue that Plaintiff has not plausibly alleged that these statements were false or misleading when made because it alleges no facts indicating that Defendants Hopkins, Drummond, and Harris knew that their certifications, or any financial statements reported in the SEC filings to which the certifications were attached, were untrue at the time the statements were made.  *See* ECF No. 72 at 15–16.

The Court agrees with Defendants and finds that Plaintiff has not plausibly alleged that Statements 34, 35, 42, and 43 were misleading when made.  Statements 34 and 42 provide that

11

United States District Court
Northern District of California

"the financial statements, and other financial information included in this report, fairly represent in all material respects the financial conditions, results of operations and cash flows of the registrant as of, and for, the periods represented in this report," and Statements 35 and 43 provide that Defendants "[d]esigned such internal control over financial reporting, or caused such internal control over financial reporting to be designed under the company's supervision" to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements.  *See* AC ¶¶ 287, 302–03; *see also* ECF No. 72–1 at 309 (Ex. Q) and ECF No. 72–1 at 249 (Ex. U).  Thus, these statements address the accuracy or reliability of the financial reporting and preparation of financial statements for the periods covered by the Q1 2023 and Q2 2023 quarterly reports.  Plaintiff alleges that the financial reporting and preparation of financial statements for the periods covered by the Q1 2023 and Q2 2023 quarterly reports was not accurate or reliable because the financial figures in those reports were later restated in 2024 as a result of deficient inventory controls.  *See* AC ¶¶ 287, 302–03.  However, Plaintiff has not pointed to any allegations that raise the inference that Defendants Hopkins, Drummond, and Harris knew about the inaccuracy or unreliability of the financial reporting for Q1 2023 and Q2 2023, or about the allegedly deficient inventory controls, at the time they made Statements 34, 35, 42, and 43.  The allegations to which Plaintiff points say nothing about the awareness or knowledge of Defendants Hopkins, Drummond, and Harris concerning the unreliability of the company's financial reporting for Q1 2023 and Q2 2023 or the company's inadequate inventory controls as of May and August 2023.  *See* ECF No. 76 at 14–16 (citing AC ¶¶ 255, 164, 86, 89–90).  Accordingly, the Court concludes that Statements 34, 35, 42, and 43 were not false or misleading when made.  *See Wanca*, 2018 WL 3145649, at *6 (holding that, to "successfully plead falsity [with respect to an SOX certification], Plaintiff must also allege facts explaining why the declarants knew the financial reporting was false at the time it was made"); *cf. Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1024 (N.D. Cal. 2020) (holding that SOX certifications that attested to the accuracy of the financial reporting and adequacies in internal controls were false or misleading because the defendants "*were aware* of pre–existing material weaknesses as well as additional, then-existing material weaknesses in Amyris's internal control over financial reporting" at the time the

United States District Court
Northern District of California

1    statements were made) (emphasis added).

2         Plaintiff has not cited any authority that compels a different conclusion.  The authorities

3    that Plaintiff cites for the proposition that the SOX certifications at issue were false or misleading

4    are not helpful because they do not address the question of whether a plaintiff must allege facts

5    indicating that the defendant who made an allegedly false or misleading SOX certification was

6    aware, at the time that he made the certification, of information that rendered the certification false

7    or misleading.  *See* ECF No. 76 at 14 (citing *Cullen v. RYVYL Inc.*, No. 3:23-CV-0185-GPC-SBC,

8    2024 WL 898206, at *12 (S.D. Cal. Mar. 1, 2024); *Limantour v. Cray Inc.*, 432 F. Supp. 2d 1129,

9    1159 (W.D. Wash. 2006)).  To the extent that Plaintiff's cases hold that a plaintiff can allege

10    falsity with respect to an SOX certification without alleging that the defendant knew information

11    that contradicted the SOX certification or rendered it misleading at the time he made the

12    certification, those holdings would be inconsistent with the Ninth Circuit's instruction that

13    "[f]alsity is alleged when a plaintiff points to defendant's statements that directly contradict what

14    the *defendant knew at that time*."  *See Khoja*, 899 F.3d at 1008 (emphasis added); *see also Weston*

