Brendan P. Cullen (SBN 194057)
(cullenb@sullcrom.com)
Alexis C. Holmes (SBN 321393)
(holmesa@sullcrom.com)
SULLIVAN & CROMWELL LLP
550 Hamilton Avenue
Palo Alto, California 94301
Telephone:      (650) 461-5600
Facsimile:      (650) 461-5700

*Counsel for Defendants Cutera, Inc., David H. Mowry,*
*Rohan Seth, J. Daniel Plants, Sheila Hopkins,*
*Taylor Harris, and Stuart Drummond*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE CUTERA, INC. SECURITIES LITIGATION. | Case No. 4:23-cv-02560-JST |
|  | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS; MEMORANDUM OF LAW IN SUPPORT THEREOF** |
|  | The Hon. Jon S. Tigar |
|  | Courtroom: 6 |
|  | Date: April 9, 2026 |
|  | Time: 2:00 p.m. |

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 9, 2026 at 2:00 p.m., or as soon thereafter as counsel may be heard in Courtroom 6 of the U.S. District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California 94612, Defendants Cutera, Inc. ("Cutera" or the "Company"), David H. Mowry, Rohan Seth, J. Daniel Plants, Sheila Hopkins, Taylor Harris, and Stuart Drummond (the "individual Defendants," and, collectively with Cutera, "Defendants") will and hereby do move this Court to dismiss the Second Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 87) filed by Lead Plaintiff New England Teamsters Pension Fund on the ground that it fails to state a claim upon which relief can be granted.

This motion is made pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a) *et seq.* (the "PSLRA"), and Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, and is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Brendan P. Cullen and exhibits attached thereto, the accompanying Request for Judicial Notice filed concurrently herewith, the complete files and records in this action, oral argument of counsel, and any matter that may be submitted at or after the hearing.

Dated: December 15, 2025

*/s/ Brendan P. Cullen*
Brendan P. Cullen (SBN 194057)
(cullenb@sullcrom.com)
Alexis C. Holmes (SBN 321393)
(holmesa@sullcrom.com)
SULLIVAN & CROMWELL LLP
550 Hamilton Avenue
Palo Alto, California 94301
Telephone:     (650) 461-5600
Facsimile:     (650) 461-5700

*Counsel for Defendants Cutera, Inc., David H. Mowry, Rohan Seth, J. Daniel Plants, Sheila Hopkins, Taylor Harris, and Stuart Drummond*

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................. 1

BACKGROUND AND ALLEGATIONS OF THE COMPLAINT........................................................ 2

      A.    Cutera's Business.......................................................................................... 2

      B.    The AviClear Launch.................................................................................... 2

      C.    Executive Leadership Changes. ................................................................... 3

      D.    The Restatement........................................................................................... 3

      E.    Cutera Files for Bankruptcy......................................................................... 4

      F.    The Court Dismisses Plaintiff's First Complaint......................................... 5

      G.    Plaintiff's Second Amended Complaint. ...................................................... 5

ARGUMENT.................................................................................................................................... 6

    I.    PLAINTIFF STILL FAILS ADEQUATELY TO PLEAD THAT NUMEROUS OF THE CHALLENGED STATEMENTS ARE ACTIONABLY FALSE OR MISLEADING.....................................................................................................6

      A.    None of the Challenged Statements about AviClear or Core Capital Is Adequately Pleaded To Be False or Misleading....................................... 7

      B.    Plaintiff Fails Adequately To Plead a Misstatement about Cutera's Internal Controls................................................................................. 12

      C.    The Statements about AviClear and Core Capital Are Immaterial as a Matter of Law. ...................................................................................... 15

    II.    PLAINTIFF STILL FAILS ADEQUATELY TO PLEAD SCIENTER. ..........................16

      A.    Signed or Certified SEC Filings Still Do Not Adequately Plead Scienter. .......... 16

      B.    The Confidential Witnesses' Statements Still Do Not Adequately Plead Scienter. .............................................................................................. 17

      C.    Plaintiff Still Fails To Plead Scienter as to the Restated Financials. .................... 20

      D.    Plaintiff's Recycled Theories of Scienter Are Still Inadequate To Plead Scienter. .............................................................................................. 21

      E.    Plaintiff Fails Adequately To Plead Scienter as to Cutera.................................... 24

    III.    PLAINTIFF'S CLAIM AGAINST CUTERA WAS DISCHARGED IN BANKRUPTCY. ........................................................................................................24

    IV.    PLAINTIFF STILL DOES NOT STATE A CLAIM UNDER SECTION 20(A). ...........25

CONCLUSION............................................................................................................................... 25

-i-

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Accuray, Inc. S'holder Derivative Litig.*,
    757 F. Supp. 2d 919 (N.D. Cal. 2010) ...................................................................................22

*Batiste* v. *Am. Eagle Airlines*,
    2015 WL 13915193 (C.D. Cal. Jan. 16, 2015) ......................................................................25

*Bodri* v. *GoPro, Inc.*,
    252 F. Supp. 3d 912 (N.D. Cal. 2017) ...................................................................................23

*Brodsky* v. *Yahoo! Inc.*,
    630 F. Supp. 2d 1104 (N.D. Cal. 2009) .................................................................................18

*Cement & Concrete Workers Dist. Council Pension Fund* v. *Hewlett Packard Co.*,
    964 F. Supp. 2d 1128 (N.D. Cal. 2013) .................................................................................15

*City of Royal Oak Ret. Sys.* v. *Juniper Networks, Inc.*,
    880 F. Supp. 2d 1045 (N.D. Cal. 2012) .................................................................................15

*In re Copper Mountain Sec. Litig.*,
    311 F. Supp. 2d 857 (N.D. Cal. 2004) ...................................................................................15

*Curry* v. *Yelp Inc.*,
    2015 WL 1849037 (N.D. Cal. Apr. 21, 2015) ......................................................................11

*Desaigoudar* v. *Meyercord*,
    223 F.3d 1020 (9th Cir. 2000) .................................................................................................2

*In re Extreme Networks, Inc. Sec. Litig.*,
    2018 WL 1411129 (N.D. Cal. Mar. 21, 2018).......................................................................21

*Gianelli* v. *Schoenfeld*,
    2022 WL 3230097 (E.D. Cal. Aug. 10, 2022)........................................................................25

*In re Gritstone Bio, Inc.*,
    2025 WL 2084918 (N.D. Cal. July 24, 2025).......................................................................8, 9

*In re Hansen Natural Corp. Sec. Litig.*,
    527 F. Supp. 2d 1142 (C.D. Cal. 2007) .................................................................................16

*In re Intel Corp. Sec. Litig.*,
    2023 WL 2767779 (N.D. Cal. Mar. 31, 2023).......................................................................20

*Jiu-Yang Hong* v. *Extreme Networks, Inc.*,
    2017 WL 1508991 (N.D. Cal. Apr. 27, 2017) .......................................................................23

-ii-

*Metzler Inv. GMBH* v. *Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ..................................................................................................16

*Pirani* v. *Netflix, Inc.*,
710 F. Supp. 3d 756 (N.D. Cal. 2024) .......................................................................................2

*In re Pivotal Sec. Litig.*,
2020 WL 4193384 (N.D. Cal. July 21, 2020)........................................................................9, 11

*Police Ret. Sys. of St. Louis* v. *Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ..................................................................................................23

*Prodanova* v. *H.C. Wainwright & Co., LLC*,
993 F.3d 1097 (9th Cir. 2021) ..................................................................................................24

*Rok* v. *Identiv, Inc.*,
2017 WL 35496 (N.D. Cal. Jan. 4, 2017) ................................................................................12

*Scheller* v. *Nutanix, Inc.*,
450 F. Supp. 3d 1024 (N.D. Cal. 2020) ...................................................................................15

*In re Skechers USA, Inc. Sec. Litig.*,
444 F. Supp. 3d 498 (S.D.N.Y 2020)........................................................................................22

*Sneed* v. *AcelRx Pharms., Inc.*,
2023 WL 4412164 (N.D. Cal. July 7, 2023)............................................................................15

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
160 F. Supp. 2d 1059 (N.D. Cal. 2001) ...................................................................................11

*Strezsak* v. *Ardelyx Inc.*,
2024 WL 1160900 (N.D. Cal. Mar. 18, 2024)...........................................................................2

*In re Swift Transp. Co., Inc.*,
2006 WL 1805578 (D. Ariz. Mar. 29, 2006) .............................................................................8

*United Ass'n Nat'l Pension Fund* v. *Carvana Co.*,
759 F. Supp. 3d 926 (D. Ariz. 2024) ......................................................................................8, 9

*Veal* v. *LendingClub Corp.*,
423 F. Supp. 3d 785 (N.D. Cal. 2019) .....................................................................................13

*Wenger* v. *Lumisys, Inc.*,
2 F. Supp. 2d 1231 (N.D. Cal. 1998) .......................................................................................11

*Wozniak* v. *Align Tech., Inc.*,
850 F. Supp. 2d 1029 (N.D. Cal. 2012) ...................................................................................15

*Xiaojiao Lu* v. *Align Tech., Inc.*,
417 F. Supp. 3d 1266 (N.D. Cal. 2019) .....................................................................................8

-iii-

*Zucco Partners, LLC* v. *Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ..............................................................................................17, 22, 25

**Statutes**

11 U.S.C. § 101................................................................................................................................25

11 U.S.C. § 524................................................................................................................................25

11 U.S.C. § 1141..............................................................................................................................25

SULLIVAN & CROMWELL LLP

## ISSUES TO BE DECIDED

1.      Does Plaintiff's Second Amended Complaint adequately plead claims under Section 10(b) of the Securities Exchange Act and Rule 10b-5 where it still fails to allege particularized facts demonstrating (i) that certain of the alleged misstatements were materially false or misleading or (ii) a strong inference of intent to defraud on the part of any Defendant?

2.      Is Plaintiff barred from pursuing its securities claim against Cutera because the claim was discharged upon confirmation of Cutera's Chapter 11 Plan of Reorganization?

3.      Does Plaintiff's Second Amended Complaint adequately plead claims under Section 20(a) of the Securities Exchange Act for control-person liability where it still fails to allege any primary violation of the securities laws under Section 10(b)?

