Michael P. Canty (*pro hac vice*)
Michael H. Rogers (*pro hac vice*)
Nicholas D. Manningham (*pro hac vice*)

**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: mcanty@labaton.com
        mrogers@labaton.com
        nmanningham@labaton.com

*Counsel for Lead Plaintiff and Lead Counsel
for the Class*

Lucas E. Gilmore (#250893)

**HAGENS BERMAN SOBOL SHAPIRO
LLP**
715 Hearst Avenue, Suite 300
Berkeley, California 94710
Telephone: (510) 725-3000
Fax: (510) 725-3001
Email: lucasg@hbsslaw.com

*Liaison Counsel for the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE CUTERA, INC. SECURITIES LITIGATION | **Case No.: 4:23-cv-02560-JST**<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date:        April 9, 2026<br>Time:        2:00 P.M.<br>Location:  Courtroom 6 – Second Floor<br>Judge:      Hon. Jon S. Tigar |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iii

STATEMENT OF ISSUES TO BE DECIDED ........................................................................1

I.      INTRODUCTION ........................................................................................................1

II.     STATEMENT OF FACTS ............................................................................................6

        A.      The Old Management Defendants Perpetrated a Fraudulent Scheme ........................6

        B.      Cutera's Inventory Controls Were a Failure ..............................................................7

        C.      The New Management Defendants Recklessly Certified Cutera's Financial
                Results While Deliberately Ignoring Red Flags.........................................................7

        D.      Cutera Restated Its Financial Results.........................................................................8

III.    ARGUMENT ..................................................................................................................8

        A.      Legal Standard ...........................................................................................................8

        B.      The SAC Adequately Alleges Scheme Liability.........................................................8

        C.      The SAC Sufficiently Pleads Materially False and Misleading Statements .............11

                1.      Defendants Concede the Q1 2023 and Q2 2023 Reports Were False............12

                2.      New Management Defendants' SOX Certifications in Connection
                        with the False Quarterly Reports Were Also False .......................................12

                        (a)     New Management Defendants Knew of Red Flags ...........................13

                        (b)     CWs Establish Inventory Problems Were Longstanding...................14

                3.      Old Management Defendants' Statements Related to AviClear and
                        Cutera's Business Were False........................................................................15

                        (a)     The Launch of AviClear and Customer Reception............................16

                        (b)     Core Capital Performance & Allocation of Sales Personnel .............17

                        (c)     The MTD's Puffery Defense Fails......................................................18

        D.      The SAC Sufficiently Pleads Scienter ....................................................................19

                1.      The Old Management Defendants ................................................................20

                        (a)     The Acne Equity Grant .....................................................................20

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-02560-JST

i

(b)    The CW Allegations...........................................................................21

(c)    The Departures of Plants, Mowry, and Seth ....................................22

(d)    Class Period Statements Regarding AviClear and Core Capital........22

2.    The New Management Defendants................................................................23

E.    Control Person Claims Under Section 20(a)...............................................................25

CONCLUSION ................................................................................................................................25

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-02560-JST

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alphabet, Inc. Sec. Litig.*,
    1 F.4th 687 (9th Cir. 2021)..................................................................................... 4, 19

*Berson v. Applied Signal Tech., Inc.*,
    527 F.3d 982 (9th Cir. 2008).................................................................................. 17, 19

*Bielousov v. GoPro, Inc.*,
    2017 WL 3168522 (N.D. Cal. 2017)............................................................................ 22

*Borteanu v. Nikola Corp.*,
    2023 WL 11017679 (D. Ariz. 2023) .............................................................................. 9

*Constr. Workers Pension Tr. Fun – Lake Cnty. v. Genoptix, Inc.*,
    2013 WL 12123841 (S.D. Cal. 2013) ......................................................................... 18

*Dobina v. Weatherford Int'l Ltd.*,
    909 F. Supp. 2d 228 (S.D.N.Y. 2012)......................................................................... 23

*In re: Ebix, Inc. Sec. Litig.*,
    898 F. Supp. 2d 1325 (N.D. Ga. 2012) ....................................................................... 23

*Evanston Police Pension Fund v. McKesson Corp.*,
    411 F. Supp. 3d 580 (N.D. Cal. 2019) ........................................................................ 20

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008)....................................................................................... 8

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
    63 F.4th 747 (9th Cir. 2023)........................................................................... 15, 17, 21

*Glazer Cap. Mgmt., L.P. v. Magistri*,
    549 F.3d 736 (9th Cir. 2008) ...................................................................................... 12

*Howard v. Everex Sys., Inc.*,
    228 F.3d 1057 (9th Cir. 2000)..................................................................................... 25

*Huang v. Higgins*,
    2019 WL 1245136 (N.D. Cal. 2019)........................................................................... 20

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018)................................................................................... 6, 18

*Middlesex Ret. Sys. v. Quest Software, Inc.*,
    527 F. Supp. 2d 1164 (C.D. Cal. 2007)....................................................................... 23

*Mulderrig v. Amyris, Inc.*,
    492 F. Supp. 3d 999 (N.D. Cal. 2020) ........................................................................ 13

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-02560-JST

iii

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003)............................................................................................ 8, 20

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017)................................................................................................ 19

*Reese v. Malone*,
   747 F.3d 557 (9th Cir. 2014).................................................................................................. 22

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*,
   845 F.3d 1268 (9th Cir. 2017)................................................................................................ 11

*Roberti v. OSI Sys., Inc.*,
   2015 WL 1985562 (C.D. Cal. 2015)....................................................................................... 22

*Rodriguez v. Gigamon Inc.*,
   325 F. Supp. 3d 1041 (N.D. Cal. 2018) ................................................................................. 19

*S. Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008).................................................................................................. 20

*Schueneman v. Arena Pharms., Inc.*,
   840 F.3d 698 (9th Cir. 2016).................................................................................................. 17

*In re Seagate Tech. Holdings PLC Sec. Litig.*,
   2025 WL 1744505 (N.D. Cal. 2025)........................................................................... 11, 14, 25

*SEC v. Bardman*,
   216 F. Supp. 3d 1041 (N.D. Cal. 2016) (Tigar, J.) .................................................................. 9

*SEC v. Richman*,
   2021 WL 5113168 (N.D. Cal. 2021)....................................................................................... 11

*Shenwick v. Twitter, Inc.*,
   282 F. Supp. 3d 1115 (N.D. Cal. 2017) ................................................................................. 22

*Simpson v. AOL Time Warner Inc.*,
   452 F.3d 1040 (9th Cir. 2006).................................................................................................. 9

*Sneed v. AcelRx Pharms, Inc.*,
   2023 WL 4412164 (N.D. Cal. 2012)....................................................................................... 19

*In re SolarEdge Techs., Sec. Litig.*,
   2024 WL 4979296 (S.D.N.Y. 2024) ....................................................................................... 19

*Stocke v. Shuffle Master, Inc.*,
   615 F. Supp. 2d 1180 (D. Nev. 2009) ............................................................................... 23, 25

*In re SVB Fin. Grp. Sec. Litig.*,
   2025 WL 1676800 (N.D. Cal. 2025)....................................................................................... 21

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)............................................................................................................ 8, 19

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-02560-JST

iv

*Thomas v. Magnachip Semiconductor Corp.*,
    167 F. Supp. 3d 1029 (N.D. Cal. 2016) (Tigar, J.) .............................................................. 5, 23

*York Cnty. ex. Rel. Cnty. of York Ret. Fund v. HP*,
    738 F. Supp. 3d 1182 (N.D. Cal. 2024) ...................................................................................... 9

*Zaidi v. Adamas Pharms., Inc.*,
    650 F. Supp. 3d 848 (N.D. Cal. 2023) ...................................................................................... 19

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)............................................................................................... 20, 21

**Rules and Regulations**

17 CFR § 240.10b-5 ............................................................................................................................ 11

**Legislative Materials**

S. Rep. No. 107-205 (2002) ......................................................................................................... 5, 24

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-02560-JST

v

Lead Plaintiff New England Teamsters Pension Fund ("Lead Plaintiff"), respectfully submits this Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("MTD" or "Motion") (ECF No. 90) the Second Amended Class Action Complaint for Violations of the Federal Securities Laws ("SAC," ECF No. 87).[1]

<strong>STATEMENT OF ISSUES TO BE DECIDED</strong>

Does Lead Plaintiff adequately allege claims under §§ 10(b) and 20(a) of the Exchange Act?

