Brendan P. Cullen (SBN 194057)
(cullenb@sullcrom.com)
Alexis C. Holmes (SBN 321393)
(holmesa@sullcrom.com)
SULLIVAN & CROMWELL LLP
550 Hamilton Avenue
Palo Alto, California 94301
Telephone:    (650) 461-5600
Facsimile:    (650) 461-5700

*Counsel for Defendants Cutera, Inc., David H. Mowry,
Rohan Seth, J. Daniel Plants, Sheila Hopkins,
Taylor Harris, and Stuart Drummond*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE CUTERA, INC. SECURITIES LITIGATION. | Case No. 4:23-cv-02560-JST<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>The Hon. Jon S. Tigar<br>Courtroom:  6<br>Date:  April 9, 2026<br>Time:  2:00 p.m. |

# TABLE OF CONTENTS

**Page**

ARGUMENT ........................................................................................................................ 1

I.   PLAINTIFF STILL FAILS TO STATE A SECTION 10(B) CLAIM. ..........................................1

    A.   The Opposition Confirms that Plaintiff Has Abandoned Its Claim against Cutera. ........... 1

    B.   The Opposition Confirms that Plaintiff Has Not Pleaded an Actionable Misstatement or Omission as to Nearly All of the Challenged Statements. ....................... 2

        1.   SOX Certifications ..................................................................................................2

        2.   Statements Concerning AviClear and Core Capital ................................................4

    C.   The Opposition Cannot Salvage the SAC's Immaterial Statements. ................................ 7

    D.   The Opposition Confirms that the SAC Lacks Allegations Demonstrating the Requisite Strong Inference of Scienter. ............................................................................ 8

    E.   Plaintiff Has Not Pleaded a Scheme-Liability Claim. ...................................................... 14

II.  PLAINTIFF STILL FAILS TO STATE A CLAIM UNDER SECTION 20(A). ...........................15

CONCLUSION ................................................................................................................... 15

SULLIVAN & CROMWELL LLP

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Berson* v. *Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) ..............................................................................................6

*Brody* v. *Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ..............................................................................................5

*Dobina* v. *Weatherford Int'l Ltd.*,
909 F. Supp. 2d 228 (S.D.N.Y. 2012)................................................................................10

*Dong Su* v. *Henry Glob. Consulting Grp.*,
2021 WL 1240776 (C.D. Cal. Apr. 2, 2021) .....................................................................15

*In re Ebix, Inc. Sec. Litig.*,
898 F. Supp. 2d 1325 (N.D. Ga. 2012) ..............................................................................10

*Evanston Police Pension Fund* v. *McKesson Corp.*,
411 F. Supp. 3d 580 (N.D. Cal. 2019) ...............................................................................14

*Frenzel* v. *AliphCom*,
76 F. Supp. 3d 999 (N.D. Cal. 2014) ..................................................................................15

*Glazer Cap. Mgmt., L.P.* v. *Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) ...........................................................................................6, 12

*Glazer Cap. Mgmt., L.P.* v. *Magistri*,
549 F.3d 736 (9th Cir. 2008) ................................................................................................2

*In re Gritstone Bio, Inc.*,
2025 WL 2084918 (N.D. Cal. July 24, 2025).......................................................................5

*Hampton* v. *Aqua Metals, Inc.*,
2020 WL 6710096 (N.D. Cal. Nov. 16, 2020) ......................................................................7

*Inchen Huang* v. *Higgins*,
2019 WL 1245136 (N.D. Cal. Mar. 18, 2019)....................................................................13

*In re Intel Corp. Sec. Litig.*,
2023 WL 2767779 (N.D. Cal. Mar. 31, 2023)...............................................................12, 13

*Jaszczyszyn* v. *SunPower Corp.*,
2025 WL 510431 (N.D. Cal. Feb. 14, 2025) ........................................................................4

*Lowe* v. *Tandem Diabetes Care Inc.*,
2024 WL 1898473 (S.D. Cal. Apr. 30, 2024)........................................................................6

-ii-

SULLIVAN & CROMWELL LLP

*In re Metawave Commc'ns. Corp. Sec. Litig.*,
   298 F. Supp. 2d 1056 (W.D. Wash. 2003)................................................................................12

*Norfolk Cnty. Ret. Sys.* v. *Solazyme, Inc.*,
   2018 WL 3126393 (N.D. Cal. June 26, 2018) ......................................................................2, 8

*Oregon Pub. Emps. Ret. Fund* v. *Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014) ....................................................................................................7

*In re Peerless Sys. Corp. Sec. Litig.*,
   182 F. Supp. 2d 982 (S.D. Cal. 2002).......................................................................................3

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017) ...................................................................................................8

*Reese* v. *Malone*,
   747 F.3d 557 (9th Cir. 2014) ...................................................................................................10

*In re Rigel Pharms., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) ...............................................................................................5, 13

*Roberti* v. *OSI Sys. Inc.*,
   2015 WL 1985562 (C.D. Cal. Feb. 27, 2015)..........................................................................10

*Rodriguez* v. *Gigamon Inc.*,
   325 F. Supp. 3d 1041 (N.D. Cal. 2018) .....................................................................................8

*Schueneman* v. *Arena Pharm., Inc.*,
   840 F.3d 698 (9th Cir. 2016) .....................................................................................................6

*In re Seagate Technology Holdings PLC Securities Litigation*,
   2025 WL 1744505 (N.D. Cal. May 12, 2025)............................................................................4

*Shenwick* v. *Twitter, Inc.*,
   282 F. Supp. 3d 1115 (N.D. Cal. 2017) ...................................................................................13

*In re Solarcity Corp. Sec. Litig.*,
   274 F. Supp. 3d 972 (N.D. Cal. 2017) .......................................................................................7

*In re SolarEdge Techs. Sec. Litig.*,
   2024 WL 4979296 (S.D.N.Y. Dec. 4, 2024) .............................................................................8

*In re Stem, Inc. Sec. Litig.*,
   2025 WL 3675114 (N.D. Cal. Dec. 17, 2025)..........................................................................15