15    *Family Partnership LLLP v. Twitter, Inc.*, 29 F.4th 611, 621 (9th Cir. 2022) (affirming dismissal

16    of securities fraud claim for failure to plead falsity where "[p]laintiffs ha[d] not adequately alleged

17    that [defendants] even *knew* about these [adverse facts] when" they made the challenged

18    statements) (emphasis added).  The Court, therefore, declines to rely on Plaintiff's cases.[3]

19         The Court also finds that Plaintiff has not plausibly alleged that Statements 36 and 44 were

20    false or misleading when made.  Those statements provide that Defendants Hopkins, Harris, and

21    Drummond "evaluated" the effectiveness of the registrant's disclosure controls and procedures.

22    Plaintiff has not pointed to any allegations indicating that Defendants Hopkins, Harris, and

23

24    ---

[3] Other cases cited by Plaintiff are inapposite because they address the question of whether the
25    signatory of an SEC filing can be held liable for securities fraud under Section 10(b) as the
"maker" of an alleged misstatement in that filing, which is not at issue here.  *See Howard v.*
26    *Everex Sys., Inc.*, 228 F.3d 1057, 1061 (9th Cir. 2000) ("Although not totally clear on the issue,
the district court appeared to hold that because Hui did not participate in the drafting of the
27    allegedly false financial statements, he did not make a statement within the meaning of § 10(b).
We conclude that the district court erred in making this determination."); *Middlesex Ret. Sys. v.*
28    *Quest Software, Inc.*, No. CV066863DOCRNBX, 2008 WL 7084629, at *10 (C.D. Cal. July 10,
2008) (similar).

1    Drummond did not, in fact, evaluate the effectiveness of the company's disclosure controls and

2    procedures and that those Defendants knew that when they made Statements 36 and 44. *See*

3    *generally* ECF No. 76.

4        Accordingly, the Court GRANTS Defendants' motion to dismiss to the extent that it is

5    premised on arguments that Plaintiff has not plausibly alleged that Statements 34, 35, 36, 42, 43,

6    and 44 were false or misleading when made.

7                        **e.    Challenged Statements Relating to AviClear**

8        The remaining statements challenged in the AC that are the subject of Defendants' motion

9    to dismiss pertain to the success of the launch of AviClear and its impact on Cutera's Core Capital

10   business segment; the demand or interest in AviClear from physicians and patients; and the

11   alignment of Cutera's sales force to sell AviClear.

12       Defendants argue that Plaintiff's allegations do not raise the inference that those statements

13   were false or misleading when made because the AC lacks particularized allegations showing that

14   any of the Defendants knew information that contradicted the statements or rendered the

15   statements misleading at the time the statements were made. *See* ECF No. 72 at 16–20.

16   Defendants also argue that Plaintiff impermissibly relies on fraud by hindsight to try to plead

17   falsity with respect to some of the statements in question, and that some of the statements are

18   inactionable puffery. *See id.*

19       In their opposition, Plaintiff failed to respond to Defendants' arguments in connection with

20   Statement 2 (AC ¶ 221), Statement 3 (AC ¶ 222), Statement 6 (AC ¶ 228), Statement 9 (AC ¶

21   235), Statement 13 (AC ¶ 242), Statement 14 (AC ¶ 243), Statement 15 (AC ¶ 243), Statement 20

22   (AC ¶ 251), Statement 22 (AC ¶ 258), Statement 25 (AC ¶ 257), Statement 30 (AC ¶ 275), and

23   Statement 38 (AC ¶ 293).  The Court finds that Plaintiff has abandoned its securities fraud claims

24   to the extent that such claims are premised on those statements and GRANTS Defendants' motion

25   to dismiss with respect to the statements in question WITHOUT LEAVE TO AMEND. *See*

26   *Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, No. 15-CV-02938-HSG, 2018 WL 3126393, at *10 &

27   n.3 (N.D. Cal. June 26, 2018) (granting motion to dismiss without leave to amend with respect to

28   challenged statements on the ground that the plaintiffs "abandoned" their securities fraud claims

United States District Court
Northern District of California

based on those statements by failing to address the statements in their opposition) (citation omitted).