**INTRODUCTION**

Despite alleging 20 fewer misstatements — having given up on 12 statements that the Court deemed "abandoned" in the First Amended Complaint ("FAC") and eight statements that Plaintiff apparently realized were no longer worth pursuing — Plaintiff has managed to make the Second Amended Complaint ("SAC") 71 paragraphs longer. A casual reader might think that Plaintiff has heeded the Court's Order detailing the various failings in Plaintiff's approach to pleading its claims and has now identified specific facts to show exactly how and why the challenged statements were false and made by Defendants knowingly or with deliberate recklessness. Nope. Rather than addressing the deficiencies identified by the Court, Plaintiff doubles down on its failed approach to pleading securities fraud, packing the SAC with more of the same conclusory and detail-free allegations and nonsensical theories. Indeed, all but one of the 24 statements challenged in the SAC are identical to those alleged in the FAC, and the one new alleged misstatement — about AviClear's lease-based commercial model — is hardly new because it resembles all of the other nonactionable statements of corporate puffery about AviClear alleged in the FAC and realleged in the SAC.

The only sort-of-meaningful way in which the SAC differs from the FAC relates to Plaintiff's confidential witness statements. In its attempt to plead falsity and scienter, Plaintiff has added some revised or additional allegations attributed to the same eight purported witnesses cited in the FAC. These new allegations address, among other things, the operational challenges that Cutera experienced during the class period and the supposed problems with the AviClear rollout, and the individual Defendants' alleged awareness of these issues. But all of these witnesses still fail to allege these things adequately. In fact, numerous of the FAC's inadequate confidential witness statements reappear in the SAC without modification at all, including several allegations that the Court already rejected as insufficiently detailed and conclusory. If anything, the SAC's amended confidential witness allegations are pleaded less well than those in the FAC because, in addition to their shared failings, the new allegations often have no connection to the challenged statements or anything else at issue in this action. None of the SAC's amendments helps Plaintiff to plead falsity or scienter, and the SAC should thus be dismissed for the same reasons that the FAC was dismissed.

The SAC fails for a number of additional reasons as well. Putting aside Plaintiff's failure to cure the specific deficiencies identified by the Court, Plaintiff did nothing at all to address the other failings not

reached by the Court but set out in Defendants' motion to dismiss the FAC. Plaintiff continues to challenge statements about AviClear and Core Capital that are indistinguishable from those that courts routinely hold to be immaterial as a matter of law. As for scienter, Plaintiff again, and for the same reasons identified in Defendants' prior motion, fails adequately to plead scienter as to the challenged statements about AviClear, Core Capital, and Cutera's internal controls. Separately, the SAC hardly acknowledges the fact that Cutera filed for and successfully emerged from Chapter 11 bankruptcy earlier this year, despite Plaintiff's own participation in those proceedings. Plaintiff's securities claim against Cutera was forever discharged in the bankruptcy — yet another basis upon which the Court may dismiss Plaintiff's claims.

The Court gave Plaintiff an opportunity to replead its claims adequately and, to the extent Plaintiff even tried, it has made a hash of it. This action should be dismissed once again, this time with prejudice.

## BACKGROUND AND ALLEGATIONS OF THE COMPLAINT

### A. Cutera's Business.

Cutera's business has two principal segments: Core Capital and AviClear. (SAC ¶ 75.)[1] The former comprises Cutera's established suite of medical-equipment offerings as well as "related one-time use products necessary to perform treatments with the equipment" (*i.e.*, "consumables"). (*Id.* ¶ 76.) AviClear is Cutera's innovative prescription-free laser-based treatment solution for acne. (*Id.* ¶ 79.)

### B. The AviClear Launch.

In March 2022, the FDA approved AviClear for commercial use and, on April 5, 2022, Cutera announced that the first patient outside clinical trials had been successfully treated for acne with the new device, kicking off AviClear's limited commercial release. (SAC ¶ 79; Ex. V[2].) Cutera initially used a new lease-based model for AviClear (rather than selling the AviClear devices outright, as with its Core Capital products) to facilitate the placement of AviClear devices and, in part, to compete with a similar product called Accure, which was coming to market around the same time. (*See* SAC ¶ 80.)

---

[1] In deciding this motion to dismiss, the Court considers only well-pleaded factual allegations. *See Desaigoudar* v. *Meyercord*, 223 F.3d 1020, 1021 (9th Cir. 2000). The Court may also consider documents "incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Pirani* v. *Netflix, Inc.*, 710 F. Supp. 3d 756, 766 (N.D. Cal. 2024) (Tigar, J.). "Once a document is deemed incorporated by reference, the entire document is assumed to be true for purposes of a motion to dismiss, and both parties — and the Court — are free to refer to any of its contents." *Strezsak* v. *Ardelyx Inc.*, 2024 WL 1160900, at *3 (N.D. Cal. Mar. 18, 2024).

[2] "Ex. [_]" refers to exhibits to the accompanying Declaration of Brendan P. Cullen.

-2-

AviClear was rolled out over the course of 2022, until its full commercial release in November 2022. (*Id.* ¶ 79.) During the rollout, Cutera disclosed that its strategy was to prioritize the placement of AviClear devices through 2022, then pivot to driving use of those devices for treatments — from which use AviClear would earn the bulk of its AviClear revenues — in 2023. (*See* Ex. L at 6; *see also* Ex. B at 9.)

## C.     Executive Leadership Changes.

On April 11, 2023, a special committee of Cutera's Board of Directors dismissed Cutera's Executive Chairman and Chairman of the Board (Mr. Plants) and CEO (Mr. Mowry) "with cause." (SAC ¶ 163.) Sheila Hopkins was appointed to replace Mr. Mowry as Interim CEO. (*Id.*) On April 12, 2023, Cutera announced these leadership changes and that it was "withdrawing its full-year 2023 outlook." (*Id.* ¶¶ 163-64.) Five days later, the special committee announced that Mr. Mowry was dismissed "due to poor execution and ineffective leadership," particularly with respect to AviClear, and that Mr. Plants was dismissed due to his "apparent" motivation for "personal enrichment." (*Id.* ¶¶ 168-69 (cleaned up).) On May 9, 2023, Cutera issued another press release reporting, among other matters, that CFO Rohan Seth had stepped down. (*Id.* ¶ 172.) During Cutera's earnings call on May 9, 2023, then-CEO Sheila Hopkins reported lower-than-expected results for Q1 2023, which she attributed to "suboptimal leadership direction" and operational challenges. (*Id.* ¶ 382.) Specifically, Ms. Hopkins explained that the Company's sales team continued to focus on driving AviClear placements during the quarter, which led to fewer Core Capital sales, and that Cutera's year-end physical inventory count took four weeks, which disrupted production and order fulfillment. (*Id.* ¶¶ 384-86.) On May 5, Stuart Drummond was appointed Cutera's Interim CFO. (*Id.* ¶ 50.) And on July 27, Cutera announced that Taylor Harris had been named CEO. (*Id.* ¶ 183.)

## D.     The Restatement.

In preparing its 10-Q for the period ended September 30, 2023 ("Q3 2023 10-Q"), Cutera performed a physical-inventory count, which revealed "a shortfall of inventory relative to the system of record." (*Id.* ¶¶ 208, 409.) Cutera announced on November 8, 2023, that it would be unable to file its Q3 2023 10-Q timely and that it would need to restate certain previously reported financial statements. (*Id.* ¶ 207.) Several weeks later, on December 21, 2023, Cutera explained that, during the physical-inventory count, "management . . . identified material errors in the Company's accounting for physical inventory and deficiencies in the related internal controls," which impacted the Company's previously issued financial

-3-

statements for the first and second quarters of 2023. (*Id.* ¶ 208.) As a result of these issues, "the inventory balance in [Cutera's] system of record as of September 30, 2023 was overstated relative to the result of the physical inventory count." (*Id.* ¶ 210.) At the time, the Company was still "in the process of identifying and evaluating the magnitude and severity of internal control deficiencies that resulted in" these inventory issues. (*Id.* ¶ 212.)

On March 5, 2024, Cutera filed restated financial statements for Q1 and Q2 2023 (the "Restatement"). Cutera confirmed that, due to "an accounting error," "there was a shortfall of inventory relative to the Company's system of record" (*id.* ¶¶ 430, 436), which resulted in an overstatement of inventory and a corresponding understatement of cost of revenue for both quarters (Exs. X at 8 & Y at 9). Inventory was found to have been overstated by $2 million (2.8%) for Q1 2023 and $4.5 million (6.6%) for Q2 2023. (SAC ¶¶ 320, 338.) As a result, Cutera corrected several financial figures in the Restatement, including cost of revenue (which increased by 9.3% for Q1 and 7.5% for Q2) and gross profits and gross margins (which decreased by 13.3% and 12.4% for Q1 and 7.1% and 8.3% for Q2, respectively). (*Id.*)

**E.    Cutera Files for Bankruptcy.**

In March 2025, Cutera filed a voluntary petition for Chapter 11 bankruptcy. (*See* ECF No. 79; Ex. DD at 4-5.) On April 16, 2025, the Bankruptcy Court entered an order confirming Cutera's Chapter 11 Plan of Reorganization, as amended (the "Confirmation Order"). (Ex. DD.) Cutera's Plan of Reorganization (the "Plan" (Ex. CC)) became effective on May 1, 2025 ("the Effective Date") and has since been substantially consummated (*see* Ex. EE at 1). Under the Plan, Cutera was discharged from all claims and liabilities that arose prior to the Effective Date, and the Confirmation Order permanently enjoined the pursuit of any discharged claims. (*See* Ex. CC, art. IX; Ex. DD at 11-13, 22.)

Prior to the Confirmation Order, Plaintiff obtained an opt-out from certain releases of claims under the Plan in favor of third parties, including Cutera's current and former officers and directors, on behalf of itself and the putative class in this action, which was memorialized in an agreed order entered by the Bankruptcy Court (the "Class Opt-Out"). (Ex. BB, ¶ 1.) The Class Opt-Out confirms that Plaintiff may continue to prosecute its securities claims against the individual Defendants, subject to the terms and conditions of the agreed order, but it does not otherwise "alter the terms of the Plan," including the discharge of Plaintiff's claim against Cutera. (*See id.* ¶¶ 1, 11.)

-4-

**F.     The Court Dismisses Plaintiff's First Complaint.**

Plaintiff's prior complaint (like the current SAC) alleged that, between early 2022 and March 2024, Cutera's senior management knew that the Company was suffering from an internal-controls crisis — initially caused by an unsophisticated inventory-management system and ultimately exacerbated by the build-up of AviClear inventory following the purportedly failed AviClear rollout — yet repeatedly reassured the market that the AviClear rollout was successful, that Core Capital was not harmed as a result of the rollout, and that there were no problems with Cutera's internal controls.  (*See generally* FAC.) Plaintiff claimed in the FAC (and claims again in the SAC) that the "truth" of these issues was revealed through a series of "partial" corrective disclosures over the course of a 14-month period (January 2023 through March 2024).  (*See* SAC ¶¶ 345-453.)