## I.   INTRODUCTION

This case arises from Defendants' fraudulent actions that destroyed all shareholder value and ultimately led to Cutera's bankruptcy—leaving injured investors with no remedy except for this securities fraud class action. Although Defendants' latest motion to dismiss portrays the SAC as a repackaging of the previously dismissed amended complaint, it is not. Among other things, the SAC sharpens Lead Plaintiff's theory and adds new allegations, including a scheme to defraud, demonstrating how each Individual Defendant is liable under the Exchange Act for misleading investors. The Court should deny Defendants' Motion.

As alleged in the SAC, starting on May 10, 2022 (the start of the Class Period), Cutera's previous leadership team, including Defendants Mowry, Seth, and Plants, orchestrated a fraudulent scheme to personally enrich themselves at the expense of shareholders. Specifically, these defendants, referred to herein as the "Old Management Defendants," rushed to launch the Company's new product, AviClear, and adopted a new lease-based model to sell it. The Old Management Defendants did not rush the AviClear launch to protect the best interests of Cutera or its shareholders, but instead, to earn themselves outsized corporate bonuses under the "Acne Equity Grant."

To wit, because AviClear **placements**—and not revenue-generating **use** of the devices—drove bonuses during the first year of the Acne Equity Grant, the Old Management Defendants adopted a new lease-based business model to place as many devices as possible (often giving AviClear away for free) with zero regard to long-term revenue generation. Worse, the Old

---

[1] Unless noted, all emphasis is added, internal citations and quotes are omitted, and all capitalized terms, including Defendants and Individual Defendants, have meanings set forth in the SAC. Citations to "¶__" are to the SAC.

Management Defendants personally diverted Cutera's salesforce away from the Company's core business, called "Core Capital," which was responsible for 98% of Cutera's revenue, to maximize AviClear placements and reach their bonus milestones.

Indeed, the Old Management Defendants disregarded objective, factual indicators demonstrating that this new lease-based model was not working and generating little-to-no revenue for Cutera. For example, according to a former employee identified as CW 1, internal projections for AviClear were $20-25 million, but AviClear generated only about $6 million in revenue for all of 2022—a **76-percent decline** from projections—proving that placing AviClear devices under the lease-based model was generating very little value. ¶124. Indeed, as alleged by CW 5, Mowry participated in weekly meetings where Cutera employees discussed low utilization trends for the AviClear product, which caused poor revenue results. ¶36. Moreover, the rushed rollout created several operational problems with the AviClear devices, causing customers to send complaints directly to Mowry and return the product to Cutera. ¶¶20, 420.

Despite all the problems with AviClear, including the lack of utilization and revenue, the Old Management Defendants continued pushing all salespeople to focus on AviClear placements, completely and utterly disregarding the actual revenue generating segment of Cutera's business. And to cover up their scheme, these defendants made several affirmative, false statements that led investors to believe that AviClear was a resounding success. For example, on August 4, 2022, Mowry falsely stated that Cutera had already "***achieved the successful launch of AviClear***," ¶247, and that "***the physician feedback has been phenomenal***." ¶258. These statements were false and misleading because, in truth, the launch of AviClear was a complete failure that caused Cutera's Core Capital business slowly to die. Indeed, Defendants partially revealed the truth on January 9, 2023, when they disclosed poor full-year results from Core Capital and admitted, for the first time, that the Company took "its eye off the ball on the core business as it was pushing aggressively [AviClear]." ¶358.

Moreover, while executing their undisclosed and fraudulent scheme, the Old Management Defendants presided over the collapse of the Company's inventory management. Specifically, before the Class Period, Cutera implemented a new enterprise resource planning ("ERP") system for managing inventory. From the start, though, this new ERP system was riddled with problems and

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-02560-JST

2

inaccuracies. This was made worse by the rushed and failed AviClear rollout, as many customers returned unused AviClear devices and the ERP system could not accurately account for such returns. Indeed, the Company admitted that as much as 50% of all AviClear devices were returned based on the lack of usage. ¶¶423, 445-47.

In January 2023, Cutera's inventory problems caused a four-week shutdown of the Company's warehouse to conduct a physical inventory count. In connection with this shutdown, Cutera admitted on April 7, 2023 that it had identified a material weakness in its inventory controls. Then, only days later, on April 11, 2023, Cutera's Board fired Plants and Mowry **for cause**. According to the Board, it terminated Plants because he "was far more interested in his own personal enrichment than in leading the Company for the benefit of all stakeholders." ¶¶492, 494. The Board fired Mowry because of "unforced errors" related to the failed AviClear rollout. ¶484. Seth avoided the fate of his Old Management Defendant colleagues, but nevertheless voluntarily left Cutera only one month later. But that is not the end of the story—at that point, Cutera's new leadership stepped in: Hopkins, Drummond, and Harris (the "New Management Defendants").

Rather than come clean and accurately represent to investors the state of Cutera's business, however, the New Management Defendants covered up the problems caused by the Old Management Defendants, thereby further misleading investors. For example, on May 9, 2023, Drummond signed the Company's first quarter 2023 report (the "Q1 2023 Report")—which Defendants **admit contain materially false financial information**—and, together with Hopkins, signed a SOX certification in connection therewith, personally attesting that "***the financial statements, and other financial information included in th[e] report, fairly present[ed] in all material respects the financial condition***." ¶¶310-12. Defendants Drummond and Hopkins are liable for these false statements because they were deliberately reckless in certifying the financial statements despite their awareness of several red flags rendering them materially false.

Investors did not learn the truth until March 5, 2024, when Cutera announced it was forced to restate the Q1 2023 Report (as well as the quarterly report for the second quarter 2023 ("Q2 2023 Report")) because of inventory control problems—problems that were present and well-known

---

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-02560-JST

3

internally at the time the New Management Defendants certified the Q1 and Q2 2023 Reports.[2] Then, on March 21, 2024 (the end of the Class Period), Cutera admitted that the Company's inventory problems, primarily a glut of AviClear inventory, had forced the Company to take an $8 million charge for excess and obsolete inventory, and further admitted that elevated inventory reserves would continue because it expected a return rate of at least 50% for all AviClear devices based on the lack of usage. ¶¶423, 445-47. By the end of the Class Period, Cutera's stock had lost nearly all its value, and a year later, Cutera filed for Chapter 11 bankruptcy.

Despite this litany of facts, Defendants argue they are not liable for the billions of dollars' worth of damage they caused investors. Defendants' Motion should be denied, though, because it ignores several allegations in the SAC and improperly characterizes the SAC as a mere repackaging of the prior complaint. When looking at the actual SAC, and not Defendants' characterization of it, the SAC adequately alleges a claim of securities fraud. Indeed, the SAC adds new, particularized facts and restructures the allegations to allege with particularity exactly how **each** Individual Defendant violated the Exchange Act.

Tellingly, Defendants ignore most of the amendments to the SAC. For example, Defendants completely ignore that the SAC adds a scheme liability claim, which alleges that the Old Management Defendants engaged in a scheme that misled and injured investors. Defendants also ignore the SAC's restructuring of the allegations related to the New Management Defendants, which emphasizes that they are liable for securities fraud because they recklessly certified Cutera's (admittedly) false financial statements in the Q1 and Q2 Reports. Indeed, Defendants continue to argue that Lead Plaintiff has not stated a claim because, although those financial statements were false, the SAC's allegations "fail adequately to demonstrate Defendants' **knowledge**" of falsity, *i.e.*, scienter. MTD at 14 (emphasis added). This, however, is not the standard for alleging scienter.