*Stocke* v. *Shuffle Master*,
   615 F. Supp. 2d 1180 (D. Nev. 2009)......................................................................................10

*In re SVB Fin. Grp. Sec. Litig.*,
   2025 WL 1676800 (N.D. Cal. June 13, 2025)..........................................................................14

-iii-

*Walsh* v. *Nev. Dep't of Hum. Res.*,
    471 F.3d 1033 (9th Cir. 2006) ................................................................................................2

*Wanca* v. *Super Micro Comput., Inc.*,
    2018 WL 3145649 (N.D. Cal. June 27, 2018) ......................................................................2, 3

*Zaidi* v. *Adamas Pharms., Inc.*,
    650 F. Supp. 3d 848 (N.D. Cal. 2023) ...................................................................................8

*Zucco Partners, LLC* v. *Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ...........................................................................................13, 15

Sullivan & Cromwell LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
CASE NO. 4:23-CV-02560-JST

When it dismissed the First Amended Complaint (the "FAC"), the Court gave Plaintiff an opportunity — and a detailed roadmap — to replead its securities fraud claims. As Defendants' Motion (ECF No. 90, the "Motion" or "Mot.") To Dismiss the Second Amended Complaint (the "SAC") made clear, Plaintiff largely, and in every important way, declined that opportunity. Plaintiff's Opposition (ECF No. 91, the "Opp.") does not help. The claims are still inadequately pleaded and, Plaintiff's now having had two full-dress chances to plead them, should be dismissed with prejudice.

As it did in the first round of motion-to-dismiss briefing, Plaintiff in its Opposition has again abandoned a number of its claims, including the claim against Cutera and those premised on certain of the challenged SOX certifications. Plaintiff also has abandoned its core-operations and corporate-scienter theories. What remains of the SAC allegations is still inadequate. Where the confidential witness allegations are not verbatim the same as allegations that the Court in its prior order (ECF No. 86, the "Order") already held to be inadequate to plead falsity or scienter, they are inadequate for the same reasons. And the grab bag of other allegations described (or, in the case of the research analyst report falsely attributed to Cutera, misdescribed) in the Opposition continue to fall far short of what the PSLRA, courts in this Circuit, and this Court in the Order have required to plead a securities claim.

The Opposition asserts that the SAC actually included a scheme-liability claim under Section 10b-5(a) and (c) that even the most generous reader would not have detected. Even if the Opposition were the right place to first announce this claim, it fails in any event because it simply repackages Plaintiff's (failed) 10b-5(b) misrepresentation claims.

What the SAC does plead is that Defendants made nonactionable statements about their excitement for Cutera's new AviClear product and about the Company's ability to continue to deliver strong results with its legacy Core Capital products, but Cutera failed to realize its vision, its business declined, and accounting errors were discovered. Plaintiff's attempt to turn a difficult chapter for Cutera into securities fraud fails as a matter of law. The SAC should be dismissed, this time with prejudice.

## ARGUMENT

### I.    PLAINTIFF STILL FAILS TO STATE A SECTION 10(B) CLAIM.

#### A.    The Opposition Confirms that Plaintiff Has Abandoned Its Claim against Cutera.

The Motion established (at 24-25) that Plaintiff's securities claim against Cutera was discharged in

bankruptcy. Because the Opposition does not respond to Defendants' argument, Plaintiff has conceded this claim. *See Walsh* v. *Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (plaintiff "abandoned" claim by failing to respond to defendant's motion to dismiss that claim). Accordingly, the Court should dismiss Plaintiff's claim against Cutera with prejudice. (*See* Mot. at 25; Order at 14 (dismissing with prejudice claims not addressed in opposition).)

**B.      The Opposition Confirms that Plaintiff Has Not Pleaded an Actionable Misstatement or Omission as to Nearly All of the Challenged Statements.**

**1.      SOX Certifications**

The Motion demonstrated (at 12-14) that Plaintiff failed to plead particularized facts showing that any of the challenged SOX certifications — those certifying Cutera's 2022 Form 10-K (Statements 8-10) and those certifying its first and second quarter 2023 Form 10-Qs (the "10-Qs") (Statements 15-17, 22-24) — was false or misleading.[1] The Opposition says nothing at all about Statements 8-10, 16-17, 23-24 and Plaintiff has thus abandoned its claims as to those statements. *See Walsh*, 471 F.3d at 1037; *Norfolk Cnty. Ret. Sys.* v. *Solazyme, Inc.*, 2018 WL 3126393, at *3 n.3 (N.D. Cal. June 26, 2018) (deeming alleged misstatements not addressed in plaintiff's opposition brief abandoned); (Order at 14). Plaintiff appears now only to be challenging the 10-Qs (Statements 15 and 22).

As Defendants explained, Plaintiff failed adequately to plead that these certifications were false or misleading because the SAC nowhere alleges that Defendants Drummond, Harris, and Hopkins knew that the reported financial results were false at the time they signed the accompanying certifications. (Mot. at 13-14.) Plaintiff argues that it adequately pleaded that these Defendants were, "at a minimum, severely and deliberately reckless" "given the abundance of red flags related to inventory deficiencies" that existed "well before" they certified the financials. (Opp. at 13-15.) Not remotely.[2]

_____

[1]      "Statement [_]" refers to the challenged statements set out in Appendix 1, attached to the Motion.