Plaintiff argues that the remaining challenged statements relating to AviClear (Statement 4, AC ¶ 223; Statement 5, AC ¶ 223; Statement 7, AC ¶ 229; Statement 8, AC ¶ 230; Statement 10, AC ¶ 236; Statement 11, AC ¶ 240; Statement 12, AC ¶ 240; Statement 16, AC ¶ 244; Statement 17, AC ¶ 244; Statement 18, AC ¶ 248; Statement 19, AC ¶ 250; Statement 21, AC ¶ 254; Statement 23, AC ¶ 256; Statement 24, AC ¶ 256) were misleading when made because they touted the successful launch of AviClear or that Cutera was seeing strong demand from patients and physicians for AviClear without revealing information that cut against those positive statements, namely (1) that the launch was actually a "failure" because it harmed the company's Core Capital business segment; and (2) that Cutera "had already experienced major quality, reliability, and order fulfillment problems affecting AviClear and non-AviClear devices." *See* ECF No. 76 at 18–19.

The Court finds that Plaintiff has not plausibly alleged that the statements listed above were false or misleading when made. First, Plaintiff does not point to any allegations in its opposition that support the inference that, at the time that each of the statements in question were made, the Defendants who made each statement knew that AviClear's launch had harmed the company's Core Capital business segment because it took away resources from it. *See* ECF No. 76 at 19. Accordingly, the Court cannot reasonably infer that the statements in question were false or misleading when made because they omitted that AviClear's launch harmed the company's Core Capital business segment. *See Khoja*, 899 F.3d at 1008 ("Falsity is alleged when a plaintiff points to defendant's statements that directly contradict what the defendant knew at that time.").

Second, Plaintiff points to some allegations for the proposition that, at the time that each of the statements in question were made, "Cutera had already experienced major quality, reliability, and order fulfillment problems affecting AviClear and non-AviClear devices." *See* ECF No. 76 at 19 (citing AC ¶¶ 226, 110–18, 233). However, the allegations to which Plaintiff points are insufficiently detailed and conclusory and thus do not raise the inference that any of the Defendants knew, at the time that each of the statements in question were made, that Cutera was

experiencing major quality, reliability, and order fulfillment problems. *See Weston*, 29 F.4th at 621 (affirming dismissal for failure to plead falsity where "[p]laintiffs ha[d] not adequately alleged that [defendants] even knew about these [adverse facts] when" they made the challenged statements).

For example, Plaintiff alleges that CW4 reported that, at an unspecified time, Cutera experienced problems delivering AviClear that resulted in cancelled orders, and that "it was 'impossible' for [Defendants] Huffman and Mowry to not know about these companywide problems." *See* AC ¶ 226. The Court cannot infer, based on those CW-based allegations, that Cutera had problems with AviClear deliveries and cancellations and that it would have been "impossible" for Defendants Huffman and Mowry not to know about them at the time the statements at issue were made. That is because Plaintiff alleges neither details about the number of the purported delays and cancellations and when they occurred nor facts describing how and when Defendants Huffman and Mowry would have known about them. *See Police Ret. Sys.*, 759 F.3d at 1063 (holding that witness statements are insufficient where they convey "only snippets of information"). The other allegations to which Plaintiff points are similarly vague and conclusory and are thus insufficient to raise the inference that the statements in question were false or misleading when made. *See, e.g.*, AC ¶ 110 (alleging that the AviClear device was "frequently failing" without explaining how, when, or how often it failed); *id.* ¶ 111 (alleging that an unspecified number of customers "did not want to buy or use AviClear" on unspecified dates); *id.* ¶ 114 (alleging that CW1 raised an unspecified "problem to [Defendant] Mowry" about AviClear); *id.* ¶ 115 (alleging that CW5 "participated in weekly conference call meetings with Mowry" and others at Cutera at unspecified times); *id.* ¶ 226 (alleging that, at an unspecified time, Defendant Hopkins "admitted" that there were AviClear quality and reliability problems); *id.* ¶ 117 (alleging that "CW 2 noted that many of her contacts informed her that they would not deal with Cutera due to a reputation for poor customer support and questionable practices" without specifying the "contacts," the dates of conversations with those "contacts," or the "questionable practices" that the "contacts" purportedly complained about); *see id.* (alleging that CW raised "concerns" about AviClear to others at Cutera at unspecified times).