The Court granted Defendants' motion to dismiss the FAC (ECF No. 72 (the "First Motion" or "First Mot.")) in its entirety (ECF No. 86 (the "Order")).  The Court held that Plaintiff failed plausibly to allege that the majority of the 44 statements challenged in the FAC — all of those except for the financial figures that were the subject of the Restatement — were "false or misleading when made."  (*Id.* at 8-17.) As for the restated financial figures, the Court held that Plaintiff failed to raise the requisite "strong inference of scienter" with respect to Stuart Drummond and Vikram Varma, who reported those financials or signed disclosures that did, because Plaintiff relied on improper group pleading and otherwise failed to plead facts to suggest that either Mr. Drummond or Mr. Varma knew that the financial figures were inaccurate at the time they were reported or that the inaccuracy "was of such prominence that it would be absurd to suggest that [Messrs.] Drummond and Varma were without knowledge of it."  (*Id.* at 17-20.)

In light of the automatic stay applicable to Cutera under Bankruptcy Code § 362 (*see* ECF No. 79), the Court dismissed the FAC "only with respect to the individual Defendants," and permitted Plaintiff an opportunity to file an amended complaint (Order at 22).

**G.     Plaintiff's Second Amended Complaint.**

Plaintiff's SAC hews closely to the dismissed FAC.  All but one of the 24 statements challenged in the SAC are identical to those challenged in the FAC, falling into the same general subject-matter categories: (i) the success of the AviClear rollout and the subsequent performance of Core Capital, (ii) Cutera's internal controls, and (iii) the restated financials for Q1 and Q2 2023.  Plaintiff's amendments to the SAC consist

-5-

primarily of some revised or additional allegations attributed to the same eight confidential witnesses, along with the same "Relevant Non-Defendant Cutera Executives" and "Relevant Third Parties," included in the FAC. Otherwise, Plaintiff's substantive allegations, including its various scienter theories and its approach to pleading loss causation, are mostly unchanged. Plaintiff asserts the same claims under Section 10(b) of the Exchange Act and SEC Rule 10b-5 against all Defendants and Section 20(a) control-person claims against the remaining individual Defendants (Mr. Varma was dropped as a defendant).

## ARGUMENT

Plaintiff's SAC still fails to satisfy the exacting pleading requirements of Rule 9(b) and the PSLRA. (*See* Order at 5-6; First Mot. at 5-6.) *First*, the SAC again fails adequately to plead an actionable misstatement about AviClear, Core Capital, or Cutera's internal controls. Rather than addressing the FAC's pleading deficiencies identified by the Court, Plaintiff stuffs the SAC with more of the same conclusory and detail-free allegations that the Court already held to be insufficient to plead falsity. *Second*, all of the challenged statements about AviClear and Core Capital in the SAC are immaterial as a matter of law. *Third*, the SAC does nothing to move Plaintiff any closer to raising the requisite strong inference of scienter. Instead, Plaintiff repeats, often verbatim, the same theories of scienter alleged in the FAC that are just as inadequately pleaded in the SAC as they were in the FAC. *Fourth*, Plaintiff's claim against Cutera must be dismissed for the independent reason that it was discharged through Cutera's bankruptcy. *Finally*, Plaintiff's control-person claims under Section 20(a) against the individual Defendants fail again because Plaintiff again has not pleaded a primary violation of the securities laws.

## I.    PLAINTIFF STILL FAILS ADEQUATELY TO PLEAD THAT NUMEROUS OF THE CHALLENGED STATEMENTS ARE ACTIONABLY FALSE OR MISLEADING.

"The first element of a claim under Section 10(b) and Rule 10b–5 requires a plaintiff to show that the defendant made a statement that was false or misleading as to a material fact." (Order at 6.) Except for the challenged statements that constitute the restated financials (Statements 11-14, 18-21), Plaintiff still fails to plead that any other alleged misstatement is actionably false or misleading.[3]

---

[3]    Defendants have attached as Appendix 1 an updated chart that sets out the 24 statements challenged in the SAC and the reason(s) why Plaintiff has failed to state a claim as to each statement.

-6-

**A.    None of the Challenged Statements about AviClear or Core Capital Is Adequately Pleaded To Be False or Misleading.**

Plaintiff challenges seven statements made between May 2022 and February 2023 about AviClear or the performance of Core Capital. All but one of these statements (Statement 1) was challenged in the FAC, and yet Plaintiff has done nothing to cure the deficiencies that the Court identified with respect to Plaintiff's approach to pleading falsity. Instead, Plaintiff continues to misconstrue the challenged statements or take them out of context, and Plaintiff relies on even more vague and conclusory allegations, or fraud-by-hindsight, to try to plead falsity. This all still fails.

***Statement about the AviClear lease model.*** The only new misstatement alleged in the SAC is Mr. Mowry's statement during Cutera's Q1 2022 earnings call, held on May 10, 2022, that the "new and innovative" lease-based commercial model for AviClear "will serve to perfectly align the goals and objectives of the company with those of the practice over the long term" (Statement 1). (SAC ¶ 231.) As an initial matter, Plaintiff's claim that Statement 1 is false because Messrs. Mowry, Plants, and Seth allegedly "chose the leasing model" to "secure performance-based compensation" under the so-called "Acne Equity Grant" fails. (*Id.* ¶¶ 232, 236, 238.) The glaring problem with this theory is that Plaintiff does not allege any facts to even suggest that Cutera's adoption of the lease model had anything at all to do with the AviClear Incentive Plan. (*See* Ex. Z at 51 (Cutera disclosing pre-class period that it adopted the Incentive Plan to "facilitate the commercialization and success of [the] AviClear device").) In fact, what little Plaintiff alleges on the subject belies Plaintiff's theory. According to CW2, "Cutera developed [the] new AviClear leasing model . . . to compete with a similar product called *Accure*, which was coming to market around the same time as AviClear." (SAC ¶ 80; *see id.* ¶ 235 (CW2 alleging that "the reason Cutera adopted the leasing model" was because Mr. Plants thought it "was a 'great model'").)

Statement 1 also is not falsified by the other confidential witness allegations. Plaintiff points to a newly added assertion from CW1 that "the leasing model . . . had been tried twice at two other aesthetic companies, *Venus Concepts* and *Xtrac*." (*Id.* ¶ 235.) Even if CW1 had explained that, how, and why the "leasing model" was unsuccessful at these other companies (she does not), Plaintiff fails to show how the fact that these companies "tried" the "leasing model" falsifies Mr. Mowry's prediction that the leasing model would benefit Cutera and its customers. Plaintiff also relies on CW1's detail-free claim that "at

-7-

least four people told [Mr.] Mowry that the leasing model would not work," but CW1 never explains what these people told Mr. Mowry and when or why whatever they told him renders Statement 1 false. (*See id.* ¶ 235.) CW3 allegedly reported that "doctors did not want to do it" and "preferred . . . to own the equipment outright." (*Id.* ¶ 241.) CW3's claim is not only detail-free and conclusory, but also belied by Mr. Mowry's reporting during the same May 10, 2022 earnings call that Cutera had "already executed dozens of AviClear partnership agreements" (meaning that at least those doctors were agreeing to the lease model at the time Statement 1 was made). (Ex. B at 8.) At most, these allegations show that Cutera's disclosed "business strategy may be open to criticism," which does not plead "a misrepresentation." *In re Swift Transp. Co., Inc.*, 2006 WL 1805578, at *8 (D. Ariz. Mar. 29, 2006); *see United Ass'n Nat'l Pension Fund* v. *Carvana Co.*, 759 F. Supp. 3d 926, 964 (D. Ariz. 2024) ("Plaintiffs may disagree with Carvana's *disclosed* business strategy, but that disagreement alone does not make a securities fraud claim." (emphasis in original)).

The remainder of the allegations upon which Plaintiff relies do not serve to falsify Statement 1 because they have nothing to do with the subject of Mr. Mowry's statement. For instance, Plaintiff points to additional allegations of "problems with the AviClear rollout and customer pushback," including claims that the AviClear "treatment was painful" and that there were "delivery problems." (SAC ¶¶ 240, 242-45.) Putting aside the fact that these allegations are inadequately pleaded because they are devoid of any sort of detail (*see infra* at 10-11, 17-19), "wholly absent is the nexus between" these "factual allegations" and how they show that Mr. Mowry's statement about the AviClear lease model was "false or misleading when made." *Xiaojiao Lu* v. *Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1276-77 (N.D. Cal. 2019) ("A plaintiff fails to adequately plead falsity under the PSLRA when 'the reasons Plaintiffs offer as to why the statements are false or misleading bear no connection to the substance of the statements themselves.'"). Finally, Plaintiff claims that Mr. Harris's announcement in November 2023 — *18 months after* Statement 1 was made — that Cutera would "offer[] 'the option to purchase the device upfront'" somehow falsifies a much earlier optimistic statement about "the leasing model." (SAC ¶ 246.) "This after-the-fact assessment is impermissible fraud by hindsight" because it does not show that Statement 1 was false or "misleading at the time [it was] made." *In re Gritstone Bio, Inc.*, 2025 WL 2084918, at *7 (N.D. Cal. July 24, 2025).

*Statement about the success of the AviClear launch.* Plaintiff continues to challenge Mr. Mowry's statement in Cutera's August 4, 2022 press release describing the "launch of AviClear" as "successful"

-8-

(Statements 2 & 3).  (SAC ¶¶ 247, 256.)  In the SAC, Plaintiff claims that the AviClear launch "was not even remotely a success" because, "by the second quarter 2022, AviClear's revenue" generated from device "utilization" (*i.e.*, treatments) "was significantly underperforming internal projections."  (*Id.* ¶¶ 248, 251.)  But Mr. Mowry did not characterize the "success" of the launch based on AviClear's "revenue results" or "utilization."  He simply explained that, during the second quarter of 2022, Cutera successfully initiated the "limited commercial release of AviClear."  (Ex. C at 1.)  In fact, Cutera expressly omitted to include revenue guidance for AviClear in the August 4, 2022 press release.  (*See id.*)  And Mr. Mowry told investors during Cutera's Q2 2022 earnings call — held on the very same day — that, "[a]s expected, we generated a very small amount of revenue from the patient treatments during the quarter."  (Ex. D at 5.)  Plaintiff, therefore, cannot plausibly claim that Mr. Mowry duped investors about AviClear's revenue performance.  *See Carvana*, 759 F. Supp. 3d at 959-60 (rejecting plaintiff's theory of falsity where the facts alleged to have been omitted were consistent with Carvana's disclosed business strategy).