Under Ninth Circuit law, scienter can be established by alleging the defendant acted with "deliberate recklessness." *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 701 (9th Cir. 2021). Here, the SAC refines Lead Plaintiff's theory to show exactly how the New Management Defendants acted

---

[2] Specifically, Hopkins and Drummond certified the Q1 2023 Report, ¶¶312-13, and Harris and Drummond certified the Q2 2023 Report. ¶¶330-31.

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-02560-JST

4

with deliberate recklessness by ignoring red flags and recklessly certifying the accuracy of Cutera's false financial statements. Most notably, before signing their certifications, these defendants knew, among other things, that Cutera had already: (i) suffered a four-week plant shutdown because of inventory control problems; (ii) fired its CEO for cause; (iii) delayed filing the Company's 2022 Annual Report; and (iv) admitted the Company had a material weakness in its inventory controls. Despite these known red flags, the New Management Defendants certified the accuracy of Cutera's financial results—results that were restated **because of the very same** inventory problems that were widespread and well-known at that time.

Defendants next argue the SAC relies solely on SOX certifications to establish scienter. Not so. Any inference derived from the false SOX certifications is complementary to the SAC's particularized allegations that the New Management Defendants were aware of, and recklessly disregarded, red flags when issuing their certifications. As this Court has held, SOX certifications can be one "part of a broader picture from which a court may, at the initial pleading stage, infer a compelling claim of scienter." *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1042-43 (N.D. Cal. 2016) (Tigar, J.). That is particularly true here, where the SAC contains particularized allegations that the New Management Defendants signed SOX certifications even though they had "not maintain[ed] an effective control environment," *id.*, and knew of red flags that caused the financial statements to be materially false. To hold that these defendants cannot be liable for certifying false financial statements in such circumstances goes against the spirit and letter of both the federal securities laws and the Sarbanes-Oxley Act ("SOX"). Since its inception, SOX has mandated that CEOs and CFOs "**be held responsible for the financial representations of their companies**" by personally certifying to their accuracy. S. Rep. No. 107-205, at 25, 31 (2002). The New Management Defendants cannot now simply shrug their collective shoulders and claim ignorance of widespread, pervasive issues that caused the inaccurate statements.

Defendants' remaining arguments fail. For falsity, the MTD attacks cherry-picked CW allegations and tries to establish a counter narrative to avoid liability. For instance, Defendants argue that Mowry's February 28, 2023 statement that "*sales reps finally pivoted back to their core capital pipeline*" in Q4 2022 (¶268) was not false or misleading because, according to Defendants, "Cutera's

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-02560-JST

5

sales team did exactly as Mr. Mowry said," *i.e.*, returned to focusing on Core Capital in Q4 2022. MTD at 12. Defendants are wrong, and their own statements during the Class Period contradict their argument. For example, on May 9, 2023, Hopkins admitted the sales team continued to focus on AviClear past Q4 2022 and into Q1 2023, stating: "AviClear deals in the fourth quarter diverted sales attention away from core capital deals" and "[t]his trend actually continued in the first quarter [2023] as the [core] capital team was directed to maintain focus on AviClear placements as a [number] one priority and as a result, fewer core capital deals were closed." ¶307. Thus, Mowry's statement was false and misleading because it led investors to believe that Cutera turned its attention back to Core Capital, when in reality, and as Hopkins admitted, Mowry continued to push for AviClear placements into 2023 for his own personal enrichment.

At bottom, the SAC's allegations create a powerful inference that the Old Management Defendants perpetrated a fraudulent scheme on the market, and the New Management Defendants were deliberately reckless in certifying Cutera's false financial results despite knowledge of accounting red flags. For the reasons discussed herein, the Court should deny the MTD.

## II.    STATEMENT OF FACTS[3]

### A.    The Old Management Defendants Perpetrated a Fraudulent Scheme

From May 2022 through April 2023, the Old Management Defendants engaged in a scheme to defraud investors. ¶¶117-20, 163. At the center of the scheme was the Acne Equity Grant, a program of incentive awards tied to the rollout of Cutera's new acne treating laser device, AviClear. ¶¶117-20. Critically, the Acne Equity Grant tied millions of dollars in payouts to the Old Management Defendants based on how many devices they could place in practitioner offices. *Id*.

As part of their scheme, the Old Management Defendants rushed to place AviClear devices in as many offices as possible, in order to trigger the Acne Equity Grant's threshold of 1,200 devices placed. ¶¶79-85. Plants personally demanded that Cutera adopt a new lease-based model to maximize

---

[3] Lead Plaintiff takes take no position on the exhibits Defendants seek to incorporate by reference (*See* Defendants' Request for Judicial Notice, ECF No. 90-28), except to the extent Defendants offer these exhibits for the truth of the matter asserted therein or to establish a counter factual narrative. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) ("it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint").

AviClear placements; and indeed, Cutera thereby frequently waived the upfront payment for these devices. ¶¶81, 122-23, 237. Meanwhile, the Old Management Defendants also cannibalized sales resources to "get all hands on deck" selling AviClear. ¶85. In so doing, however, Cutera's revenue-critical Core Capital segment suffered significant and lasting impacts. ¶¶77, 137-39. In an effort to obfuscate the scheme, Mowry made numerous false and misleading statements assuring investors everything was going according to plan regarding the AviClear rollout. ¶¶231, 247, 256, 258, 268. Nevertheless, as confirmed by several former employees, AviClear's performance was extremely poor, a fact known to the Old Management Defendants. ¶¶133-39. Moreover, the leasing model was disastrous for the Company, given that AviClear customers returned to Cutera approximately 25% to 50% of all 1,200 AviClear devices placed under that model. ¶¶343, 420.

### B.  Cutera's Inventory Controls Were a Failure

While executing their undisclosed and fraudulent scheme, the Old Management Defendants also presided over a complete collapse of the Company's inventory controls. At the outset of the Class Period, Cutera had material weaknesses in its inventory controls, which were magnified by the failed AviClear rollout. ¶97. The inadequate inventory controls caused an extended audit-related plant shutdown in January 2023 and rampant supply chain and quality control problems. ¶150. This in turn sparked the February 28, 2023 announcement that Cutera would not timely file its 2022 Annual Report due to inventory control weakness. ¶¶267-76. On April 7, 2023, Cutera finally filed its delayed 2022 Annual Report which detailed the Company's internal control issues, including a material weakness related to Cutera's inventory controls. ¶¶198-99. Days later, on April 11, 2023, the Board terminated Mowry and Plants for cause based on "suboptimal leadership." ¶¶163, 168-69, 173.

### C.  The New Management Defendants Recklessly Certified Cutera's Financial Results While Deliberately Ignoring Red Flags

In the aftermath of Plants's and Mowry's terminations, the New Management Defendants assumed their respective corporate offices when inventory control issues were open and notorious. Despite these unmitigated red flags demonstrating Cutera's failed inventory controls (and which caused inaccurate financial statements), the New Management Defendants deliberately ignored red flags when they recklessly certified the accuracy of Cutera's financial results. On May 9, 2023,

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-02560-JST

7

Hopkins, as interim CEO, and Drummond as interim CFO, certified first quarter 2023 results. ¶¶311-13. On August 8, 2023, Harris, acting as full-time CEO, and Drummond, as interim CFO, certified Cutera's second quarter 2023 financial results. ¶¶328-31, 334. These certifications of the accuracy of Cutera's financial statements were purportedly based on the New Management Defendants' personal review of Cutera's internal controls, including the already-disclosed inventory material weakness.