[2]      Plaintiff claims that "to successfully plead falsity of SOX certifications, like those here, a plaintiff must allege 'the person signing the certification was [at minimum] severely reckless in certifying the accuracy of the financial statements.'" (Opp. at 12 (quoting *Glazer Cap. Mgmt., L.P.* v. *Magistri*, 549 F.3d 736, 747 (9th Cir. 2008)).) Wrong. What Plaintiff actually describes, and the language quoted from *Magistri*, is the *scienter* pleading standard. *See Magistri*, 549 F.3d at 747 ("examin[ing] the precise interplay between the reporting requirements of [SOX] and the scienter pleading requirements of the PSLRA"). As this Court recognized, a plaintiff must "allege facts explaining why the declarants *knew* the financial reporting was false at the time it was made." (Order at 12-13 (quoting *Wanca* v. *Super Micro Comput., Inc.*, 2018 WL 3145649, at *6 (N.D. Cal. June 27, 2018) (emphasis added)).) That is because

SULLIVAN & CROMWELL LLP

The SAC allegations fall short of meeting the applicable pleading standard. The Opposition identifies no particularized allegations explaining *how or why* Defendants Drummond's, Harris's, and Hopkins's alleged knowledge of purported "red flags" regarding supposed inventory problems demonstrates that these Defendants knew that Cutera's *financial results* were false when they certified them. Indeed, the Court already held that many of these very inventory-related allegations were inadequately pleaded because they "say nothing about the awareness or knowledge of Defendants Hopkins, Drummond, and Harris concerning the unreliability of the company's financial reporting for Q1 2023 and Q2 2023 . . . as of May and August 2023." (*Compare* Order at 12, *with* SAC ¶¶ 151, 176.)

The other SAC allegations upon which Plaintiff relies suffer from the same problem. For instance, Plaintiff cites multiple confidential witness allegations to assert that Defendants Drummond, Harris, and Hopkins disregarded inventory problems before certifying false financials, but not a single one of these allegations even mentions these Defendants by name, let alone establishes that any of them knew anything about incorrect financial statements. (Opp. at 14-15 (citation omitted).) Plaintiff also points to these Defendants' roles at Cutera, which purportedly "gave them unique insight into the Company's mounting internal problems," noting, in particular, Mr. Drummond's roles as Corporate Controller and interim CFO. (*Id.* at 14.) But the Court previously held that this very same allegation "d[id] not raise the inference that [Mr. Drummond] knew that the financial figures he reported in the statements at issue were inaccurate at the time he made the statements." (*Compare* Order at 19, *and* FAC ¶ 39, *with* SAC ¶ 50.) The same is true as to the SAC's other position-based allegations cited in the Opposition (at 14, 24), not least because courts consistently hold that, without more, allegations that a defendant simply held a senior role at a company do not suffice to plead his or her knowledge about specific matters at that company. *See, e.g., In re Peerless Sys. Corp. Sec. Litig.*, 182 F. Supp. 2d 982, 993 (S.D. Cal. 2002). Finally, Plaintiff points to a few "admissions" made "upon announcement of the restatement" to assert that inventory controls were deficient when Defendants Drummond, Harris, and Hopkins certified the 10-Qs six and three months previously. (Opp. at 14.) But these post-hoc statements do not even purport to show that these Defendants (or anyone else) knew the financial results were false at the time of signing. The Court already held as much

---

"each SOX [c]ertification contains important qualifying language" that "the declarants only certified the financial reporting *to the extent of his or her knowledge on the date of execution.*" *Wanca*, 2018 WL 3145649, at *6 (emphasis added).

-3-

SULLIVAN & CROMWELL LLP

when it rejected the exact alleged "admission" by Mr. Drummond that "returns were ending up being doubled up in value." (*Compare* Order at 19, *and* FAC ¶¶ 184, 379, *with* SAC ¶ 416.) *See also Jaszczyszyn v. SunPower Corp.*, 2025 WL 510431, at *5 (N.D. Cal. Feb. 14, 2025) (fact of a company's "restatements does not bolster or even inform Plaintiff's allegations related to Defendants' knowledge" of "a weakness that would render the SOX certifications false at the time they were made"). The other "admissions" cited in the Opposition (at 14) are just as inadequate. Plaintiff points to Mr. Harris's post-hoc statement that there was "a significant issue with how the company has been managing inventory" and Cutera's statement that "the inventory 'variance began to accumulate prior to the third quarter.'" (*Id.* (quoting SAC ¶¶ 409, 417).) But these statements are even more general than the statement by Mr. Drummond that the Court previously rejected, and thus are inadequately pleaded for the same reason.

Plaintiff once again "has not pointed to any allegations that raise the inference that Defendants Hopkins, Drummond, and Harris knew about the inaccuracy or unreliability of the financial reporting [for the 10-Qs] . . . at the time they made" their certifications. (Order at 12.) Accordingly, Statements 15 and 22 still are not adequately pleaded to be false or misleading. (*See id.*)[3]

### 2.    Statements Concerning AviClear and Core Capital

The Motion (at 7-11) showed that the challenged statements about AviClear and Core Capital (Statements 1-7) were neither false nor misleading. The Opposition barely acknowledges, let alone refutes, this showing.

***Statements about AviClear.*** The Opposition does not respond to (and thus concedes) the multiple arguments that Defendants made in the Motion about Plaintiff's failure adequately to plead that Mr. Mowry's May 10, 2022 statement about AviClear's lease-based model (Statement 1; the only challenged statement added in the SAC). So Statement 1 is a goner.

The Opposition does address, among other statements, those concerning the launch of, demand for, and feedback on AviClear (Statements 2-4, 6), and asserts that these statements "misled investors

---

[3]    Plaintiff cites *In re Seagate Technology Holdings PLC Securities Litigation*, 2025 WL 1744505 (N.D. Cal. May 12, 2025), to assert that these Defendants had "reasons for concern" and thus were deliberately reckless. (Opp. at 14.) Putting aside that that is the wrong standard for pleading falsity of SOX certifications, *Seagate* is inapposite. That case involved allegedly knowing violations of a government rule prohibiting sales to a particular entity and concealment of that illegality — allegations with no analog in the SAC. *See Seagate*, 2025 WL 1744505, at *1, 6-8.

about the success of AviClear." (Opp. at 15-17.) Plaintiff argues that it has pleaded that these statements were false by pointing to confidential witness allegations and the Board's decision to fire Mr. Mowry. (*Id.* at 16-17.) Neither falsifies the challenged statements.

The confidential witness allegations on which Plaintiff continues to rely either have already been rejected by the Court as inadequately pleaded or should be rejected because they, too, are "insufficiently detailed and conclusory." (*Compare* Opp. at 16 (citing SAC ¶¶ 240, 243-44, 249, 250, 252, 254, 275), *and* FAC ¶¶ 110-11, 113-14, 116, 118, *with* Order at 15-16 (rejecting confidential witness allegations at FAC ¶¶ 110-18); *see also* Mot. at 7-11 (discussing failings of other confidential witness allegations).) Other than to declare these allegations adequate, the Opposition does not grapple at all with the pleading deficiencies identified in the Motion.