Accordingly, the Court GRANTS Defendants' motion to dismiss to the extent that it is premised on arguments that Plaintiff has not plausibly alleged that Statement 4, AC ¶ 223; Statement 5, AC ¶ 223; Statement 7, AC ¶ 229; Statement 8, AC ¶ 230; Statement 10, AC ¶ 236; Statement 11, AC ¶ 240; Statement 12, AC ¶ 240; Statement 16, AC ¶ 244; Statement 17, AC ¶ 244; Statement 18, AC ¶ 248; Statement 19, AC ¶ 250; Statement 21, AC ¶ 254; Statement 23, AC ¶ 256; and Statement 24, AC ¶ 256, were false or misleading when made.[4]

### 2.    Scienter

"To establish liability under § 10(b) and Rule 10b–5, a private plaintiff must prove that the defendant acted with scienter[.]" *Matrixx Initiatives*, 563 U.S. at 48 (citation and internal quotation marks omitted).  Scienter is "a mental state that not only covers 'intent to deceive, manipulate, or defraud,' but also 'deliberate recklessness[.]'" *See Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016) (internal citations omitted).  "[D]eliberate recklessness is an extreme departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.* (citation and internal quotation marks omitted).  In evaluating scienter, courts must "consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Tellabs*, 551 U.S. at 323–24.  In performing this inquiry, courts should determine whether "all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.*  "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

The Court will consider below whether Plaintiff has alleged facts that raise a strong inference of scienter with respect to the challenged statements relating to the financial figures that Cutera restated in 2024, which are the only statements that were plausibly false or misleading

---

[4] The Court need not reach the question of whether any of the statements listed above were inactionable puffery because those statements cannot form the basis of a securities fraud claim for a different reason, which is that Plaintiff has not plausibly alleged that they were false or misleading when made.

17

1    when made (as Defendants concede).  Those statements were made by (1) Defendant Varma in the

2    Form–K of May 9, 2023 (Statement 29, AC ¶ 281); (2) Defendant Drummond in the earnings call

3    for Q1 2023 of May 9, 2023 (Statement 31, AC ¶ 282; Statement 32, AC ¶ 282); (3) Defendant

4    Drummond the quarterly report for Q1 2023 of May 10, 2023 (Statement 33, AC ¶ 281); (4)

5    Defendant Drummond in the Form 8-K of August 8, 2023 (Statement 37, AC ¶ 296); (5)

6    Defendant Drummond in the earnings call for Q2 2023 of August 8, 2023 (Statement 39, AC ¶

7    297; Statement 40, AC ¶ 297); and (6) Defendant Drummond in the quarterly report for Q2 2023

8    of August 9, 2023 (Statement 41, AC ¶ 296).

9        Defendants argue that Plaintiff has not alleged facts that raise the strong inference that any

10   of the Defendants acted with scienter in connection with any of the statements just described.  *See*

11   ECF No. 72 at 22–31.

12       After reviewing the entirety of the AC holistically, the Court finds that Plaintiff has not

13   alleged facts that raise a strong inference of scienter with respect to Defendant Drummond in

14   connection with Statements 31, 32, 33, 37, 39, 40, and 41.  The Court cannot reasonably infer that

15   Defendant Drummond made the statements in question with the intent to defraud or with

16   deliberate recklessness because the AC is devoid of allegations that indicate that he even knew

17   that the financial figures he reported in the statements in question were inaccurate at the time he

18   made the statements.  Most of the allegations in the AC refer either to Defendants other than

19   Drummond, *see, e.g.*, AC ¶¶ 97–99, 114 (referring to Defendant Mowry) or to "Defendants," the

20   "Individual Defendants," or "management" without distinguishing each individual Defendant from

21   the others, *see, e.g.*, AC ¶¶ 45, 79, 415.  Those allegations do not support an inference of scienter

22   with respect to Defendant Drummond.  *See Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774

23   F.3d 598, 607 (9th Cir. 2014) (holding that a plaintiff must "allege scienter with respect to each of

24   the individual defendants"); *see Garcia v. J2 Glob., Inc.*, No. 2:20-CV-06096-FLA (MAAX),

25   2021 WL 1558331, at *18 (C.D. Cal. Mar. 5, 2021) (holding that "'group pleading' is not

26   sufficient to plead scienter") (collecting cases).[5]  The allegations in the AC that pertain specifically

27

28   _____

[5] Defendants cited *Garcia* in their opening brief, and Plaintiff failed to distinguish it in its
opposition.