Even if AviClear's supposedly "poor financial performance" could serve to falsify this statement, Plaintiff fails to allege particularized facts showing "that by the second quarter 2022, AviClear's revenue was significantly underperforming internal projections."  (SAC ¶¶ 248, 250.)  CW1 allegedly reported that "projections were for approximately $20-25 million" (for some unspecified period of time), and that Cutera "earn[ed] only about $6 million in revenue," of which $3 million was generated "between Q2 and Q3" (of which year CW1 does not say, but presumably 2022).  (*Id.* ¶ 251.)  These specific-sounding allegations are inadequate not least because CW1 failed to provide AviClear's projected vs. "actual revenue" for Q2 2022 (the period covered by Mr. Mowry's statement) and the basis for any such figures.  CW2's recycled allegation that the "forecast numbers for treatment revenue were overly inflated" (*id.* ¶ 254) likewise fails because CW2 still does not explain what the "forecast numbers" were, by how much they were "inflated," and for which periods of time.  As the Court previously held, "insufficiently detailed and conclusory" allegations of this sort are inadequate to plead falsity.  (*See* Order at 15-16.)  To the extent that Plaintiff is relying on AviClear's "financial performance" after Q2 2022 to show that this statement was misleading (*see* SAC ¶¶ 248-49, 251-52), this does not show whether Mr. Mowry's statement was "misleading at the time [it was] made," and is textbook hindsight pleading, *see Gritstone*, 2025 WL 2084918, at *7; *see also In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *17 (N.D. Cal. July 21, 2020) ("It is well-settled in the Ninth

-9-

Circuit that 'fraud by hindsight is not actionable.'"). In any event and as detailed in the First Motion (at 10), a more fundamental problem for Plaintiff is that Cutera measured the "success" of the AviClear rollout in 2022 by its ability to place devices in practitioners' offices — *not* based on revenue generated from treatments. "Utilization" was a goal for 2023. (*See* Ex. L at 6 ("To date, we have been prioritizing our efforts *on placements* . . . ." (emphasis added)).) Plaintiff continues to ignore this critical context.

***Statement about "physician feedback."*** Plaintiff also challenges Mr. Mowry's statement during Cutera's Q3 2022 earnings call, held on November 3, 2022, describing feedback received from physicians during AviClear's first six months of availability as "phenomenal" (Statement 4). (SAC ¶ 258.) Contrary to Plaintiff's characterization of this statement, Mr. Mowry did not "claim[] AviClear was accretive to Core Capital prospects" or make any representation about "Cutera's financial results" related to AviClear. (*Id.* ¶ 260; *see* Ex. H at 10.) Thus, allegations about AviClear's purportedly "poor" revenue in 2022 or Defendants' supposed "scheme" to "achieve their performance compensation tied to AviClear placements" are not only inadequately pleaded, as discussed, but also have nothing to do with the subject of this statement — AviClear "clinical outcomes." (*See* SAC ¶¶ 259, 261-65; Ex. H at 10.)

Nor do any of the confidential witness allegations falsify Statement 4. The SAC repeats a number of confidential witness statements relating to AviClear included in the FAC that the Court already held to be "insufficiently detailed and conclusory" to plead that this and the other AviClear statements were false or misleading. (*Compare* SAC ¶ 243 (CW4: "delivery problems"), ¶ 244 (CW7: "failure rate"), *and* ¶ 245 (CW5: "customer pushback"), *with* Order at 16 (rejecting statements attributed to these CWs, among others, alleged in the FAC).) Plaintiff also repeats *nine* times CW2's unmodified-and-still-detail-free claim that some customers "were so dissatisfied with AviClear that they tried to send it back." (*E.g.*, SAC ¶ 240.) These recycled allegations are just as inadequate as they were before. (*See* Order at 15-16; First Mot. at 10-11, 16-20.) The newly added allegations about AviClear are also "similarly vague and conclusory" and "thus insufficient" to plead falsity. (Order at 16.) For instance, Plaintiff points to a string of detail-free allegations from CW2 and CW3, including that "doctors were not using AviClear very much" because "many patients complained it was painful," "results took too long to be noticeable," "there was 'lots of pushback' . . . regarding treatment costs," and "Cutera's service support was very poor after the equipment was delivered." (SAC ¶¶ 240, 242.) These allegations are inadequate to falsify Mr. Mowry's statement

-10-

because neither CW2 nor CW3 indicated how they know any of these things, whether physicians reported these issues to Cutera, and, if so, how many physicians and to whom at Cutera they reported the issues, and when.  And even if their statements were adequately pleaded, that there may have been *some* AviClear customer complaints is not sufficient to plead falsity.  *See Curry* v. *Yelp Inc.*, 2015 WL 1849037, at *8 (N.D. Cal. Apr. 21, 2015) (Tigar, J.) ("Plaintiffs have not pointed the Court to any case holding that customer complaints alleging a state of affairs contrary to a defendant's representations independently suffice to establish the falsity of those representations."); (First Mot. at 10-12).

*Statement about Core Capital performance.*  Plaintiff again challenges another statement by Mr. Mowry during the November 3, 2022 earnings call:  "[p]ractice performance indicators such as patient cues, appointment cancellation rates also continue to track with prior quarter rates instilling confidence in the core capital equipment and consumable run rates as we bring in the full year results" (Statement 5). (SAC ¶ 258.)  This statement also is not plausibly alleged to be false or misleading.  Again, contrary to Plaintiff's allegation, Mr. Mowry did not "claim[] AviClear was accretive to Core Capital prospects" during this earnings call.  (*Id.* ¶ 260.)  In fact, Mr. Mowry *was not talking about AviClear at all* when he made Statement 5.  Instead, Mr. Mowry was discussing the strong Core Capital results that Cutera achieved during the prior quarter (Q3 2022) and Core Capital forecasting through year-end 2022.  (*See* SAC ¶ 258; Ex. H at 2; *see also* Ex. G (Cutera reporting "an all-time high for 3Q capital sales in North America").)  Plaintiff does not dispute those financial results.  Instead, Plaintiff appears to claim that Statement 5 was misleading because *subsequently* Core Capital sales began to decline in late 2022 or early 2023, when Cutera's sales force shifted focus to AviClear placements.  (*See* SAC ¶¶ 259, 261-65.)  But those later events do not make this earlier true statement false or misleading.  *See In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1078 (N.D. Cal. 2001) ("Statements regarding past events contain no implicit prediction that those events or conditions will continue in the future."); *Wenger* v. *Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1245 (N.D. Cal. 1998) ("Disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future."); *In re Pivotal*, 2020 WL 4193384, at *17 ("[H]onest optimism followed by disappointment is not the same as lying or misleading.").

*Statements about Cutera's sales force.*  Plaintiff also again challenges Mr. Mowry's statements during Cutera's February 28, 2023 earnings call about the efforts of Cutera's sales team in Q4 2022

-11-

(Statements 6 & 7). (SAC ¶ 268.) Plaintiff alleges that these statements were false and misleading because Mr. Mowry "led investors to believe that the Company had reallocated its salespeople back to their core capital pipeline." (*Id.* ¶ 269.) But Mr. Mowry neither said nor suggested anything of the sort. Rather, Mr. Mowry explained that Cutera's sales force shifted focus to AviClear sales at year-end 2022 *due to* "strong underlying interest" in and "customer demand" for AviClear and that "sales reps" then "pivoted back" to "processing of core capital deals" before the end of 2022. (*Id.* ¶ 268.) Plaintiff does not dispute that Cutera's sales team did exactly as Mr. Mowry said. In fact, Mr. Mowry told investors months prior that Cutera had been using "the *entire* sales team" to place AviClear devices. (Ex. H at 8 (emphasis added).) And Mr. Mowry reiterated that same strategy during the Q4 2022 earnings call. (Ex. L at 3 ("As previously disclosed, we are utilizing the same sales force to place AviClear and sell our core capital equipment.").)

**B.      Plaintiff Fails Adequately To Plead a Misstatement about Cutera's Internal Controls.**

The misstatements alleged in the SAC relating to Cutera's internal controls consist solely of the same SOX certifications challenged in the prior complaint. (SAC ¶¶ 277-80, 312-13, 330-31.) Plaintiff challenges portions of Messrs. Mowry's and Seth's SOX certifications attached to Cutera's 2022 10-K, filed on April 7, 2023 (Statements 8-10), and nearly identical portions of Defendants Drummond's, Harris's, and Hopkins's SOX certifications accompanying Cutera's Q1 and Q2 2023 10-Qs, filed on May 10 and August 9, 2023, respectively (Statements 15-17, 22-24). In dismissing the FAC, the Court held that Plaintiff failed plausibly to allege that any of these SOX certifications was false or misleading when made and that these Defendants made their certifications knowing of the alleged falsity. (*See* Order at 9-14.) Plaintiff has hardly even tried to address these deficiencies.

***SOX certifications for the 2022 10-K***.[4] In its Order, the Court explained that Statements 8 and 10 "go to the accuracy or reliability of the financial reporting and preparation of financial statements for the period covered by" the 2022 10-K. (Order at 9-10.) These statements are not plausibly alleged to be false or misleading because Plaintiff still never alleges that the financial statements in the 10-K were inaccurate

---

[4]      Plaintiff seeks to hold Ms. Hopkins and Mr. Plants liable for the SOX certifications attached to the 2022 10-K based on their having signed the 10-K. (*See* SAC ¶¶ 277, 281.) Plaintiff does not, however, allege that the 2022 10-K contained any misstatement or otherwise provide a basis to hold Ms. Hopkins or Mr. Plants liable for the SOX certifications that they did not sign. *See Rok* v. *Identiv, Inc.*, 2017 WL 35496, at *9 n.13 (N.D. Cal. Jan. 4, 2017) (ruling that defendant could not be liable for a challenged SOX certification that he did not sign).

-12-

or not reliably prepared. (*See id.*) The SAC includes some additional confidential witness statements to support Plaintiff's claim that "Cutera's internal controls over its inventory and supply chain were rife with material weaknesses" during the class period. (*See* SAC ¶¶ 282-305.) Putting aside that none of these allegations is adequately pleaded, as discussed below, the SAC (just like the FAC), still says nothing about how those alleged "problems caused the company's financial reporting and preparation of financial statements for the period covered by the [2022 10-K] to be inaccurate or unreliable." (Order at 10; *see* First Mot. at 9); *Veal* v. *LendingClub Corp.*, 423 F. Supp. 3d 785, 808 (N.D. Cal. 2019) ("Absent any allegations of financial wrongdoing, the SOX certifications have no nexus to Plaintiffs' reasons for falsity."). Statement 9 also is not adequately pleaded to be false because Plaintiff still does not "point[] to any allegations indicating that [Messrs.] Mowry and Seth did not, in fact, evaluate the effectiveness of the company's disclosure controls and procedures prior to making" their certifications. (Order at 10.)