### D.   Cutera Restated Its Financial Results

On November 8, 2023, the Company announced it would restate Q1 and Q2 2023 financials due to "a significant issue with how the company has been managing inventory." ¶¶408-27. Cutera's stock plummeted approximately 42.55%. ¶421. Then, the full truth emerged on March 21, 2024, when Cutera disclosed disastrous financial results for both AviClear and its core business, and revealing that its failed inventory controls had created excessive inventory. ¶¶443-53. This news caused the stock price to drop another 30.43%, followed by an additional 10.63% drop the next trading day. ¶452. Finally, the Company declared bankruptcy on March 5, 2025.

## III.   ARGUMENT

### A.   Legal Standard

In a motion to dismiss a § 10(b) action, courts must consider the complaint in its entirety and accept all allegations as true. *See Tellabs Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). Courts should deny the motion to dismiss "unless it appears beyond a doubt that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief." *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 931 (9th Cir. 2003). Indeed, "so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings[.]" *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008).

### B.   The SAC Adequately Alleges Scheme Liability

Although Defendants attempt to portray the SAC as a mere repackaging of the AC, Defendants completely ignore that the SAC adds a scheme liability claim under Rule 10b-5(a) and (c).[4]

---

[4] For example, the SAC expressly captions Section V as "False and Misleading Statements and *Schemes to Defraud*," SAC at p. 62 (emphasis added), and includes as a common question "whether

Footnote continued on next page

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-02560-JST

8

Specifically, the SAC alleges that the Old Management Defendants, Mowry, Seth, and Plants, engaged in deceptive and manipulative conduct while also making false and misleading statements to investors that concealed their fraudulent scheme.

To adequately allege a scheme under Rule 10b-5(a) and (c), a plaintiff must plead that the defendant "engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006), *vacated on other grounds*, 519 F.3d 1041 (9th Cir. 2008). Courts have recognized that given "the exact mechanism of the scheme is likely to be unknown to the plaintiffs, allegations of the nature, purpose, and effect of the fraudulent conduct and the roles of the defendants are sufficient for alleging participation." *Borteanu v. Nikola Corp.*, 2023 WL 11017679, at *18 (D. Ariz. 2023). In other words, a plaintiff must allege the participant "committed a deceptive or manipulative act in furtherance of the alleged scheme." *York Cnty. ex. Rel. Cnty. of York Ret. Fund v. HP*, 738 F. Supp. 3d 1182, 1206 (N.D. Cal. 2024). As this Court has held, it is permissible to allege "a fraudulent scheme based upon misrepresentations or omissions," where, as here "the scheme also encompasses conduct beyond those misrepresentations or omissions." *SEC v. Bardman*, 216 F. Supp. 3d 1041, 1056–57 (N.D. Cal. 2016) (Tigar, J.).

Here, the Old Management Defendants' fraudulent scheme involved lining their own pockets through the Acne Equity Grant at the expense of shareholders' and the Company's best interests. Mowry, Plants, and Seth pushed the rollout of AviClear and diverted critical resources away from Cutera's revenue generating business for the purpose of placing as many AviClear devices as possible in the first year. Indeed, the Old Management Defendants rushed to get AviClear to market because the Acne Equity Grant awarded them bonus compensation if they placed the first AviClear device by April 2022. ¶522. But according to CW 7, Defendants cut corners with testing to roll out the product quickly, which caused AviClear to have a high failure rate when it was launched. ¶127.

---

Defendants engaged in a scheme to defraud investors." ¶544. Moreover, the First Claim for Relief clearly alleges that the Individual Defendants "carried out a plan, scheme, and course of conduct" that violated Rule 10b-5 in that they "(a) employed devices, schemes and artifices to defraud;. . . . and/or (c) engaged in acts, practices and a course of conduct that operated as a fraud and deceit upon purchasers of Cutera common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder." ¶¶551-52, 554.

Next, because performance compensation was tied to device placements between April 2022 and April 2023 (¶521), the Old Management Defendants chose a lease-based model which allowed them to place devices quickly, often for free, even though so doing would not necessarily generate revenue for Cutera. Indeed, according to CW 1, Plants demanded—in the self-serving manner that ultimately led the Board to fire him for cause—that Cutera use a lease-based model to place AviClear into doctors' offices **quickly**, *i.e.* in time to trigger the Acne Equity Grant. ¶81. Moreover, to place AviClear devices within the first year, the Old Management Defendants diverted critical resources away from Core Capital, the revenue generating segment of Cutera's business. ¶¶77, 137-39.

According to former Cutera employees, Mowry and Plants ordered the Company's entire salesforce to focus on placing AviClear devices within the first year despite knowing that (i) this strategy would harm Core Capital (¶¶84-85) and (ii) AviClear was not generating revenue for the Company and was significantly behind projections from the start (¶¶34-35, 249-51). For example, according to CW 1, AviClear was not meeting internal projections by the end of Q2 2022—i.e., by June 2022. ¶124. This did not improve throughout the year, even as the Old Management Defendants continued pushing to place AviClear devices. According to CW 1, internal projections for AviClear were around $20-25 million, but AviClear only generated around $6 million in revenue for all of 2022—a **76-percent decline** from projections. *Id.*

But rather than truthfully disclose the significant problems Cutera faced with the AviClear rollout, the Old Management Defendants issued affirmatively false and misleading statements that obscured their fraudulent scheme and misled investors into believing the AviClear launch was a success. For example, the Old Management Defendants told investors that the AviClear leasing model was "***perfectly align[ed] with the goals and objectives of the company***" (¶231) and described the launch as a resounding success (*see, e.g.*, ¶¶247, 256, 258). Then, after the truth was partially revealed on January 9, 2023—when Cutera disclosed disappointing revenue and admitted management took their eye off the ball on the Core Capital business (¶¶354-59)—Defendants falsely told investors that they diverted resources away from Core Capital only because of the purportedly "***strong underlying interest in AviClear . . . that occupied [Cutera's] sales team***." ¶268.

In reality, though, the sales force was not focused on AviClear because of strong demand for the new product, but because the Old Management Defendants had directly told them to focus on AviClear placements as part of their scheme. Moreover, CW accounts establish that many offices did or tried to send AviClear back, a fact which Defendant Mowry was aware of based on his participation in weekly AviClear launch meetings. ¶¶240-45.

These actions, intentionally taken by the Old Management Defendants, are sufficient to establish their liability under Rule 10b-5(a) and (c). Defendants' scheme deceived investors into thinking AviClear was successful, when its performance was abysmal and the scheme's deceptive acts had significantly harmed Cutera's core business even though it personally enriched the Old Management Defendants. Indeed, the fact that Cutera fired both Plants and Mowry **for cause** because of "suboptimal leadership" and because Plants was "far more interested in his own personal enrichment," all but concedes the scheme. ¶¶169, 173. Therefore, the SAC adequately alleges scheme liability for the Old Management Defendants. *See, e.g.*, *In re Seagate Tech. Holdings PLC Sec. Litig.*, 2025 WL 1744505, at *10 (N.D. Cal. 2025) (scheme upheld based on allegations defendants "downplayed or obscured" unsustainable sales practices); *SEC v. Richman*, 2021 WL 5113168, at *8 (N.D. Cal. 2021) (sufficient deceptive act for scheme claims where defendants "misle[d] . . . investors about the strength and sustainability of the company's business model when they allegedly knew that the walls were closing in around them").

## C.    The SAC Sufficiently Pleads Materially False and Misleading Statements

The SAC also adequately alleges securities fraud under Rule 10b-5(b), which prohibits a person from making "any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 CFR § 240.10b-5. "A statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017).