As for Mr. Mowry's departure, Plaintiff does not explain how the Board's decision to fire Mr. Mowry for "not effectively execut[ing] the limited commercial rollout" of AviClear could falsify Mr. Mowry's statement *from eight months earlier* that, "[d]uring the quarter, our team achieved the successful launch of AviClear." (SAC ¶¶ 168, 247, 256.) Nor can Plaintiff. Cutera did, in fact, launch AviClear when Mr. Mowry said it did. The fact that, in retrospect, the Board determined that Mr. Mowry did "not effectively execute[]" (*id.* ¶ 168) the subsequent rollout does not mean that Mr. Mowry's statement about having succeeded in launching AviClear was false. Plaintiff's "after-the-fact assessment" is classic (and improper) hindsight pleading and does not show that Mr. Mowry's statements were "misleading at the time they were made." *In re Gritstone Bio, Inc.*, 2025 WL 2084918, at *7 (N.D. Cal. July 24, 2025) (quoting *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012)). Plaintiff also asserts that the Board's decision to fire Mr. Mowry for "not effectively execut[ing]" the AviClear rollout "adds significant support to the reliability of the CW allegations" that describe the rollout as a "failure . . . throughout all of 2022." (Opp. at 16.) But none of this can falsify a statement (true at the time) that was made months earlier.

Finally, Plaintiff claims that "even half-truths are actionable if they omit material information." (*Id.* at 16-17.) But Plaintiff has not adequately alleged any "half-truths" either. To plead an actionable omission, Plaintiff must specify *why* such statements were false or misleading, not merely incomplete. *See Brody* v. *Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Plaintiff does not identify

-5-

any facts that were omitted and caused any statement to be false.[4]  Instead, Plaintiff relies on the same confidential witness allegations that the Court held to be inadequate.  (*Compare* Opp. at 17 (citing SAC ¶¶ 125-26, 133, 245, 251), *and* FAC ¶¶ 113, 115-16, 233, *with* Order at 15-16 (rejecting confidential witness allegations at FAC ¶¶ 110-18, 233)).)

***Statements about Core Capital and Cutera's sales force.***  Plaintiff claims that statements about Core Capital's "performance," "customer demand" for AviClear, and Cutera's "sales reps" (Statements 5-7) were false or misleading because Messrs. Mowry, Seth, and Plants "downplayed any concerns about Cutera's Core Capital business."  (Opp. at 15-18.)

With respect to Statement 5, the Motion (at 11) established that Plaintiff does not dispute the accuracy of Mr. Mowry's statement, which concerned Core Capital's strong results for the prior quarter (Q3 2022) and his hope that such results would persist through year-end 2022.  In response, Plaintiff asserts that Mr. Mowry's statement was "proven false" two months later, when Cutera "admitted" that it "took its eye off the ball on the core business as it was pushing [AviClear]."  (Opp. at 17.)  That itself is a false statement.  This purported "admission" did not come from Cutera at all — it is from a January 9, 2023 research analyst report.  (*See* SAC ¶ 147.)  Analyst statements are no more than "speculative opinion[s]" of unrelated third parties and thus "do[] not provide insight into whether Defendants' statements were false or misleading when made."  *Lowe* v. *Tandem Diabetes Care Inc.*, 2024 WL 1898473, at *10 (S.D. Cal. Apr. 30, 2024) (citation omitted).  For that reason, and those discussed in the Motion (at 11), Plaintiff still fails adequately to plead that Statement 5 was false or misleading.

As for Mr. Mowry's statements about the efforts of Cutera's sales team in Q4 2022 (Statements 6 and 7), Defendants showed that, read in context, Mr. Mowry described Cutera's prioritization of AviClear sales in November and December 2022, followed by a return to Core Capital deals before year-end.  (*See*

---

[4]     The cases cited in support of Plaintiff's omissions theory are distinguishable for the simple reason that, unlike the SAC, the complaints in those cases identified specific omissions that directly conflicted with the defendants' representations.  *See Glazer Cap. Mgmt., L.P.* v. *Forescout Techs., Inc.*, 63 F.4th 747, 778-79 (9th Cir. 2023) (statements that the company "currently expect[ed]" a merger to close were misleading where the buyer had informed the company that it was considering not closing and could not "make the numbers work"); *Schueneman* v. *Arena Pharm., Inc.*, 840 F.3d 698, 707-08 (9th Cir. 2016) (misleading for a drug company to represent that "all the animal studies" supported approval while omitting known FDA "concerns" about one study); *Berson* v. *Applied Signal Tech., Inc.*, 527 F.3d 982, 984-87 (9th Cir. 2008) (statements misleading where contracts were counted as active backlog while omitting those contracts had been halted by stop-work orders and the work "was likely to be lost forever").

-6-

Mot. at 11-12.)  Plaintiff asserts that Mr. Mowry's statement that Cutera's sales force had "pivoted back" to Core Capital is falsified by Ms. Hopkins's later May 9, 2023 remarks that, during Q1 2023, "fewer core capital deals were closed."  (Opp. at 18.)  But "fewer" does not mean "no" and even no sales would not mean that salespeople were not *trying* to sell Core Capital products after "pivot[ing] back."  Without much more, Ms. Hopkins's later remarks about disappointing Core Capital sales do not falsify Mr. Mowry's earlier statement that "sales reps [had] pivoted back to their core capital pipeline."  (SAC ¶ 268.)