United States District Court
Northern District of California

United States District Court
Northern District of California

to Defendant Drummond also do not raise the inference that he knew that the financial figures he reported in the statements at issue were inaccurate at the time he made the statements. *See* AC ¶ 39 (alleging that Defendant Drummond was Cutera's Corporate Controller from July 2021 to May 2023 and its interim CFO and principal accounting officer from May 5, 2023); *id.* ¶¶ 184, 379 (alleging that, in November 2023, several months *after* Defendant Drummond made Statements 31, 32, 33, 37, 39, 40, and 41 in May and August 2023, Drummond told investors that the company had inventory problems that related to its inventory system). While Plaintiff argues that the Court may infer that Defendant Drummond acted with scienter because he signed SOX certifications that accompanied the Q1 2023 and Q2 2023 quarterly reports where some of the restated financial figures appeared, *see* AC ¶ 435, "Sarbanes-Oxley certifications are not sufficient, without more, to raise a strong inference of scienter." *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1004 (9th Cir. 2009), *as amended* (Feb. 10, 2009) (citation and internal quotation marks omitted).

Similarly, after reviewing the entire AC holistically, the Court finds that Plaintiff has not alleged facts that raise a strong inference of scienter with respect to Defendant Varma in connection with Statement 29. The only allegations in the AC that pertain to Defendant Varma provide that he was Cutera's General Counsel and Compliance Officer from May 2022 to June 2023, and that he allegedly signed the May 9, 2023, Form 8-K, which contained inaccurate financial figures that were later restated. *See* AC ¶¶ 41, 281. That is not sufficient to give rise to a strong inference of scienter with respect to Defendant Varma. *See In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1159 (C.D. Cal. 2007) (holding that "signatures on various Hansen public filings" do not "give[] rise to strong inference of scienter" because "if that were true, scienter would be established in every case where there was an accounting error or auditing mistake made by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA") (citations and internal quotation marks omitted).[6] Other allegations in the AC refer to "Defendants," the "Individual Defendants," or "management"

_____

[6] Defendants cited *In re Hansen* in their opening brief, and Plaintiff failed to distinguish it in its opposition.

1    without distinguishing each individual Defendant from the others. *See, e.g.*, AC ¶¶ 45, 79, 415.

2    But "[s]uch 'group pleading' is not sufficient to plead scienter." *See Garcia*, 2021 WL 1558331,

3    at *18.

4         In their opposition, Plaintiff argues that the Court may infer a strong inference of scienter

5    with respect to all individual Defendants, including Defendants Drummond and Varma, based on

6    the core operations doctrine. *See* ECF No. 76 at 28.

7         "The core operations theory of scienter relies on the principle that corporate officers have

8    knowledge of the critical core operation of their companies." *Police Ret. Sys.*, 759 F.3d at 1062

9    (citation and internal quotation marks omitted). Where, as here, the statements at issue were false

10   because they contained financial figures that were later restated, a court may infer scienter based

11   on the core operations doctrine where the falsity of the financial figures "is combined with

12   allegations regarding a management's role in the company that are particular and suggest that the

13   defendant had actual access to the disputed information, and where the nature of the relevant fact

14   is of such prominence that it would be absurd to suggest that management was without knowledge

15   of the matter." *See Zucco*, 552 F.3d at 1000 (citation and internal quotation marks omitted).