***SOX certifications for the Q1 and Q2 2023 10-Qs.*** Statements 15-16 and 22-23 are not adequately pleaded to be false or misleading either. Although these certifications related to the quarterly reports that were the subject of the Restatement, Plaintiff still fails to allege facts showing "that Defendants Hopkins, Drummond, and Harris knew about the inaccuracy or unreliability of the financial reporting for Q1 2023 and Q2 2023, or about the allegedly deficient inventory controls, at the time they made" these certifications. (Order at 12.) None of the confidential witness statements helps Plaintiff to do this.[5] For instance, Plaintiff adds a handful of allegations attributed to CW8 that at least seem to bear on the relevant issues, but they are nonetheless insufficiently detailed and conclusory and fail to demonstrate any Defendant's knowledge. CW8 allegedly reported that Cutera's "inventory system, SAP," did not "provide the proper profit mark-up for the parts that were sold and not covered under warranties," and that this or another issue with "price discrepancies in SAP" (whether these are the same issue or even related is not at all clear) arose "by Q2 or Q3 of 2022" and "continued through approximately the first half of 2023." (SAC ¶ 300.) CW8 also alleged that, "under the new systems, . . . orders were not being processed

---

[5]    In the SAC, Plaintiff relies on five-pages' worth of statements purportedly about "Cutera's internal controls over its inventory and supply chain" to try to plead that the challenged SOX certifications were false. (SAC ¶¶ 282-305). Because many of these allegations are identical or nearly identical to the allegations pleaded in the FAC, Defendants focus on those allegations that are new to the SAC. The recycled allegations, however, including those attributed to CW1, CW6, and CW8, are inadequate for the reasons set forth in Defendants' First Motion and the Order. (*Compare* FAC ¶¶ 220, 267-70, *with* SAC ¶¶ 282, 284-87, 290-94, 302-03. *See* First Mot. at 7-9, 16-20; ECF No. 77 at 10-12.)

-13-

automatically"; she "could not recall" when this issue arose but it allegedly was not "fixed by the time she left the company" in October 2023. (*Id.* ¶ 301.) Even if Plaintiff had pleaded sufficient detail to show what exactly these issues were and that they existed at a relevant point in time, CW8's testimony is insufficient to plead the falsity of these SOX certifications because CW8 never said whether any Defendant (or anyone other than her) knew of these alleged problems and if and how the problems had any relation to Cutera's internal controls (let alone to the specific accounting errors that resulted in the Restatement). (*See* Order at 12; *infra* Section II.B.)

The remainder of the new allegations on which Plaintiff relies not only are lacking in necessary detail and fail adequately to demonstrate Defendants' knowledge of the issues, but also bear even less relevance to the challenged SOX certifications. Many of the CWs discuss various alleged "supply chain problems" (or something like it) that provide no (certainly no specific) information about Cutera's internal controls. (*E.g.*, SAC ¶ 282 (CW1 reporting that "supply chain problems started during the COVID epidemic, but continued afterwards"); *id.* ¶¶ 297-99 (CW7 reporting "constant shortages" of parts under "Pinapati's management"); *id.* ¶¶ 304-05 (CW8 recounting a policy of "swapp[ing]" out systems that were "too costly to continue servicing" and that she also requested device swaps when "her team could not get the parts they needed").) Other allegations are of no obvious relevance at all. (*E.g.*, *id.* ¶ 289 (CW1 alleging difficulties with Cutera's contract manufacturer, Jabil, which was allegedly more expensive than "manufacturing in-house" and "could not provide working systems for the products it made, which was the XLV system").)

Statements 17 and 24 are also still not adequately pleaded to be false or misleading. Plaintiff alleges the conclusion that Defendants did not "make reasonable inquiries" as to the state of Cutera's inventory controls and points to the relatively short tenures of Ms. Hopkins and Messrs. Drummond and Harris as Cutera's Interim CEO, Interim CFO, and CEO, respectively, when they signed their certifications. (*See* SAC ¶¶ 316, 323, 334, 341.) But conclusory and speculative allegations of this sort are not a substitute for pleading specific facts showing that Defendants "did not, in fact, evaluate the effectiveness of the company's disclosure controls and procedures." (Order at 13-14.)

**C.      The Statements about AviClear and Core Capital Are Immaterial as a Matter of Law.**

Plaintiff's claims related to AviClear and Core Capital should be dismissed on the separate ground that the challenged statements are immaterial.  In the First Motion, Defendants demonstrated that many of the statements about AviClear and Core Capital challenged in the FAC were immaterial because they are "'vague, generalized, and unspecific assertions' of corporate optimism or statements of 'mere puffing'" that cannot constitute "actionable material misstatements of fact under federal securities laws."  (First Mot. at 14 (quoting *Cement & Concrete Workers Dist. Council Pension Fund* v. *Hewlett Packard Co.*, 964 F. Supp. 2d 1128, 1138 (N.D. Cal. 2013) (Tigar, J.)).)  The same is true for Statements 1-6 alleged in the SAC, which are indistinguishable from statements that courts have held to be inactionable puffery, as illustrated below.  Statement 7 is likewise immaterial because it is a vague, amorphous statement that is incapable of objective verification.  (*See* SAC ¶ 268 (". . . sales reps finally pivoted back to their core capital pipeline"));  *Cement & Concrete Workers*, 964 F. Supp. 2d at 1138-39 (statements "lack[ing] a standard against which a reasonable investor could expect them to be pegged" are not actionable).

| Statement Held to Be Puffery | Statement in Plaintiff's SAC |
|---|---|
| Company "expect[s] that [its] products will continue to position [its] solutions as best-of-breed for the evolving . . . market." *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 868 (N.D. Cal. 2004). | "This new agreement will serve to perfectly align the goals and objectives of the company with those of the practice over the long term."  (Statement 1; SAC ¶ 231.) |
| New drug "launch was 'progressing well . . . .'" *Sneed* v. *AcelRx Pharms., Inc.*, 2023 WL 4412164, at *8 (N.D. Cal. July 7, 2023). | "[O]ur team achieved the successful launch of AviClear."  (Statements 2 & 3; SAC ¶¶ 247, 256.) |
| "[W]e are very pleased with the learning from our pilot launch" and "so far we're getting really great feedback." *Wozniak* v. *Align Tech., Inc.*, 850 F. Supp. 2d 1029, 1036 (N.D. Cal. 2012). | "[T]he physician feedback has been phenomenal."  (Statement 4; SAC ¶ 258.) |
| Statements that a company had "strong demand metrics and good momentum," and that "growth drivers give us . . . confidence." *City of Royal Oak Ret. Sys.* v. *Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1064 (N.D. Cal. 2012). | "[P]ractice performance indicators . . . continue to track with prior quarter rates instilling confidence . . . as we bring in the full-year results."  (Statement 5; SAC ¶ 258.) |
| Statement that customer "[d]emand for our solutions remains strong." *Scheller* v. *Nutanix, Inc.*, 450 F. Supp. 3d 1024, 1038 (N.D. Cal. 2020). | "[S]trong underlying interest in AviClear quickly converted into customer demand."  (Statement 6; SAC ¶ 268.) |

-15-

SULLIVAN & CROMWELL LLP

## II.    PLAINTIFF STILL FAILS ADEQUATELY TO PLEAD SCIENTER.

Plaintiff's scienter allegations were inadequate in the FAC and they are inadequate in the SAC for the reasons set forth in the First Motion. (First Mot. at 15-24.) Apart from the new or revised confidential witness allegations, Plaintiff's amendments to its scienter allegations are mostly cosmetic. Namely, Plaintiff has expanded subpart A of Section VIII ("Additional Indicial of Scienter") to include individual subsections assigned to Messrs. Mowry, Plants, and Seth, and Ms. Hopkins, which purport to show these Defendants' "awareness of the problems" with the "AviClear rollout" and "the Company's inadequate internal controls." (*Compare* FAC ¶¶ 416-19, *with* SAC ¶¶ 455-81.) Some of the allegations in these paragraphs are new, but most are not; again, some are identical or nearly identical to those included in the FAC, and all of them are repeated, over and over, throughout the SAC. These amendments certainly have contributed to the SAC's girth (now 15% longer than the FAC!). But verbosity and repetitiveness are not substitutes for well-pleaded "allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Metzler Inv. GMBH* v. *Corinthian Colls., Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008). Plaintiff still fails to raise the requisite "strong inference" of scienter as to any Defendant. (*See* Order at 17.)

### A.    Signed or Certified SEC Filings Still Do Not Adequately Plead Scienter.

Plaintiff again points to the fact that individual Defendants signed various SEC filings or SOX certifications that contained certain challenged statements. (*E.g.*, SAC ¶¶ 497-501.) That is not remotely sufficient to plead scienter, as the Court already has made clear that the fact that a defendant signed or certified an allegedly false statement contributes little, if anything, to the scienter calculus. (*See* Order at 19; *see also* First Mot. at 16); *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1160 (C.D. Cal. 2007) ("Without allegations that each of the Individual Defendants that signed various [company] public filings knew those public filings contained misstatements, the Individual Defendants' signatures on those public filings alone does not give rise to a strong inference of scienter[.]"). In any event, as discussed above, the SAC fails to allege particularized facts showing that the SOX certifications signed by Defendants Mowry, Seth, Drummond, Harris, and Hopkins are false or misleading and that these Defendants signed their respective certifications knowing of the alleged falsity. (*Supra* Section I.B.)