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-02560-JST

11

## 1. Defendants Concede the Q1 2023 and Q2 2023 Reports Were False

Defendants concede that the Company's financial statements in their quarterly reports for the first and second quarters of 2023 (the "Q1 2023 Report" and "Q2 2023 Report") were false and misleading, MTD at 6, and thus, Lead Plaintiff has adequately alleged falsity as to the statements in ¶¶310-11 and ¶¶328-29. Moreover, as Cutera admitted, the financial statements in these quarterly reports were false and had to be restated **because of** a material weakness in the Company's inventory controls—problems that were present **before** the Q1 2023 and Q2 2023 Reports.

Indeed, in Cutera's 2022 Annual Report, filed on April 12, 2023 (a month before filing the Q1 2023 Report on May 9, 2023), Cutera admitted it had identified an "inventory-related material weakness." ¶416. This was the same problem that caused the restatement. *See* ¶430 (the restated Q1 2023 and Q2 2023 Reports attributed the need for restatement to "an accounting error identified by the physical inventory count, there was a shortfall of inventory relative to the Company's system of record"). Despite the presence of a material weakness at that time (and which ultimately caused the financial statements to be inaccurate), Drummond signed the Q1 2023 and Q2 2023 Reports, and thus, is liable as the maker of those statements. *See infra* Section III.E.2 (Drummond's scienter).

## 2. New Management Defendants' SOX Certifications in Connection with the False Quarterly Reports Were Also False

In connection with Cutera's concededly false financial statements in ¶¶310-11 and ¶¶328-29, the New Management Defendants, falsely certified that "***th[os]e financial statements, and other financial information included in th[ose] report[s], fairly present in all material respects the financial condition, results of operations and cash flows of the [Company]***." ¶¶312, 330. Indeed, Defendants concede those financial statements did not fairly present Cutera's financial condition.

Despite certifying false financial statements, however, Defendants argue they are not liable because the SAC does not allege they **knew** the financial figures were wrong. MTD at 14. Defendants are wrong and misstate the law. As the Ninth Circuit has held, to successfully plead falsity of SOX certifications, like those here, a plaintiff must allege "the person signing the certification was [at minimum] severely reckless in certifying the accuracy of the financial statements." *Glazer Cap. Mgmt., L.P. v. Magistri*, 549 F.3d 736, 747 (9th Cir. 2008). As applied, the "failure to maintain an

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-02560-JST

12

effective control environment, and [defendants'] attestations to the contrary," establish liability where a plaintiff alleges defendants were "aware of matters relevant to their certifications or recklessly failed to make themselves aware." *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1027–28 (N.D. Cal. 2020) (SOX certifications false where later discovery of material errors in financial reporting).

For the reasons discussed herein (and *infra* Section III.D), Lead Plaintiff has adequately alleged the New Management Defendants recklessly disregarded matters relevant to their certifications, and thus, are liable for certifying false financial statements and misleading investors.[5]

**(a)    New Management Defendants Knew of Red Flags**

The New Management Defendants were aware of several red flags that the Company's financial statements were inaccurate. First and foremost, leading up to the Q1 2023 Report, Cutera was suffering from a crisis related to its inadequate inventory controls. Indeed, the inventory control deficiencies caused an extended plant shutdown in January 2023. ¶150. Then, on February 28, 2023, Cutera publicly disclosed it would not timely file its annual report because "the Company has identified . . . material weaknesses in its internal control over financial reporting related to . . . ineffective inventory count controls." ¶151. Thereafter, the Company announced on March 16, 2023 that it would not meet the extended deadline for filing its 2022 annual report." ¶158. Making matters worse, on March 24, 2023, Cutera announced it received a notice of delisting from the NASDAQ for failing to timely file its annual report. ¶161.

Cutera finally filed its 2022 Annual Report on April 7, 2023, and the Company publicly disclosed multiple material weaknesses, including inventory control deficiencies. ¶199. Specifically, these deficient inventory controls "related to the completeness, existence, and cut-off of inventories held at third parties, inventories held by sales personnel, and inventories in transit …." *Id.* Four days later, the Cutera Board announced the termination of Plants and Mowry for cause. ¶¶163-64. Then, on May 9, 2023, Defendants publicly revealed that Cutera had experienced a four-week, extended plant shutdown in January 2023 due to difficulties performing the year-end physical inventory count.

---

[5] Defendants incorrectly argue the SAC merely "speculat[es]" that the New Management Defendants "did not make reasonable inquiries" as to the accuracy of the financial statements. MTD at 14. As explained below, the SAC highlights the New Management Defendants ignored red flags that made certifying the false financial statements deliberately reckless under the federal securities laws.

¶175. CWs confirmed this shutdown was tied to inventory count inaccuracies in Cutera's ERP systems, which was one of the main causes of the later restatement. ¶¶175-77.

Accordingly, the New Management Defendants assumed office in crisis and at a time when red flags were well known both internally and externally. Yet, on May 9, 2023, Hopkins, as interim CEO, and Drummond, as interim CFO, disregarded the red flags and blindly signed the Q1 2023 Certifications, falsely assuring investors as to the accuracy of financial statements (that were later restated). ¶¶311-13. This was, at a minimum, severely and deliberately reckless given the abundance of red flags related to inventory deficiencies. *See Seagate*, 2025 WL 1744505, at *7–8 (SOX certification to financial reporting was false because signatories "had allegedly already become aware that there were reasons for concern").

Moreover, the New Management Defendants were not completely new to Cutera, but rather, had been in other positions at the Company that gave them unique insight into the Company's mounting internal problems. Hopkins, for example, was a member of the Board of Directors that terminated Plants and Mowry for cause and expressly blamed Mowry for the delayed 10-K filing. ¶¶163, 168. Thus, she was in a position to know more than most of the Company's crumbling infrastructure and dysfunction. Similarly, Drummond previously served as the Corporate Controller and took over as interim CFO before signing the Q1 2023 Certification and made statements regarding Cutera's quarterly financial results. ¶312.

Finally, Cutera's admissions upon announcement of the restatement further establish that Cutera's inventory controls were deficient when Hopkins and Drummond certified the Q1 2023 results (¶¶312-113) and Harris and Drummond certified the Q2 2023 results (¶¶330-31). For instance, on November 8, 2023, Cutera's Form 8-K stated that the inventory "variance began to accumulate prior to the third quarter." ¶409. That same day, Harris stated there was "a significant issue with how the company has been managing inventory." ¶417. Drummond similarly attributed problems to the Company's ERP system, "whereby returns were ending up being doubled up in value." ¶416.

### (b)    CWs Establish Inventory Problems Were Longstanding

Corroborative CW allegations further establish that the New Management Defendants recklessly disregarded widespread inventory problems, shortages, and inaccuracies well before they

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-02560-JST

14

certified the false financials. ¶¶282, 284, 288, 290-94, 297-98, 300-05. For example, before Hopkins and Drummond certified the false statements in the Q1 2023 Report, they worked at Cutera and personally witnessed a four-week plant shutdown caused by a physical inventory count, which uncovered that the Company had a material weakness in inventory controls (which it publicly admitted even before the Q1 2023 Report). *See infra* at Section II.B-C.

Moreover, the inventory control deficiencies were present well before the January 2023 plant shutdown. For example, CW 6 alleges that even before the plant shutdown, Cutera management had zero visibility into how many parts it had left in its inventory, and the physical count showed that Cutera had much less inventory on hand than reporting in Company databases because the ERP system was not accurate. ¶¶292-93. Similarly, CW 5 explained that in late 2022, the inventory control problems were so severe they caused Cutera to stop shipping orders to customers. ¶295. Finally, CW 8 explains that the ERP system did not properly account for the cost of parts, orders were not fulfilled because the ERP system failed to process the requests, and parts used by engineers would still appear in the ERP system as available (even though they were not). ¶¶300-05.