Plaintiff also claims that Statements 6 and 7 were false and misleading because Mr. Mowry "led investors to believe that strong demand for AviClear caused sales reps to focus on AviClear" when, in reality, Messrs. Mowry, Plants, and Seth shifted focus away from Core Capital in an effort to earn their bonuses under the AviClear Incentive Plan.  (Opp. at 18.)  But Plaintiff cites nothing at all connecting whatever the Cutera sales team was doing with executive bonuses.  Plaintiff points to CW2's allegation that these "Defendants intentionally diverted resources away from the core capital reps haphazardly to get all hands-on deck selling AviClear, despite the fact that this strategy hurt Core Capital sales."  (*Id.* (citing SAC ¶ 265).)  It is not clear what this means, but it clearly makes no mention at all of bonuses.  Neither does the January 9, 2023 research analyst report (again, by a third party, not Cutera) nor Ms. Hopkins's May 9, 2023 remarks.  (*See id.* at 17-18.)  For these reasons, and those set out in the Motion (at 11-12), Plaintiff has not adequately pleaded that Statements 6 and 7 were false or misleading.

**C.     The Opposition Cannot Salvage the SAC's Immaterial Statements.**

The Motion (at 15) demonstrated that the alleged misstatements about AviClear and Core Capital (Statements 1-6) are indistinguishable from statements that other courts have held to be inactionable puffery.  Plaintiff's only response is to assert that there is a "chasmic divide" (!) between forward-looking optimism and concrete past-tense statements, arguing that Statements 1-6 are among the latter and, therefore, actionable. (Opp. at 18-19.)  But the question is not whether a challenged statement is phrased in the past tense.  As the Ninth Circuit has explained, the question is whether a statement conveys an objectively verifiable fact or vague generalities.  *See Oregon Pub. Emps. Ret. Fund* v. *Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014); *Hampton* v. *Aqua Metals, Inc.*, 2020 WL 6710096, at *13 (N.D. Cal. Nov. 16, 2020) (statement that a company had "achieved" a "major milestone" was nonactionable); *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 995-96 (N.D. Cal. 2017) (statements such as "Q2 was an

-7-

amazing quarter" were immaterial puffery).

The Motion showed (at 15) that Statements 1-6 — including those describing AviClear's launch as "successful" — are quintessential examples of nonactionable subjective corporate optimism. Statement 7 is also immaterial because it is incapable of objective verification. (*Id.*)[5] Plaintiff's contention (Opp. at 19) that even general statements of optimism can be actionable if the speaker knew of specific contrary facts does not change the conclusion that the statements about AviClear and Core Capital are immaterial because Plaintiff has not adequately alleged contemporaneous knowledge of facts that contradict these statements. (*See* Mot. at 7-12; *supra* Section I.B.2.) Thus, Statements 1-7 are immaterial as a matter of law.

**D.    The Opposition Confirms that the SAC Lacks Allegations Demonstrating the Requisite Strong Inference of Scienter.**

The Motion established that the SAC fails to plead particularized facts sufficient to create a strong inference of scienter as to any Defendant. (Mot. at 16-24.) In response, Plaintiff appears to have abandoned two of the scienter theories it pushed in opposition to the motion to dismiss the FAC because the Opposition says nothing at all about core operations or corporate scienter. As for Plaintiff's remaining theories, the Opposition fails to rehabilitate the inadequately pleaded allegations, as Plaintiff continues to fall back on conjecture and impermissible inferences — especially those drawn from vague, unreliable confidential witness allegations that pertain mostly to Mr. Mowry's mental state. Whether taken individually or together, the SAC's allegations are inadequate to create even a reasonable inference, let alone the required strong inference, that any individual Defendant made any of the challenged statements with scienter. *See Norfolk Cnty. Ret. Sys.*, 2018 WL 3126393, at *10 ("Here, as many of the allegations do not support a finding of scienter at all, the combination of the . . . allegations also fails to raise a strong inference of scienter.")

***Signatures on SEC filings.*** As described in the Motion (at 16), the Court has already made clear

---

[5]    Plaintiff's cited cases (Opp. at 18-19) involved allegations found nowhere in the SAC:  that defendants made concrete representations about specific metrics or operational conditions contradicted by verifiable facts. *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143-44 (9th Cir. 2017) (defendants provided a "concrete description," including representations that sales were unchanged or growing); *In re SolarEdge Techs. Sec. Litig.*, 2024 WL 4979296, at *10 (S.D.N.Y. Dec. 4, 2024) (defendants described inventories as "low" while knowing they were "reaching inordinately high levels"); *Zaidi* v. *Adamas Pharms., Inc.*, 650 F. Supp. 3d 848, 858-59 (N.D. Cal. 2023) (statement asserting that physicians were moving to "second and third patients" was actionable); *Rodriguez* v. *Gigamon Inc.*, 325 F. Supp. 3d 1041, 1055 (N.D. Cal. 2018) (defendants "went beyond just providing subjective or emotive descriptions").

-8-

that the fact that a defendant certified an allegedly false financial statement contributes little, if anything, to the scienter calculus.  In its Opposition (at 23-24), Plaintiff asserts that, "due to several red flags," Defendants Drummond, Harris, and Hopkins "knew or were deliberately reckless in not knowing" that the 10-Qs as to which they signed SOX certifications contained false financials, pointing to largely the same inventory-related allegations cited in support of falsity.  Again, as explained (Mot. at 16; *supra* Section I.B.1), those allegations do not give rise to a strong inference of scienter because they do not show that or how these Defendants knew the financials were false when they certified them.

Even under the less exacting deliberate-recklessness standard for pleading scienter, Plaintiff's scienter allegations fail.  Plaintiff's failed falsity allegations (Opp. at 13-15) certainly are not up to the job.  Plaintiff also points to CW1's statement that "the Board saw the same [AviClear] numbers" yet "did not raise alarm bells when they saw that the numbers were 'way off'" to assert that Ms. Hopkins, as a Board member, "was aware of the poor performance of AviClear during its rollout." (*Id.* at 24 n.9.)  This allegation is inadequately pleaded, including because CW1 does not explain how he or she knows these things, what the "numbers" were, and from what other numbers they were "way off" (whatever that means), and because it is the very sort of a-person-with-an-important-job-must-have-known-things allegation that has been held inadequate time and again.  (*See supra* Section I.B.1.)