16        Here, Plaintiff has not alleged any facts that are "particular" and that suggest that

17   Defendants Drummond and Varma had access to information based on their management role in

18   Cutera indicating that the financial figures reported in Statements 29, 31, 32, 33, 37, 39, 40 were

19   inaccurate at the time that those statements were made. Plaintiff also has not alleged any facts that

20   raise the inference that the inaccuracy of the financial figures in Statements 29, 31, 32, 33, 37, 39,

21   40 was of such prominence that it would be absurd to suggest that Defendants Drummond and

22   Varma were without knowledge of it at the time that Statements 29, 31, 32, 33, 37, 39, 40 were

23   made. Accordingly, Plaintiff's attempt to rely on the core operations doctrine to establish scienter

24   for the statements in question fails.

25        The Court GRANTS Defendants' motion to dismiss to the extent that it is premised on

26   arguments that Plaintiff has not alleged scienter with respect to Statements 29, 31, 32, 33, 37, 39,

27   40.

28

United States District Court
Northern District of California

### B.       Claims under Section 20(a) of the Exchange Act

"Section 20(a) of the Securities Exchange Act of 1934 provides for liability of a 'controlling person.'" *In re NVIDIA*, 768 F.3d at 1052 (quoting 15 U.S.C. § 78t(a)). "To establish a cause of action under this provision, a plaintiff must first prove a primary violation of underlying federal securities laws, such as Section 10(b) or Rule 10b–5, and then show that the defendant exercised actual power over the primary violator." *Id.* (citation omitted). A claim under Section 20(a) can survive only if the underlying predicate Exchange Act violation also survives. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc*., 856 F.3d 605, 623 (9th Cir. 2017). "'Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation of section 10(b).'" *Zucco*, 552 F.3d at 990.

Plaintiff asserts a claim under Section 20(a) against the individual Defendants based on allegations that they had positions of control and authority over Cutera's operations and management and caused the dissemination of the statements challenged in the AC, which artificially inflated the price of Cutera securities. *See* AC ¶¶ 488–92.

Defendants move to dismiss this claim, arguing that, because Plaintiff does not plead a Section 10(b) claim, its Section 20(a) claim is subject to dismissal for the same reasons that its Section 10(b) claim is subject to dismissal. *See* ECF No. 72 at 32.

The Court agrees with Defendants and GRANTS their motion to dismiss the Section 20(a) claim WITHOUT LEAVE TO AMEND to the extent that it is premised on Statement 2 (AC ¶ 221), Statement 3 (AC ¶ 222), Statement 6 (AC ¶ 228), Statement 9 (AC ¶ 235), Statement 13 (AC ¶ 242), Statement 14 (AC ¶ 243), Statement 15 (AC ¶ 243), Statement 20 (AC ¶ 251), Statement 22 (AC ¶ 258), Statement 25 (AC ¶ 257), Statement 30 (AC ¶ 275), and Statement 38 (AC ¶ 293), as Plaintiff abandoned its claims to the extent that they are premised on those statements. The Court GRANTS Defendants' motion to dismiss the Section 20(a) claim WITH LEAVE TO AMEND to the extent that it is premised on the remaining statements challenged in the AC, for the same reasons discussed above in connection with Plaintiffs' claim under Section 10(b).

### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss:

(1) WITHOUT LEAVE TO AMEND, to the extent that Plaintiff's claims are premised on Statement 2 (AC ¶ 221), Statement 3 (AC ¶ 222), Statement 6 (AC ¶ 228), Statement 9 (AC ¶ 235), Statement 13 (AC ¶ 242), Statement 14 (AC ¶ 243), Statement 15 (AC ¶ 243), Statement 20 (AC ¶ 251), Statement 22 (AC ¶ 258), Statement 25 (AC ¶ 257), Statement 30 (AC ¶ 275), and Statement 38 (AC ¶ 293); and

(2) WITH LEAVE TO AMEND, to the extent that Plaintiff's claims are premised on the remaining statements challenged in the AC.

The dismissal is only with respect to the individual Defendants, as this action is stayed as to Defendant Cutera. *See* ECF No. 85.

Plaintiff may file an amended complaint within 30 days of the date this order is filed to cure the deficiencies discussed herein, to the extent that Plaintiff can do so without contradicting the allegations in its prior pleadings. A failure to file an amended complaint will result in dismissal with prejudice of the claims dismissed herein.

**IT IS SO ORDERED.**

Dated: September 30, 2025



_____
JON S. TIGAR
United States District Judge