SULLIVAN & CROMWELL LLP

### B.    The Confidential Witnesses' Statements Still Do Not Adequately Plead Scienter.

Plaintiff continues heavily to rely on confidential witness allegations to try to plead scienter. Under the PSLRA, a plaintiff must "describe[]" such allegations "with sufficient particularity to establish [the CWs'] reliability and personal knowledge," and the allegations "must themselves be indicative of scienter." *Zucco Partners, LLC* v. *Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009). In the First Motion, Defendants detailed the numerous ways in which the statements of Plaintiff's eight CWs fail to meet this standard, including because they are speculative, conclusory, devoid of meaningful detail, based in large part on hearsay or otherwise lack indicia of reliability, and often resort to improper group pleading. (*See* First Mot. at 16-20; ECF No. 77 at 9-12.) The allegations in the SAC fail just as totally for the same reasons.[6]

*Allegations recycled from the FAC.* Perhaps most glaring are the statements cribbed from the FAC that the Court already held to be inadequately pleaded or which Defendants explained were obviously deficient in the First Motion. For instance, the SAC parrots CW1's detail-free assertion that Cutera "struggled with supply chain and inventory issues throughout 2023" and that "these problems were known to Mowry" by virtue of herself and "many people," including so-called "[r]elevant Non-Defendant Cutera Executives" Caroline Batarseh, Shelby Eckerman, John Sennett, and TJ Huffman, allegedly having "raised concerns" to Mr. Mowry. (SAC ¶¶ 282, 285-87.) But Plaintiff still does not describe these "problems" or "concerns," what CW1 and these other people supposedly told Mr. Mowry and when, or how CW1 knows any of this. Other of CW1's inadequate allegations feature prominently, without modification, in the SAC, including those that the Court specifically rejected. (*Compare* FAC ¶ 114, *and* SAC ¶ 275 (CW1 alleging the conclusion that "'everyone in the company' knew that AviClear was struggling" and that "she personally raised" an unspecified "problem to Mowry," in addition to "others" who told "her that they had also spoken to Mowry about their concerns with AviClear's poor financial performance"), *with* Order at 16 (holding CW1's allegation at FAC ¶ 114 to be "vague and conclusory").) These hearsay-based allegations, devoid of any sort of detail at all and no, or only the vaguest, description of these supposed conversations and when they occurred, are still inadequate to plead scienter. *See Zucco Partners*, 552 F.3d at 997 (rejecting

---

[6]    None of the CWs can speak for the entire class period, and five CWs left earlier than halfway through it. (*See* First Mot. at 16-17 & n.7.) CW2 and CW3 left Cutera with 15 months remaining in the class period (before Statements 6 to 24), CW4 and CW6 left with 13 months remaining (before Statements 8 to 24), and CW7 left with 18 months remaining (before Statements 4 to 24). (*See* SAC ¶¶ 67-74.)

-17-

SULLIVAN & CROMWELL LLP

allegations layered with hearsay and allegation relating to "sometime in 2003" because it "fail[ed] to provide specifics or dates"). Plaintiff also has done nothing at all to remedy the very statements attributed to CW4, among others, that the Court rejected in the FAC. (*See supra* Section I.A. *Compare* FAC ¶ 419, *and* SAC ¶ 463, *with* Order at 16 (ruling that CW4 did not plausibly allege that there were AviClear problems and that "it would have been 'impossible' for . . . Mowry not to know about them . . .").)

*Amended allegations.* To the extent that the SAC's amended allegations even bear on the relevant issues, none of them helps Plaintiff because they are all just as "insufficiently detailed and conclusory" or otherwise unreliable as the allegations that the Court rejected before and which courts in this Circuit routinely hold to be inadequate to plead scienter. (*See* Order at 15-16; First Mot. at 16-20.)

*Statements about AviClear.* Plaintiff has seemingly tried to make more credible CW1's claim that AviClear's "poor sales performance" was "clear internally by at least the second or third quarters of 2022" and that this "was known to Defendants Mowry, Plants, Seth, and Hopkins." (*Compare* FAC ¶ 113, *with* SAC ¶¶ 248-52.) Plaintiff adds that the basis for CW1's purported knowledge is her having joined the "Executive Leadership Team" (or "ELT") "*at one point*," meaning that she "was present for *at least some* of the meetings in which AviClear's poor performance was discussed," and others on the ELT having told CW1 that "the performance issues were discussed" at meetings prior to her joining. (SAC ¶ 250 (emphases added).) This is not remotely sufficient to establish what CW1 (let alone any Defendant) knew because CW1 does not say when *even one* of these meetings that she supposedly attended took place or what specifically (or even generally) was said at any such meeting about AviClear's performance. And to the extent that Plaintiff hopes to show that these Defendants must have known about AviClear's allegedly "poor financial performance" by virtue of his or her position at Cutera, that sort of allegation has been held inadequate time and again. (*See*, *e.g.*, *id.* ¶ 480 (alleging that Ms. Hopkins "was aware of the poor performance of AviClear during its rollout" by virtue of her having been "a member of the Cutera Board")); *Brodsky* v. *Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1118 (N.D. Cal. 2009) (allegations that Yahoo!'s executives "must have known about problems" based on their "high level positions in the company do not provide a strong inference of scienter").

As for other allegations relating to AviClear, Plaintiff similarly fails to plead Defendants' knowledge and, at times, does not even try. Take for instance the revised allegations attributed to CW2 and CW3 about

-18-

"problems with the AviClear rollout and customer pushback," discussed above. (SAC ¶¶ 240, 242.) Putting aside the fact that these allegations are entirely conclusory and provide no detail regarding the purported problems or customer complaints (*supra* at 10-11), neither CW2 nor CW3 ever alleges that any Defendant was aware of the reported issues, let alone how they became aware of those issues. If CW3's bald assertion that "Cutera tracked the usage of AviClear closely" (SAC ¶ 468) is supposed to show Defendants' knowledge, that, too fails, because Plaintiff never alleges that any of the problems reported by the CWs were the kinds of things that Cutera could or did "track[]" and, if so, how and what anyone at Cutera (let alone any Defendant) learned from that "track[ing]" effort. (*See id.* ¶ 467 ("AviClear metrics and performance were closely tracked by Defendants.").)

*Statements about inventory controls.* In the First Motion (at 18), Defendants explained that, even putting aside the various failings in the CWs' statements, the sorts of inventory issues reported by the CWs do not even appear to relate to the inventory issues that resulted in the Restatement or otherwise were the subject of any alleged misstatement. As Plaintiff still barely acknowledges (*see* SAC ¶¶ 320, 338 & nn.11-12), Cutera explained that it adjusted the cost of revenue for Q1 and Q2 2023 to correct, among other things, (i) accounting errors concerning the overstatement of inventory; (ii) accounting errors related to AviClear devices; and (iii) AviClear capitalized labor costs (Ex. X at 10, 11 nn.(a)-(e); Ex. Y at 12, 13-14 nn.(a)-(e), (j)). The SAC still does not present allegations showing that these inventory problems that resulted in the Restatement had anything to do with the inventory problems identified by the CWs. Indeed, a number of the newly added allegations describe what are essentially "supply chain" difficulties that purportedly arose during COVID and continued afterwards. (*See supra* Section I.B.) If these issues in fact arose, they may well have had something to do with Cutera's inventory management — maybe Cutera had less inventory or struggled timely to obtain more. But alleging that Cutera experienced supply chain difficulties and that Defendants knew of them does not in any way demonstrate that Defendants were aware of specific issues with the Company's inventory controls or the specific accounting errors that resulted in the Restatement.

Where the revised statements at least appear to have some connection to Cutera's inventory management, the SAC fares no better. As discussed above (at 13-14), the problems with Cutera's inventory-management system (SAP) reported by CW8, relating to incorrect "accounting for the costs of parts" and the processing of orders, fail to plead scienter not least because CW8 never alleged that anyone else knew

-19-

about these problems.  Plaintiff also has attempted to bolster CW5's statements ostensibly about the January 2023 plant shutdown — indicating that the cause of the shutdown was incorrect "inventory counts" — but, in so doing, fails to add any meaningful detail and, in fact, only *proves* that CW5 lacks personal knowledge of any inventory issue.  (SAC ¶ 295 ("CW 5 added that she only learned about the inventory problem from customers who had not received their orders.").)  Plaintiff likewise has tried and failed to rehabilitate CW6's testimony.  According to the SAC, "CW 6 explained that the reason for the physical inventory count was because the company thought there was more inventory on hand than what was showing up in the ERP system; the physical count showed that Cutera had much less inventory on hand than it thought." (*Id.* ¶ 292.) Which "inventory count"?  Plaintiff does not say.  If it was the count conducted at the end of Q3 2023 that led to the discovery of the accounting errors that resulted in the Restatement, Cutera disclosed as much to investors beginning in November 2023.  (*See* SAC ¶ 409; *see also* Exs. X at 1, 8 & Y at 1-2, 9.)

As detailed in the First Motion (at 16-20), the confidential witness allegations still boil down to vague, speculative, and conclusory assertions about (mostly) Mr. Mowry's mental state, and are principally based on hearsay.  Over and over, courts in this Circuit have held that allegations of this sort are unreliable and lack the particularized facts necessary to plead scienter.  *See*, *e.g.*, *In re Intel Corp. Sec. Litig.*, 2023 WL 2767779, at \*23 (N.D. Cal. Mar. 31, 2023) (allegation based on "chain of hearsay is not sufficiently reliable to credit" what the CEO and board knew, and CW's "bare allegation that there were yield problems at some unspecified time does not support an inference that any Individual Defendant knew of delays").

**C.      Plaintiff Still Fails To Plead Scienter as to the Restated Financials.**

The Court held that Plaintiff failed to plead scienter as to the restated financial figures reported by Mr. Drummond (Statements 12-14, 18-21) because the FAC was "devoid of allegations" indicating that Mr. Drummond knew that those figures "were inaccurate at the time he made the statements" or that any inaccuracy "was of such prominence that it would be absurd to suggest that" Mr. Drummond was "without knowledge of it."  (Order at 18-20.)  The SAC does no better.  Indeed, not a single CW even purports to speak about Mr. Drummond's mental state, and the SAC merely repeats essentially the same allegations that the Court already held inadequate to plead scienter as to Mr. Drummond.  (*See* SAC ¶¶ 416, 497-501, 504-06, 511; Order at 18-19 (rejecting Plaintiff's reliance on group pleading, signed SEC filings and SOX certifications, and Mr. Drummond's May and August 2023 disclosures regarding Cutera's inventory

-20-

problems).)  As discussed, Plaintiff still does not allege that Mr. Drummond or anyone else knew anything about the specific accounting errors that resulted in the Restatement, let alone that any of them was obvious.

### D.       Plaintiff's Recycled Theories of Scienter Are Still Inadequate To Plead Scienter.

Because the Court concluded that the FAC failed adequately to allege an actionable misstatement beyond the restated financials, the Court did not address Plaintiff's remaining theories of scienter.  This may explain why Plaintiff's other scienter allegations are essentially untouched from the FAC.  Those allegations were inadequate in the FAC and they are inadequate still.