Although Defendants attack the credibility of cherry-picked CW allegations, they ignore the holistic and corroborative accounts detailing a material deficiency in Cutera's inventory control processes. MTD at 13-14. The corroborative nature of the CWs establishes the reliability of their allegations regarding the pervasiveness and openness of the inventory problems throughout the Class Period. *See Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 772 (9th Cir. 2023) (crediting allegations where there was "consistency between the CW's statements" and where CWs told "a reasonably plausible story about [the company's] state of affairs").

### 3.     Old Management Defendants' Statements Related to AviClear and Cutera's Business Were False

Before the New Management Defendants took over and recklessly certified Cutera's false financial documents, the Old Management Defendants continuously misled investors about the success of AviClear and downplayed any concerns about Cutera's Core Capital business.

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-02560-JST

15

### (a)    The Launch of AviClear and Customer Reception

From the start of the Class Period, Mowry repeatedly touted the AviClear launch as a massive success, all while failing to disclose materially adverse information related thereto, including: (i) touting its launch as an unequivocal "***success***" (¶¶247, 256); (ii) stating that "***physician feedback h[ad] been phenomenal***" (¶258); and (iii) claiming the salesforce was focused on AviClear because the "***strong underlying interest in AviClear quickly converted into customer demand***" (¶268).

Mowry's statements, however, were false and misleading at the time. According to several CWs, the AviClear rollout was neither a success nor well-received throughout 2022. ¶¶240-44, 249-54, 275. For instance, AviClear was far from meeting projections as early as the second quarter 2022, generating a return of $3 million on a $75 million investment, which was frequently discussed among senior management, including Seth. ¶¶250-54. CWs also indicate that the AviClear rollout was plagued by poor service, including long delivery times, and customer pushback regarding treatment costs (not covered by insurance) and efficacy. ¶240-44. CW 1 even stated that Mowry and Seth knew about concerns regarding the AviClear launch in the first quarter of 2023. ¶275.

Moreover, Mowry's statements touting the success of the AviClear launch were proven to be materially false and misleading by Cutera's Board of Directors, itself, who fired Mowry for cause on April 11, 2023 because he "had not effectively executed the limited commercial rollout of our AviClear solution." ¶168. This later admission adds significant support to the reliability of the CW allegations that the AviClear rollout was a failure from the start and throughout all of 2022 (when Mowry was making his false and misleading statements). Indeed, as Cutera would later reveal, approximately 25% (and as much as half) of all AviClear devices that were placed under the leasing model were ultimately returned to Cutera. ¶¶343, 420.

In seeking to rebut falsity, however, Defendants simply argue that Mowry's statement that Cutera had successfully launched AviClear was actually true. MTD at 8-9. This argument, however, goes directly against the allegations in the SAC and Defendants' own admissions that the AviClear launch was not a success. But even setting aside the absurdity of their argument, Defendants' position finds no support in the case law. Courts throughout the Ninth Circuit and elsewhere have consistently (and uncontroversially) held that even half-truths are actionable if they omit material information. *See*

*Forescout Techs.*, 63 F.4th at 780 (half-truth actionable when omitting material information). Indeed, statements are actionably false and misleading if they gave investors an "impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008). Here, the SAC alleges that by affirmatively "tout[ing] positive information to the market" about AviClear and customer demand, Mowry was required to "do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information." *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705–06 (9th Cir. 2016). Mowry repeatedly touted the AviClear launch and demand without disclosing that: (i) many customers did not use the devices (i.e., poor utilization rates) and tried to return them (¶¶133, 245, 251); (ii) AviClear had a high failure rate (¶127); and (iii) many customers accepted the AviClear device only because the Company's sales teams gave them the device for free (¶¶125-26, 133). Therefore, Mowry's statements touting the AviClear Launch, its demand, and the physician feedback (*see* ¶¶247, 256, 258, 268) are actionably false and misleading.

### (b)    Core Capital Performance & Allocation of Sales Personnel

The Old Management Defendants also misled investors about Cutera's Core Capital business, which was the cash-generating portion of the business. Unbeknownst to investors, during the Class Period, Mowry and Plants diverted sales resources *en masse* from Cutera's Core Capital business to boost AviClear device placements, which had a deleterious effect on the Core Capital business. Mowry concealed these poor results on November 3, 2022 by stating "***practice performance indicators … continue to track with prior quarter rates instilling confidence in the core capital equipment and consumable run rates as we bring in the full year results***." ¶258. Mowry's assurances were proven false mere weeks later on January 9, 2023, when Cutera revealed that Core Capital results were disastrous and admitted that Cutera "took its eye off the ball on the core business as it was pushing [AviClear]." ¶¶146-47.

Despite this admission, the Old Management Defendants continued misleading investors. On February 28, 2023, although Cutera partially revealed the truth when they disclosed disastrous Core Capital results, Mowry continued misleading investors by claiming salespeople had pivoted back to Core Capital. Specifically, Mowry attributed Core Capital's disappointing results to the diversion of

sales resources to AviClear, but he falsely assured investors that "***sales reps [had] pivoted back to their core capital pipeline***," after "***strong underlying interest in AviClear quickly converted into customer demand that occupied our sales team throughout November and most of December***." ¶268. Mowry's statement was false and misleading because it led investors to believe that strong demand for AviClear caused sales reps to focus on AviClear—obscuring from investors that the Old Management Defendants' fraudulent scheme is what caused sales reps to focus on AviClear. According to CW 2, Defendants intentionally diverted resources away from the core capital reps haphazardly to get all hands-on deck selling AviClear, despite the fact that this strategy hurt Core Capital sales. ¶265.

Defendants argue Mowry's statement was neither false nor misleading because Cutera's sales team did in fact pivot back to Core Capital by the end of 2022. MTD at 12. This argument is not only wrong, but arguably, disingenuous. Indeed, Defendants' argument is belied by their own admissions during the Class Period. On May 9, 2023, Hopkins admitted the sales team continued focusing on AviClear into the first quarter of 2023, stating: "AviClear deals in the fourth quarter diverted sales attention away from core capital deals" and "[t]his trend actually continued in the first quarter [2023] as the capital team was directed to maintain focus on AviClear placements as a [number] one priority and as a result, fewer core capital deals were closed." ¶307.

Therefore, the CW allegations reliably establish falsity at the time of Mowry's statement on February 28, 2023, especially since they are corroborated by Defendants' later admissions. *See Constr. Workers Pension Tr. Fun – Lake Cnty. v. Genoptix, Inc.*, 2013 WL 12123841, at *6 (S.D. Cal. 2013) (crediting CW allegations when defendants' later admissions corroborate the same facts). Defendants' MTD arguments at best raise a factual dispute inappropriate for resolution on a motion to dismiss. *See Khoja*, 899 F.3d at 1014 ("[C]ourts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage").

### (c)   The MTD's Puffery Defense Fails

Finally, Defendants argue the Old Management Defendants' statements about AviClear and Core Capital are immaterial puffery. MTD at 15. Not so. Past tense statements regarding AviClear's success (¶¶247, 256), demand (¶268), customer feedback (¶258), Core Capital's present results (*id.*),

and sales resources (¶268) are not puffery. *See, e.g.*, *Rodriguez v. Gigamon Inc.*, 325 F. Supp. 3d 1041, 1055 (N.D. Cal. 2018) (statements regarding quantifiable aspects of business not puffery); *Zaidi v. Adamas Pharms., Inc.*, 650 F. Supp. 3d 848, 858 (N.D. Cal. 2023) (statement regarding customer feedback to medical treatment not puffery); *In re SolarEdge Techs., Sec. Litig.*, 2024 WL 4979296, at *10 (S.D.N.Y. 2024) (statement attributing inventory levels to demand not puffery).