Plaintiff also argues that not holding Defendants Drummond, Harris, and Hopkins liable would "go against the spirit and letter of both the federal securities laws and the Sarbanes-Oxley Act," ostensibly because Defendants purportedly argued that they, as short-timers, should not be held "accountable for certifying false statements." (Opp. at 24-25 & n.9.)  But Defendants made no such (ridiculous) argument. The Motion showed (at 13-14) that Defendants Drummond, Harris, and Hopkins are not liable for their SOX certifications, not because they were new in their roles, but because the SAC alleges no particularized facts showing that they knew Cutera's financials were false when they certified them.  The more compelling inference is that these Defendants unknowingly certified incorrect financials, not they committed intentional fraud.[6]

---

[6]     Plaintiff asserts that SOX certifications are "probative of scienter if the signatory 'had reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other red flags, that the financial statements contained material misstatements or omissions.'" (Opp. at 23.)  Two of the

***Statements about AviClear and Core Capital.*** Plaintiff claims that the "content and context of [Mr.] Mowry's statements themselves support an inference of scienter given he 'specifically addressed' misstated facts." (Opp. at 22.) Plaintiff points to Mr. Mowry's having "addressed" the "launch's success," the "demand," the "reasons Defendants diverted salespeople from Core Capital to AviClear," and the "leasing model." (*Id.*) But this argument fails because, among other things, it assumes the conclusion that Mr. Mowry's statements were made knowing of the alleged falsity. The two cases that Plaintiff cites do not help it. In both, the courts drew inferences of scienter where the defendants claimed they were unaware of an omitted issue despite having earlier spoken or known *about that issue. See Reese* v. *Malone*, 747 F.3d 557, 572 (9th Cir. 2014) (defendants' assertion that they were unaware of an issue was "directly contradicted by the fact that [they] *specifically* addressed it" on other occasions) (emphasis added); *Roberti* v. *OSI Sys. Inc.*, 2015 WL 1985562, at *12 (C.D. Cal. Feb. 27, 2015) (defendants made "detailed factual statement[s] contradicting important data to which [they] had access"). The SAC alleges no such thing as to Mr. Mowry.

Plaintiff also asserts that Cutera's "later admission that Defendant Mowry was fired because of the botched AviClear rollout further lends" support to its scienter allegation. (Opp. at 23 n.7.) As explained (Mot. at 23; *infra* at 12-13), the more compelling inference to be drawn from the SAC's allegations is that Mr. Mowry left Cutera because of his job performance, not because, months earlier, he (or anyone else) knowingly lied. That Cutera later failed to realize its vision for AviClear does not transform Mr. Mowry's earlier, optimistic statements about the device and Cutera's strategy for launching it into knowing or deliberately reckless falsehoods.

***The confidential witness allegations.*** The Motion demonstrated that the confidential witness allegations in the SAC are just as speculative, conclusory, devoid of meaningful detail, and/or otherwise unreliable as were the identical or nearly identical confidential witness allegations in the FAC, and thus are

---

three cases that Plaintiff cites quote this "red flags" language, which comes from a decades-old Eleventh Circuit decision. And all three cases are distinguishable: those complaints adequately alleged scienter because they contained particularized allegations of intentional fraud or challenged SOX certifications not at issue here. *See In re Ebix, Inc. Sec. Litig.*, 898 F. Supp. 2d 1325, 1344-45 & n.9 (N.D. Ga. 2012) ("red flags" alleged, as the signatory certified that the controls were "effective" while knowing the "[auditors] found significant problems with" those controls); *Dobina* v. *Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 247-48 (S.D.N.Y. 2012) (SOX certifications about the quality of internal controls were recklessly made, given signatory's "personal involvement . . . in designing and evaluating" those controls); *Stocke* v. *Shuffle Master*, 615 F. Supp. 2d 1180, 1187, 1190-91 (D. Nev. 2009) (defendants "knowingly misrepresented to investors" that material weaknesses in internal controls had been "remediated").

not probative of scienter. (Mot. at 17-20.) In response, Plaintiff claims that the SAC established the "basis" for the confidential witness allegations and that such allegations are "corroborative with each other" and "tell a plausible and coherent narrative." (Opp. at 21-22; *see id.* at 14-15.) Neither is true.

*First*, with respect to the "basis" for these allegations (*id.* at 21 (citing SAC ¶¶ 67-74)), Plaintiff asserts that the SAC describes, among other things, "details such as specific meetings both the CWs and Defendants attended." That is false. The SAC is replete with *vague* allegations of "meetings" having occurred: some of these purport to plead the attendance of a confidential witness and a Defendant (*see* SAC ¶¶ 36, 71, 124, 133, 245, 250, 465), but most cannot even manage this (*see* SAC ¶¶ 4, 17, 27, 34, 46, 56, 60-61, 67, 70, 84, 107, 111, 134, 136, 139, 141, 248, 254, 259, 263, 296, 298, 302, 458, 463, 471, 473-74, 476, 478, 487). The Court already held that certain of these very same confidential witness allegations purporting to describe meetings were "insufficiently detailed and conclusory and thus do not raise" a strong inference of scienter. (Order at 15-16 (rejecting CW4 allegation that it was "impossible" for Mr. Mowry not to know about problems with AviClear because these problems were raised at Zoom meetings that Mr. Mowry attended, and CW5 allegation that she "'participated in weekly conference call meetings with [Mr.] Mowry' and others at Cutera at unspecified times").) The Court's reasoning also applies to the SAC's confidential witness allegations about meetings: many are identical to those rejected by the Court (*compare* Order at 15-16, *and* FAC ¶¶ 115, 118, 226, *with* SAC ¶¶ 36, 56, 70-71, 133, 136, 243, 245, 296, 463, 465); the rest are similarly vague and conclusory (*see, e.g.*, SAC ¶ 111 ("it was CW 6's understanding that Pinapati was part of regular meetings with Mowry and other Vice Presidents all the time . . . . Cutera's senior executives, especially Mowry, therefore knew about the lack of control over inventory which ultimately caused the Company's internal controls to fail, or at the very least were reckless in not knowing about such problems")). The Motion also explained why the SAC failed to establish the personal knowledge of the confidential witnesses of any of the things they allege: not a single one can speak for the entire class period, and those who purport to speak of class-period events make vague and conclusory assertions based on rank hearsay. (*See* Mot. at 17-20 & n.6.) The Opposition does not respond to these arguments, except baldly to assert the conclusions that the SAC adequately alleges the "basis" for these witnesses' knowledge or that these allegations "establish" or "confirm[]" this or that point and thus are reliable. (Opp. at 11, 14, 18, 21-22, 24 n.8.) As discussed above (*see supra* Sections I.B.1 & I.B.2) and below (*see infra* at n.7), these allegations

-11-

are irremediably flawed.