#### 1.       The AviClear Incentive Plan Does Not Support a Strong Inference of Scienter.

According to Plaintiff, Messrs. Mowry, Seth, and Plants were financially motivated to defraud investors given Cutera's AviClear Incentive Plan, a bonus "designed to incentivize and retain the key individuals involved" in the "commercialization of AviClear."  (SAC ¶ 117.)  As Plaintiff describes it, Messrs. Mowry, Seth, and Plants "stood to gain" (but are nowhere alleged actually to have gained) "$472,428," "$314,952," and "$143,160," respectively, if Cutera achieved two milestones:  (i) obtain FDA approval and place the first AviClear device by April 2022, and (ii) place an unspecified quantity of devices by April 2023.  (*Id.* ¶¶ 117, 521-22.)  Plaintiff alleges that this bonus "motivated" these Defendants "to rush the AviClear rollout" and "conceal from investors the truth about the failed [AviClear] strategy."  (*Id.* ¶ 521.)

It is not clear at all how these bonuses motivated Defendants to "conceal" anything from investors — according to Plaintiff, Cutera did, in fact, obtain FDA approval and place numerous AviClear devices and none of this needed to be done secretly.  But in any event, "for executive compensation to support the inference of scienter, 'the allegations in the complaint must demonstrate a strong correlation — including comparisons to previous years' [compensation] — between the [compensation] and the company's 'bottom line.'"  *In re Extreme Networks, Inc. Sec. Litig.*, 2018 WL 1411129, at *29 (N.D. Cal. Mar. 21, 2018).  The SAC makes no reference to any such correlation, let alone a "strong" one.  Plaintiff's own allegations also belie Plaintiff's theory.  The purported "rush" to launch AviClear was to do with "beat[ing]" out Cutera's competitor, Accure, which CW2 confirmed.  (SAC ¶¶ 80, 516.)  In addition, most of the financial incentives (some 70%) required customers actually *to use* AviClear.  (*Id.* ¶ 117 (30% of bonus based on "[a]chieving a predetermined number of average treatments per device" and 40% on "[e]xceeding a predetermined

trailing 12-month revenue target").[7] *See In re Accuray, Inc. S'holder Derivative Litig.*, 757 F. Supp. 2d 919, 933 (N.D. Cal. 2010) (that the CEO's "bonus compensation was tied to the inflated backlog does not necessarily raise a strong inference of scienter, especially because the amount that was tied to the backlog accounted for only 20% of a potential bonus"). The AviClear bonus also was a fraction of these Defendants' total compensation (roughly 12% for Mr. Mowry and 14% for Messrs. Seth and Plants), further undermining Plaintiff's theory that these Defendants were incentivized to dupe investors about AviClear. (*See* Ex. Z at 51 (reflecting bonus structure); *id.* at 54 (reflecting compensation figures)); *In re Skechers USA, Inc. Sec. Litig.*, 444 F. Supp. 3d 498, 526-27 (S.D.N.Y 2020) (concluding that incentive-based bonuses for CEO (roughly 71% of salary) and COO (roughly 36% of salary) were not indicative of scienter).

### 2. Executive Departures Do Not Support a Strong Inference of Scienter.

Plaintiff alleges that the timing and circumstances of the departures of Messrs. Seth, Mowry, and Plants establish scienter. In this Circuit, only allegations that a departure "was uncharacteristic when compared to the defendant's typical hiring and termination patterns or was accompanied by suspicious circumstances" evidence scienter. *Zucco Partners*, 552 F.3d at 1002. Plaintiff pleads neither. As to Mr. Seth, who resigned as CFO, Plaintiff alleges that his departure coincides with the May 9, 2023 disclosure that Cutera's "challenges in the quarter were mostly self-inflicted and can be attributed to suboptimal leadership direction that led to execution issues." (SAC ¶ 495.) Plaintiff does not even try to compare Mr. Seth's resignation with Cutera's termination patterns. And Plaintiff never explains why the resignation is suspicious. The conclusory allegation that the resignation "is temporally connected to disclosures of the Company's fraud" (*id.*) fails to plead scienter. It is not unusual for a CFO to depart following the discovery of an accounting issue serious enough to require a restatement; such a departure does not give rise to a strong inference of scienter absent much more. *See Zucco Partners*, 552 F.3d at 1002 (former CFO's departure "just prior to the disclosure of [the company]'s improper accounting and lack of financial controls during his tenure" did not establish scienter).

---

[7]    Plaintiff repeatedly points to the Cutera Board's special committee's determination that Mr. Plants was "far more interested in his own personal enrichment than in leading the Company for the benefit of all stakeholders." (*E.g.*, SAC ¶¶ 239, 494.) Plaintiff has taken this, too, out of context. The special committee's letter to investors makes no reference to Mr. Plants's attempting to place AviClear devices too quickly or to his being improperly motivated by an AviClear bonus. (Ex. AA.) Rather, the letter discusses Mr. Plants's desire to become Cutera's next CEO and increase his compensation that way. (*Id.* at 5.)

-22-

SULLIVAN & CROMWELL LLP

Plaintiff's allegations as to Messrs. Mowry and Plants are no better. The SAC alleges that the Board's decision to terminate their employment alleges scienter because both departures were "temporally" and "explicitly connected to" disclosures of Cutera's alleged fraud. (SAC ¶ 491.) Plaintiff points to the conclusions that Mr. Mowry "fail[ed] to properly roll out AviClear and support Core Capital" and that Mr. Plants's "focus was overwhelmingly on compensation." (*Id.* ¶¶ 493-94.) But Plaintiff's own allegations suggest that the more plausible inference is that Cutera's Board believed that these Defendants had performed worse than expected. "[P]oor business performance," however, "is not securities fraud." *Jiu-Yang Hong* v. *Extreme Networks, Inc.*, 2017 WL 1508991, at *24 (N.D. Cal. Apr. 27, 2017).

### 3.  The Core-Operations Theory Does Not Support a Strong Inference of Scienter.

Plaintiff again alleges that this is one of those rare cases where scienter "can be inferred because" certain alleged facts "were critical to Cutera's core operations." (SAC ¶ 515.) "The core operations theory posits that 'facts critical to a business's core operations or an important transaction generally are so apparent that their knowledge may be attributed to the company and its key officers.'" *Bodri* v. *GoPro, Inc.*, 252 F. Supp. 3d 912, 932 (N.D. Cal. 2017). "Proof under this theory is not easy." *Police Ret. Sys. of St. Louis* v. *Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014). Plaintiff still alleges no facts to invoke it.

As to the AviClear rollout, Plaintiff relies on Mr. Plants's comment that the placement model was "going to transform every single aspect of [the] business," CW1's assertion that "the directive to move away from Cutera's core business to focus on AviClear came directly from Mowry and Plants," and CW2's statement that "it was of the utmost importance for Cutera to rollout AviClear before its competitor's product, *Accure*." (SAC ¶¶ 515-16.) These allegations are not remotely adequate to invoke the core-operations theory. Mr. Plants's alleged admission that AviClear would "transform" Cutera's business hardly "detail[s]," as is required, his "involvement in the minutia" of Cutera's operations. *See Intuitive Surgical*, 759 F.3d at 1062 (rejecting core-operations theory, in part, because the "complaint lack[ed] allegations of specific admissions by the individual defendants regarding their involvement with [the company]'s operations"). The confidential witness allegations also miss the mark, as they merely concern "the impressions of witnesses who lacked direct access to the executives." *Id.* But the real problem with Plaintiff's attempt to invoke the core operations doctrine is its failure to identify what went wrong with AviClear that was "so apparent" to management. AviClear undoubtedly is very important to Cutera but, as

-23-

described above, the SAC describes the alleged problems with it inconsistently and without sufficient detail such that it is impossible to tell whether this is the rare case where an issue, in fact, implicates a "core operation." (*See supra* Sections I.A & II.B.  *Compare*, *e.g.*, SAC ¶ 284 (AviClear was a "top three seller[]"), *with id* ¶¶ 241, 246 ("the leasing model was such a failure"; "doctors did not want to do it").)

As for internal controls, Plaintiff alleges that those "were likewise critical aspects of Cutera's business," given statements in Cutera's 2022 10-K and other SEC filings that "inventory management are top priorities of the manufacturing operations" and that Cutera's "success depend[s] on the quality and reliability of its products." (*Id.* ¶ 519.)  This does not square with the facts that the Restatement amounts were, in fact, quite small and that the Restatement resulted from the sort of inventory problems that may not have anything to do with the confidential witness allegations.  (*See* Ex. X at 8, 11 nn.(a)-(h); Ex. Y at 9, 13 nn.(a)-(g).)  Without much more, Plaintiff cannot rely on the core-operations theory.

**E.     Plaintiff Fails Adequately To Plead Scienter as to Cutera.**

Certain of the challenged statements containing restated financials were not made by an individual speaker but instead come from disclosures issued by Cutera.  (Statements 11, 14, 18, 21; SAC ¶¶ 310, 328.)  "'[A] corporation can only act through its employees and agents'" and can likewise "only have scienter through them." *Prodanova* v. *H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021).  Trying to link an individual Defendant to these corporate statements, Plaintiff points to Mr. Drummond's signing certain SEC filings.  (SAC ¶¶ 310, 328.)  As discussed above, however, Plaintiff fails adequately to allege that Mr. Drummond acted with scienter.  Thus, Plaintiff necessarily fails to plead scienter as to Cutera.

\*          \*          \*

Plaintiff's scienter allegations, taken separately or together, are still plainly inadequate.  There is a far more compelling inference:  Defendants sincerely expressed their excitement for the AviClear rollout, Cutera's ability to continue to deliver strong results, and ongoing efforts to improve the Company's internal controls.  As it happened, Cutera failed to realize its vision for AviClear and business declined.  Add to that the leadership changes in mid-2023 and the discovery of accounting errors and a Restatement months later, and that is a recipe for a difficult year.  Without much more, it is not securities fraud.

**III.    PLAINTIFF'S CLAIM AGAINST CUTERA WAS DISCHARGED IN BANKRUPTCY.**

Plaintiff's securities claim against Cutera must be dismissed for the independent reason that it was

-24-

extinguished upon confirmation of Cutera's Plan of Reorganization on April 16, 2025 — five months before Plaintiff filed the FAC.  Under the Bankruptcy Code, the confirmation of a Chapter 11 plan discharges the debtor from any pre-confirmation "debt."  11 U.S.C. § 1141(d)(1).  A "debt" is defined as "liability on a claim."  *Id.* § 101(12).  Section 9.2 of Cutera's Plan provides that "to the fullest extent permitted by section 1141(d) of the Bankruptcy Code," any and all "Interests and Claims" against Cutera are fully satisfied, settled, released, and discharged as of the Plan's Effective Date.  (Ex. CC, § 9.2.)  Securities claims such as Plaintiff's are among those expressly discharged under the Plan.  (*See id.* §§ 1.1 ¶ 145, 3.3(h)) (providing that any claim "for damages arising from the purchase or sale of" Cutera common stock is "discharged[] and extinguished"); *see also* Ex. DD at 10.)