Indeed, Defendants try to analogize this case to *Sneed v. AcelRx Pharms, Inc.*, 2023 WL 4412164, at *8 (N.D. Cal. 2012), in which the court held that defendants' statement that a new drug "launch was progressing well" was inactionable puffery. MTD at 15. Here, however, Mowry bragged about verifiable developments that ostensibly occurred sometime in the past, namely that Cutera already had "***achieved the successful launch of AviClear***." *Id*. There is a chasmic divide between stating a business objective is "progressing well"—a vague, forward-looking statement—versus having "***achieved***" a successful launch—a concrete paste tense statement. Moreover, even "general statements of optimism, when taken in context" such as Mowry's statement regarding customer feedback, are actionable if they "address specific aspects of a company's operation that the speaker knows to be performing poorly." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017). Here, Mowry touted "***phenomenal***" "***physician feedback***," despite poor utilization and a high failure rate (due to the rushed rollout). *See, e.g.*, ¶¶248-54, 258, 264.

### D.    The SAC Sufficiently Pleads Scienter

A complaint sufficiently pleads scienter when it alleges facts supporting a strong inference that defendants intended to deceive or were deliberately reckless "as to the possibility of misleading investors." *Berson*, 527 F.3d at 987. Deliberate recklessness is "an extreme departure from the standards of ordinary care, which presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the actor must have been aware of it." *Alphabet*, 1 F.4th at 701 (emphasis in original). The key inquiry is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter[.]" *Tellabs, Inc.*, 551 U.S. at 310. A strong inference of scienter "need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the most plausible of competing inferences." *Id*. at 324. Under this "holistic" approach, courts "consider the totality of

circumstances" and "need not close their eyes to circumstances that are probative of scienter." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

### 1.   The Old Management Defendants

The SAC has sufficiently alleged scienter as to the Old Management Defendants' scheme to defraud investors and their false and misleading statements. Under the holistic review standard, the SAC's allegations—including the Acne Equity Grant, CW statements, Plants's and Mowry's firings for cause, Seth's voluntary departure shortly thereafter, Mowry's Class Period statements—create a strong inference of scienter.

### (a)   The Acne Equity Grant

The Acne Equity Grant itself supports an inference of scienter. Executive compensation plans support an inference of scienter if allegations demonstrate "how intimately the bonuses were tied to the company's financials." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1004 (9th Cir. 2009); *see also Am. W. Holding Corp.*, 320 F.3d at 944 ("executive bonuses [] based principally on the company's financial performance" support strong inference of scienter). Here, the Acne Equity Grant is evidence of scienter, particularly for the Old Management Defendants' fraudulent scheme, because its achievement milestones for the first year were linked to the rollout and placement of AviClear devices, which incentivized Plants, Mowry, and Seth to devise their scheme to: (i) place as many AviClear devices as possible (¶¶79-85) despite growing returns and customer dissatisfaction (¶¶240-45); (ii) cannibalize sales resources to "get all hands on deck" selling AviClear (¶85); and (iii) false and misleading statements assuring investors everything was going according to plan regarding the AviClear rollout (¶¶231, 247, 256, 258, 268).[6] These allegations contribute to a strong inference of scienter. *See Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 603 (N.D. Cal. 2019) (defendants' compensation structure supported scienter when correlated to company's financial performance); *Huang v. Higgins*, 2019 WL 1245136, at *13 (N.D. Cal. 2019) (financial

---

[6] Defendants argue that the Acne Equity Grant is not relevant to scienter because some of the financial incentives required customers to use AviClear. MTD at 21. This, however, ignores that the timeframe for those milestones was 2-3 years, whereas the first year focused on device placements. ¶¶118-20. Thus, the Old Management Defendants did not worry about utilization or revenue until much later. ¶¶118-20. Indeed, the Board fired these defendants before then (because of their utter failure of the AviClear rollout).

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-02560-JST

20

motives part of scienter analysis "because the [complaint] adequately alleges a link between Defendants' compensation and specific corporate objectives"); *In re SVB Fin. Grp. Sec. Litig.*, 2025 WL 1676800, at *13 (N.D. Cal. 2025) (scienter where "Defendants had financial motivation to conceal the adverse information that they ultimately withheld").

### (b)    The CW Allegations

Under Ninth Circuit law, CW allegations are credible when the complaint: (1) describes the CWs "with sufficient particularity to establish their reliability and personal knowledge;" and (2) the testimony of the CWs are "indicative of scienter." *See Zucco Partners*, 552 F.3d at 995. That is precisely what the SAC does, describing each CW's job description, responsibilities, employment timeframes, and details such as specific meetings both the CWs and Defendants attended—in other words, the basis for the CW's knowledge. ¶¶67-74.

The SAC's CW accounts establish that no one at Cutera could argue with Plants regarding the leasing model, and that numerous people urged Mowry that it was not working. ¶235. CWs establish that Plants and Mowry were determined to place as many devices "by hook or by crook" as the milestone was not based on revenue—ordering sales personnel to focus on AviClear to the detriment of Core Capital. ¶¶236, 252. CWs establish that Plants moved from the Board into a C-suite role in order to profit from the Acne Equity Grant. ¶238. These CW allegations are corroborative with each other and the allegations throughout and tell a plausible and coherent narrative. *See Forescout Techs.*, 63 F.4th at 772 (crediting allegations where there was "consistency between the [CW's] statements" and where CWs told "a reasonably plausible story about [the company's] state of affairs").

CW accounts also support an inference the Old Management Defendants personally diverted sales personnel from Core Capital to AviClear, and that such tactics caused negative financial impacts to Core Capital. For instance, according to CW 2, Plants and Mowry intentionally undercut Cutera's salesforce and haphazardly diverted resources away from the core capital equipment reps to get all hands on deck selling AviClear, despite the fact that this strategy hurt the selling prospects for Core Capital. ¶265. Indeed, according to CW 1, AviClear generated only about $6 million in revenue for all of 2022—a 76-percent decline from projections of around $20-25 million. ¶124. CW 1 confirmed that the directive to move away from Cutera's core business to focus on AviClear came directly from

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-02560-JST

21

Mowry and Plants and was discussed openly in many AviClear meetings. ¶263. Likewise, CW accounts establish that as early as the second quarter of 2022, and definitely by the third, Mowry learned from multiple individuals in Cutera management that the AviClear launch was not a success. ¶¶240-44, 249-54, 275. CW accounts further establish that Mowry was personally responsible for the diversion of sales resources to AviClear despite it being a detriment to Core Capital. ¶¶236, 252.

### (c)    The Departures of Plants, Mowry, and Seth

The suspiciously timed departures of all the Old Management Defendants support an inference of scienter. *See Bielousov v. GoPro, Inc.*, 2017 WL 3168522, at \*7 (N.D. Cal. 2017) (scienter "bolstered" by defendant's "resignation"). As outlined above, the Board fired Plants and Mowry for cause on April 11, 2023, immediately following Cutera's announcement that it would delay filing its Form 10-K due to material weakness in its internal controls. Then, less than a month later, Seth quietly stepped down on May 9, 2023, the same day Cutera disclosed worsening financial results and the extended plant shutdown. ¶¶381-89.  Cutera Board admitted that it fired (i) Plants because he "was far more interested in his own personal enrichment than in leading the Company for the benefit of all stakeholders" (¶169), and (ii) Mowry because he "had not effectively executed the limited commercial rollout of our AviClear solution" (¶168).

These admissions directly reveal the Old Management Defendants' scheme and contradict Mowry's statements, and therefore, strongly support an inference of scienter. *See Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1148 (N.D. Cal. 2017) (resignations or terminations "constitute evidence of scienter" when "accompanied by additional evidence of [D]efendant[s'] wrongdoing").