*Second*, Plaintiff's assertion that their witnesses "tell a plausible and coherent narrative" fails for the same reasons that it did not pass muster the last time. Again, most of the confidential witness allegations of the SAC are recycled from the FAC, and the Court previously held that many of those recycled allegations were inadequately pleaded. (*See supra* at 11 & Section I.B.2.) Defendants have also identified numerous deficiencies with the non-recycled allegations. (Mot. at 18-20.) That the confidential witness allegations are thematically similar to Plaintiff's other allegations does not somehow make vague hearsay detailed and reliable (it is also little wonder — Plaintiff's counsel, not the confidential witnesses, decided what allegations to include in the SAC and, not surprisingly, chose allegations that were thematically similar). *See*, *e.g.*, *In re Metawave Commc'ns. Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1070 (W.D. Wash. 2003) ("[A] shared opinion among [CWs] does not necessarily indicate either falsity or a strong inference of scienter if the allegations themselves are not specific enough.").[7] In sum, Plaintiff's confidential witness allegations come nowhere close to meeting the PSLRA's high bar.

**The executive departures.** The Motion showed (at 22-23) that the departures of Messrs. Mowry, Plants, and Seth do not support a strong inference of scienter because no departure was suspicious or uncharacteristic. In its Opposition, Plaintiff claims that these departures were "suspicious[]" because Cutera's Board fired Messrs. Mowry and Plants "immediately following Cutera's announcement that it would delay filing its Form 10-K due to material weaknesses in its internal controls," and because Mr. Seth resigned "the same day Cutera disclosed worsening financial results and the extended plant shutdown." (Opp. at 22.) As explained in the Motion (at 22-23), without much more, Plaintiff cannot refute the more compelling inference that these Defendants left Cutera because of performance issues. *See In re Intel Corp. Sec. Litig.*, 2023 WL 2767779, at *24 (N.D. Cal. Mar. 31, 2023) (finding "inference that [CEO] and [Chief Engineering Officer] were terminated for performance failures" shortly after a delayed product rollout "to

---

[7] Plaintiff relies on *Forescout* (Opp. at 21), but that case illustrates exactly what Plaintiff's confidential witnesses fail to do. In *Forescout*, the 20 confidential witnesses told a "reasonably plausible story about [the company-defendant's] state of affairs" because "[m]any of the CWs described conversations that they themselves heard" (something virtually none of Plaintiff's confidential witnesses even purport to do), and the confidential witnesses in *Forescout* offered "plenty of allegations of verifiable facts" (which none of the confidential witnesses do). 63 F.4th at 771-72.

SULLIVAN & CROMWELL LLP

be more compelling than the inference of scienter urged by Lead Plaintiffs").[8]  As also explained in the Motion (at 22), executive departures may evince scienter where the departure "was uncharacteristic when compared to the defendant's typical hiring and termination patterns."  *Zucco Partners*, *LLC* v. *Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009).  Like the SAC, the Opposition does not even try to compare the departures of Messrs. Mowry, Plants, and Seth with anyone else's departure from Cutera ever.  Not that this would be likely to help Plaintiff in any event — executive departures after bad news comes to light are "hardly uncharacteristic since '[m]ost major stock losses are often accompanied by management departures.'"  *Intel*, 2023 WL 2767779, at *24 (citation omitted).

***The AviClear Incentive Plan.***  The Motion established that the SAC's attempt to allege scienter based on an executive incentive plan failed.  (Mot. at 21-22.)  In response, Plaintiff asserts that the AviClear Incentive Plan "is evidence of scienter" because "its achievement milestones for the first year were linked to the rollout and placement of AviClear devices."  (Opp. at 20.)  But the SAC itself specifically alleges the criteria for earning these bonuses:  (i) obtain FDA approval and place the first AviClear device by April 2022, and (ii) place an unspecified quantity of devices by April 2023.  (SAC ¶¶ 117, 521-22.)  Nowhere does the SAC allege that any Defendant said anything false about any of these criteria — and if they did not lie about achieving these benchmarks, a plan that rewarded them for achieving the benchmarks obviously did not do a good job of motivating them to lie.  Moreover, these are "allegations of routine corporate objectives" that are regularly held to be insufficient to allege scienter because, as the Ninth Circuit has cautioned, "it is common for executive compensation, including stock options and bonuses, to be based partly on the executive's success in achieving key corporate goals."  *Rigel*, 697 F.3d at 884 ("we will not conclude that there is fraudulent intent merely because a defendant's compensation was based in part on [executives'] successes").

The Opposition also ignores SAC allegations addressed in the Motion that further belie Plaintiff's

---

[8]    Plaintiff cites *Shenwick* v. *Twitter, Inc.*, 282 F. Supp. 3d 1115 (N.D. Cal. 2017) (Opp. at 22), but *Shenwick* "is distinguishable because that case involved additional evidence, beyond temporal proximity, that the alleged fraud was the reason for the departures."  *Inchen Huang* v. *Higgins*, 2019 WL 1245136, at *14 (N.D. Cal. Mar. 18, 2019).  Here, Plaintiff "point[s] to no particularized allegation[s] refuting the reasonable assumption" that Messrs. Mowry, Plants, and Seth were fired or resigned "simply because the errors that lead to the restatement occurred on [their] watch or because [they] failed adequately to supervise [their] department."  *Zucco Partners, LLC* v. *Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009).