By statute and pursuant to the Plan, Plaintiff is permanently enjoined from pursuing its discharged claim against Cutera.  *See* 11 U.S.C. § 524(a)(2); *Gianelli* v. *Schoenfeld*, 2022 WL 3230097, at \*10 (E.D. Cal. Aug. 10, 2022) ("Once a discharge is entered, the permanent injunction of § 524 replaces the automatic stay of [11 U.S.C.] § 362 and prevents creditors from ever collecting a discharged debt."); (Ex. DD at 13, 22 (providing that the injunction set forth under Section 9.5 of the Plan is "approved and shall be effective and binding on all Persons and Entities").)  Plaintiff's claim against Cutera therefore must be dismissed with prejudice.  *See Batiste* v. *Am. Eagle Airlines*, 2015 WL 13915193, at \*2-3 (C.D. Cal. Jan. 16, 2015) (dismissing claims with prejudice because they were discharged under a Chapter 11 plan).

## IV.     PLAINTIFF STILL DOES NOT STATE A CLAIM UNDER SECTION 20(A).

Because Plaintiff still fails adequately to plead a primary violation as to any individual Defendant, Plaintiff's claims under Section 20(a) fail as a matter of law.  (*See* Order at 21.)

## CONCLUSION

After the FAC was dismissed, the Court gave Plaintiff an opportunity to plead adequately its claims and again failed to do so.  That Plaintiff has "failed to correct these deficiencies in its Second Amended Complaint is a 'strong indication that [Plaintiff] ha[s] no additional facts to plead.'" *Zucco Partners*, 552 F.3d at 1007.  Accordingly, the SAC should be dismissed with prejudice.

Dated:   December 15, 2025

/s/ Brendan P. Cullen
Brendan P. Cullen (SBN 194057)
(cullenb@sullcrom.com)

-25-

Alexis C. Holmes (SBN 321393)
(holmesa@sullcrom.com)
SULLIVAN & CROMWELL LLP
550 Hamilton Avenue
Palo Alto, California 94301
Telephone:     (650) 461-5600
Facsimile:     (650) 461-5700

*Counsel for Defendants Cutera, Inc., David H. Mowry, Rohan Seth, J. Daniel Plants, Sheila Hopkins, Taylor Harris, and Stuart Drummond*

-26-

**APPENDIX 1:  CHALLENGED STATEMENTS ALLEGED IN THE SECOND AMENDED COMPLAINT**

| Statement No. | Second Amended Complaint Reference | Challenged Statement | Neither False Nor Misleading | Immaterial | Inadequate Scienter Allegations |
|---|---|---|---|---|---|
| | | **May 10, 2022 – First Quarter 2022 Earnings Conference Call (Ex. B)** | | | |
| 1 | SAC ¶ 231 | "**This new agreement will serve to perfectly align the goals and objectives of the company with those of the practice over the long term.**"[1] | ✓ | ✓ | ✓ |
| | | **August 4, 2022 – Press Release (Ex. C)** | | | |
| 2 | SAC ¶ 247 | "**During the quarter, our team achieved the successful launch of AviClear**" | ✓ | ✓ | ✓ |
| | | **August 4, 2022 – Press Release Attached to Form 8-K (Ex. E)[2]** | | | |
| 3 | SAC ¶ 256 | Same as Challenged Statement No. 2. | ✓ | ✓ | ✓ |
| | | **November 3, 2022 – Third Quarter 2022 Earnings Conference Call (Ex. H)** | | | |
| 4 | SAC ¶ 258 | "**the physician feedback has been phenomenal**" | ✓ | ✓ | ✓ |
| 5 | SAC ¶ 258 | "**[p]ractice performance indicators such as patient cues, appointment cancellation rates also continue to track with prior quarter rates instilling confidence in the core capital equipment and consumable run rates as we bring in the full-year results**" | ✓ | ✓ | ✓ |

---

[1]     Language bolded in this Appendix is also bolded and italicized in the Second Amended Complaint.  At paragraph 228, Plaintiff states that "the statements highlighted in bold and italics within this section were knowingly and materially false and misleading and/or omitted to disclose material information of which Defendants were aware or were reckless in not knowing."

[2]     Although the Second Amended Complaint alleges that Cutera's Form 8-K is dated August 5, 2022 (¶ 256), in fact, that current report was filed with the SEC on, and is dated, August 4, 2022.

**APPENDIX 1: CHALLENGED STATEMENTS ALLEGED IN THE SECOND AMENDED COMPLAINT**

| Statement No. | Second Amended Complaint Reference | Challenged Statement | Neither False Nor Misleading | Immaterial | Inadequate Scienter Allegations |
|---|---|---|---|---|---|
| februrary | | **February 28, 2023 – Fourth Quarter 2022 Earnings Conference Call (Ex. L)** | | | |
| 6 | SAC ¶ 268 | ". . . strong underlying interest in AviClear quickly converted into customer demand that occupied our sales team throughout November and most of December" | ✓ | ✓ | ✓ |
| 7 | SAC ¶ 268 | ". . . sales reps finally pivoted back to their core capital pipeline" | ✓ | ✓ | ✓ |
| | | **April 7, 2023 – SOX certifications attached to 2022 Form 10-K (Ex. M)** | | | |
| 8 | SAC ¶ 279 | "the information contained in the annual report fairly presents, in all material respects, the financial condition and results of operations of Cutera, Inc. for the periods presented therein" | ✓ | | ✓ |
| 9 | SAC ¶ 280 | "[e]valuated the effectiveness of the registrant's disclosure controls and procedures" | ✓ | | ✓ |
| 10 | SAC ¶ 280 | "[d]esigned such internal control over financial reporting, or caused such internal control over financial reporting to be designed under the Company's supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements" | ✓ | | ✓ |

**APPENDIX 1:  CHALLENGED STATEMENTS ALLEGED IN THE SECOND AMENDED COMPLAINT**

| Statement No. | Second Amended Complaint Reference | Challenged Statement | Neither False Nor Misleading | Immaterial | Inadequate Scienter Allegations |
|---|---|---|---|---|---|
| | | **May 9, 2023 – Press Release Attached to Form 8-K (Ex. N)** | | | |
| 11 | SAC ¶ 310 | First Quarter 2023 Financial Metrics:<br>• GAAP Cost of Revenue: **$30.1 MM**<br>• GAAP Gross Profit: **$24.9 MM**<br>• Non-GAAP Gross Profit: **$27 MM**<br>• GAAP Gross Margin: **45.3%**<br>• Non-GAAP Gross Margin: **49.1%**<br>• GAAP Operating Loss: **$23.6 MM**<br>• Non-GAAP Operating Loss: **$14.5 MM**<br>• Inventory: **$71.8 MM** | | | ✓ |
| | | **May 9, 2023 – First Quarter 2023 Earnings Conference Call (Ex. O)** | | | |
| 12 | SAC ¶ 311 | "[n]on-GAAP gross profit for the first quarter of fiscal 2023 was $27 million, with a gross margin of 49.1%" | | | ✓ |
| 13 | SAC ¶ 311 | "Non-GAAP operating income . . . was a loss of **$14.5 million**" | | | ✓ |
| | | **May 10, 2023 – First Quarter 2023 Form 10-Q (Ex. P)** | | | |
| 14 | SAC ¶ 310 | Same as Challenged Statement No. 11. | | | ✓ |
| | | **May 10, 2023 – SOX certifications attached to First Quarter 2023 Form 10-Q (Ex. Q)** | | | |
| 15 | SAC ¶ 312 | "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report" | ✓ | | ✓ |
| 16 | SAC ¶ 312 | "[d]esigned such internal control over financial reporting, or caused such internal control over financial reporting to be designed under the [Company's] supervision" | ✓ | | ✓ |

-3-

**APPENDIX 1:  CHALLENGED STATEMENTS ALLEGED IN THE SECOND AMENDED COMPLAINT**

| Statement No. | Second Amended Complaint Reference | Challenged Statement | Neither False Nor Misleading | Immaterial | Inadequate Scienter Allegations |
|---|---|---|---|---|---|
| 17 | SAC ¶ 313 | "[e]valuated the effectiveness of the registrant's disclosure controls and procedures and presented in this report [the Company's] conclusions about the effectiveness of the disclosure controls and procedures" | ✓ | | ✓ |
| **August 8, 2023 – Form 8-K (Ex. R)** | | | | | |
| 18 | SAC ¶ 328 | Second Quarter 2023 Financial Metrics:<br>• GAAP Cost of Revenue: **$33.2 MM**<br>• GAAP Gross Profit: **$28.1 MM**<br>• Non-GAAP Gross Profit: **$30.8 MM**<br>• GAAP Gross Margin: **45.8%**<br>• Non-GAAP Gross Margin: **50.3%**<br>• GAAP Operating Loss: **$29.5 MM**<br>• Non-GAAP Operating Loss: **$11.6 MM**<br>• Inventory: **$68.7 MM** | | | ✓ |
| **August 8, 2023 – Second Quarter 2023 Earnings Conference Call (Ex. S)** | | | | | |
| 19 | SAC ¶ 329 | "**Non-GAAP gross profit for the first quarter of 2023 was $30.8 million with a gross margin of 50.3%**" | | | ✓ |
| 20 | SAC ¶ 329 | "[N]on-GAAP operating income . . . was a loss of **$11.6 million**" | | | ✓ |
| **August 9, 2023 – Second Quarter 2023 Form 10-Q (Ex. T)** | | | | | |
| 21 | SAC ¶ 328 | Same as Challenged Statement No. 18. | | | ✓ |
| **August 9, 2023 – SOX certifications attached to Second Quarter 2023 Form 10-Q (Ex. U)** | | | | | |
| 22 | SAC ¶ 330 | Same as Challenged Statement No. 15. | ✓ | | ✓ |
| 23 | SAC ¶ 330 | Same as Challenged Statement No. 16. | ✓ | | ✓ |
| 24 | SAC ¶ 331 | Same as Challenged Statement No. 17. | ✓ | | ✓ |