### (d)    Class Period Statements Regarding AviClear and Core Capital

The content and context of Mowry's statements themselves support an inference of scienter given he "specifically addressed" misstated facts. *Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014); *see also Roberti v. OSI Sys., Inc.*, 2015 WL 1985562, at \*12 (C.D. Cal. 2015) (scienter when defendants' statements "touched on the specific issue" making representations false). Throughout the Class Period, Mowry directly addressed the AviClear launch's  success, demand for the product, the ostensible reasons Defendants diverted salespeople from Core Capital to AviClear, and bragged that the AviClear leasing model "***serve[d] to perfectly align the goals and objectives of the company with***

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-02560-JST

22

*those of the practice over the long term*" (¶231). *See* ¶¶247, 256, 258, 268. In other words, the undeniable reality that Mowry spoke often and definitively about these issues strongly infers either that he knew of what he spoke, or was deliberately reckless in not determining the truth.[7]

### 2. The New Management Defendants

The SAC has sufficiently alleged scienter as to: (i) Hopkins's and Drummond's Q1 2023 certifications (¶¶312-13); (ii) Drummond's statements regarding Q1 2023 financial results (¶¶310-11); (iii) Harris's and Drummond's Q2 2023 certifications (¶¶330-31); and (iv) Drummond's statements regarding Q2 2023 financial results (¶¶328-29). The New Management Defendants were at least deliberately reckless in reporting and certifying Cutera's financial results in light of: (i) publicly disclosed red flags prior to their appointments; (ii) certifying Cutera's financial results as unaffected by those red flags; and (iii) the fact those same certified financial statements were restated because of those red flags. *See supra* Section III.C.2.

Indeed, courts throughout the Ninth Circuit—including this Court—have held that signing SOX certifications in similar circumstances can infer scienter. *See Thomas*, 167 F.Supp.3d at 1043 (SOX certifications can be one "part of a broader picture from which a court may, at the initial pleading stage, infer a compelling claim of scienter. This is squarely in line with applicable case law") (Tigar, J.) (citing *America W.*, 320 F.3d at 944–45). As applied, certifications are probative of scienter if the signatory "had reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other 'red flags,' that the financial statements contained material misstatements or omissions." *Stocke v. Shuffle Master, Inc.*, 615 F. Supp. 2d 1180, 1190 (D. Nev. 2009); *see also Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 247–48 (S.D.N.Y. 2012) (same); *In re: Ebix, Inc. Sec. Litig.*, 898 F. Supp. 2d 1325, 1345 n.9 (N.D. Ga. 2012) (same).

As explained above, due to several red flags, Defendants knew or were deliberately reckless in not knowing that the Company's Q1 and Q2 2023 Reports contained material misstatements. *See*

---

[7] Moreover, the Company's later admission that Defendant Mowry was fired because of the botched AviClear rollout further lends to this inference. *See Middlesex Ret. Sys. v. Quest Software, Inc.*, 527 F. Supp. 2d 1164, 1189 (C.D. Cal. 2007) ("a later statement may suggest that a defendant had . . . knowledge of the falsity of his statement, if the later statement directly contradicts or is inconsistent with the earlier statement").

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-02560-JST

23

*supra* Section III(C)(2). Indeed, the New Management Defendants assumed their positions in a time of crisis and emergency restructuring. Specifically, immediately before they took on their new roles, Cutera: (i) experienced a month-long plant shutdown due to inaccurate inventory counts (¶175);[8] (ii) disclosed material control weaknesses after failing to timely file its 2022 Annual Report (¶¶151, 158, 161, 199); (iii) fired its CEO and ousted its most active Director and Chairman (¶¶163-64), and its CFO suddenly resigned (¶172); and (iv) continued to report disappointing financial results due to "self-inflicted" "execution issues" (¶173).

In the face of these red flags, the New Management Defendants recklessly certified Cutera's financial statements. ¶¶312-13. Despite Defendants' protestations, however, the New Management Defendants do not get the benefit of the doubt because they were "new." Critically, at the time of the Q1 2023 financial statements, Hopkins was interim CEO,[9] and Drummond was interim CFO. ¶¶311-13. At the time the second quarter results were disclosed and certified, Harris served as full-time CEO. ¶¶328-31, 334.

The Sarbanes-Oxley Act was established to deter corporate wrongdoing and instill confidence in public companies' financial reporting. Since its inception, SOX has enshrined the sanctity of accurate financial reporting within the U.S. capital markets, mandating that CEOs and CFOs "**be held responsible for the financial representations of their companies**" by personally certifying to their accuracy. S. Rep. No. 107-205, at 25, 31 (2002). The New Management Defendants, however, seem to argue that they cannot be held accountable for certifying false statements simply because they were new. This cannot be. Indeed, they took on high-powered executive positions, with mandated SEC disclosure requirements, and therefore cannot simply shrug their collective shoulders and claim ignorance of widespread, pervasive issues that caused the inaccurate statements. To credit such a

---

[8] CWs have confirmed that Cutera's extended plant shutdown was tied to inventory count inaccuracies in Cutera's ERP systems, which was one of the main causes of the later restatement. ¶¶175-77.

[9] CWs have stated that Defendant Hopkins was specifically aware of inventory control issues. For instance, CW 1 stated that when Sheila Hopkins became Interim CEO, she also refused to take steps to correct the supply chain problems and even gave Pinapati a retainer bonus to stay with Cutera longer. ¶479. In addition, as a member of the Cutera Board, Hopkins was aware of the poor performance of AviClear during its rollout. For example, CW 1 explained that the Board saw the same numbers as management and the company employees, and yet they did not raise alarm bells when they saw that the numbers were "way off." ¶480.

nakedly self-serving exculpatory argument would be to go against the spirit and letter of both the federal securities laws and the Sarbanes-Oxley Act.

Instead, by signing certifications, the New Management Defendants **certified**—based on their purported personal review of Cutera's internal controls—that the Company's internal controls over financial reporting and disclosure controls and procedures were effective, evidencing their access and review of Cutera's financial data as well as the materially false and misleading statements set forth above. *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 (9th Cir. 2000) ("when a corporate officer signs a document on behalf of the corporation, that signature will be rendered meaningless unless the officer believes that the statements in the document are true."). However, as these Defendants would later admit, the cause of the inaccurate financial statements was the same problem that was present when they recklessly certified the statements: material inventory control weaknesses. *See, e.g.*, ¶¶210, 409, 416, 417, 448.

Taken together, the allegations in the SAC support a strong inference that the New Management Defendants acted with, at minimum, deliberate recklessness. *See Shuffle Master*, 615 F. Supp. 2d at 1191 (scienter when defendants signed certifications after implementing a remediation plan but subsequent deficiencies mandated a restatement; "there is sufficient reason to infer that Defendants acted with reckless disregard in failing to rectify its past internal deficiencies").

### E.   Control Person Claims Under Section 20(a)

The MTD solely disputes the SAC's Section 20(a) claims on the basis it fails to sufficiently plead its primary claims. MTD at 25. Thus, because the SAC "has adequately pled a primary violation of securities law, this claim survives as well." *Seagate*, 2025 WL 1744505, at *11.

### CONCLUSION

For all these reasons, Defendants' Motion should be denied in its entirety.

Dated: January 29, 2026

**LABATON KELLER SUCHAROW LLP**

By: */s/Michael P. Canty*
Michael P. Canty (*pro hac vice*)
Michael H. Rogers (*pro hac vice*)
Nicholas D. Manningham (*pro hac vice*)
140 Broadway

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-02560-JST

25

New York, NY  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email:  mcanty@labaton.com
        mrogers@labaton.com
        nmanningham@labaton.com

*Counsel for Lead Plaintiff and Lead Counsel for the Class*

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Lucas E. Gilmore (#250893)
715 Hearst Avenue, Suite 300
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: lucasg@hbsslaw.com

*Liaison Counsel for the Class*

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:23-CV-02560-JST

26

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2026, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

DATED:       January 29, 2026
             New York, New York

                                                    /s/ *Michael P. Canty*
                                                    Michael P. Canty