-13-

SULLIVAN & CROMWELL LLP

theory: CW2 recalled that the purported "rush" to launch AviClear related to beating Cutera's competitor; and Cutera's Board's special committee letter regarding Mr. Plants's termination makes no reference to Mr. Plants's attempting to place AviClear devices too quickly or to his being improperly motivated by a bonus. (Mot. at 21-22 & n.7; *see* ECF No. 90-23 at 5-7.)  And, even if the AviClear Incentive Plan arguably incentivized some Defendant to make a material falsehood about something, Plaintiff still would have to (but does not) account for the fact that the bonuses were a relatively small fraction of Messrs. Mowry's, Plants's, and Seth's total compensation (*see* Mot. at 22) — meaning that any such incentive was small.[9]

*The Restatement.*  The Motion (at 20-21) demonstrated that Plaintiff still does not allege that Mr. Drummond (or anyone else) knew anything about the specific accounting errors that resulted in the restatement, let alone that any of the restated financial statements was false.  The Opposition barely discusses Mr. Drummond's mental state, and what little it says about it boils down to the same "red flags" refrain: Mr. Drummond knew or was deliberately reckless in not knowing that the 10-Qs contained false financials, given the "publicly disclosed red flags prior to [his] appointment[]" and that the "financial statements were restated because of those red flags."  (Opp. at 23.)  The Opposition also cites SAC allegations that mirror those cited in support of Plaintiff's falsity and scienter theories as to the SOX certifications.  (*See id.* at 12-15, 23-25.)  For the reasons discussed (Mot. at 13-14, 16; *supra* Section D), none of these allegations suffices to plead a strong inference of scienter as to Mr. Drummond.  The Court should therefore conclude here what it held in its Order (at 18-20):  because the SAC is "devoid of allegations" indicating that Mr. Drummond knew that Cutera's financials "were inaccurate at the time he made the statements," Plaintiff has (again) failed adequately to plead scienter as to Cutera's financials (Statements 11-14, 18-21).

## E.    Plaintiff Has Not Pleaded a Scheme-Liability Claim.

*Plaintiff cannot assert a new claim or legal theory in its Opposition.*  Plaintiff contends that the SAC "adds a scheme liability claim under Rule 10b-5(a) and (c)."  (Opp. at 8.)  But did it?  Despite

---

[9]    Plaintiff's cited cases (Opp. at 20-21) are readily distinguishable because the complaints adequately alleged that the defendants were motivated by the prospect of outsized bonuses. *See In re SVB Fin. Grp. Sec. Litig.*, 2025 WL 1676800, at *13 (N.D. Cal. June 13, 2025) (allegations that the defendant-executives "offload[ed] their personally-held SVB shares for more than $35 million during the Class Period" demonstrated that they "had financial motivation to conceal the adverse information that they ultimately withheld" from investors); *Evanston Police Pension Fund* v. *McKesson Corp.*, 411 F. Supp. 3d 580, 603 (N.D. Cal. 2019) (executive defendants' "compensation from stock and cash awards far outstripped their base salaries").

Plaintiff's attempted reframing (*id.* at 8-9 n.4), the "First Claim for Relief" of the SAC (at 143) is brought under "Section 10(b) of the Exchange Act and Rule 10b-5(b)." And in support of that first count, the SAC repeatedly cites Rule 10b-5(b). (*Id.* ¶¶ 549, 558.) The few references to 10b-5(a) and (c) merely recite the subsections of Rule 10b-5 and state the conclusion that Defendants "carried out a plan, scheme, and course of conduct." (*Id.* ¶¶ 551-52.) "Plaintiff[] cannot simply beef up [its] deficient factual allegations by asserting new legal theories in [its] Opposition." *Dong Su* v. *Henry Glob. Consulting Grp.*, 2021 WL 1240776, at *3 (C.D. Cal. Apr. 2, 2021); *Frenzel* v. *AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Thus, the Court should reject Plaintiff's attempt to assert a belated scheme-liability claim.

***Plaintiff's purported scheme-liability claim is inadequately pleaded.*** Even if Plaintiff has added a scheme-liability claim in the SAC, this purported claim fails because it is premised on — indeed, it is indistinguishable from — the same alleged misrepresentations about AviClear and Core Capital that are the basis for Plaintiff's Rule 10b-5(b) claims, and thus necessarily fails for the same reasons those claims fail. Here, Plaintiff asserts that Messrs. Mowry, Plants, and Seth's "fraudulent scheme involved lining their own pockets" under the AviClear Incentive Plan, and that they were motivated to "plac[e] as many AviClear devices as possible in the first year." (Opp. at 9.) To maximize placement, they "chose a lease-based model" and "told [Cutera's sales force] to focus on AviClear placements," "divert[ing] critical resources away from" Core Capital. (*Id.* at 9-11.) That is just Plaintiff's misrepresentation claims all over again; saying the same thing but calling it a "scheme" changes nothing. *See In re Stem, Inc. Sec. Litig.*, 2025 WL 3675114, at *11 (N.D. Cal. Dec. 17, 2025) ("[W]here the 'alleged scheme consists entirely of' failed section 10(b) statements, a plaintiff likewise fails to adequately plead a scheme.").

## II.    PLAINTIFF STILL FAILS TO STATE A CLAIM UNDER SECTION 20(A).

Plaintiff's Section 20(a) claim fails as a matter of law because Plaintiff fails adequately to plead a primary violation of Section 10(b), for the reasons stated above and in the Motion. *See Zucco*, 552 F.3d at 990 ("Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation of section 10(b).").

## CONCLUSION

Given its incurable deficiencies, the SAC should be dismissed with prejudice.

-15-

Dated:   March 2, 2026

/s/ Brendan P. Cullen
Brendan P. Cullen (SBN 194057)
(cullenb@sullcrom.com)
Alexis C. Holmes (SBN 321393)
(holmesa@sullcrom.com)
SULLIVAN & CROMWELL LLP
550 Hamilton Avenue
Palo Alto, California 94301
Telephone:     (650) 461-5600
Facsimile:     (650) 461-5700

*Counsel for Defendants Cutera, Inc., David H. Mowry, Rohan Seth, J. Daniel Plants, Sheila Hopkins, Taylor Harris, and Stuart Drummond*